**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INVENTUS POWER, INC., and ICC ELECTRONICS (DONGGUAN) LTD., ) ) ) | |
| Plaintiffs, ) ) | Civil Action No.: |
| v. ) ) | **DEMAND FOR A JURY TRIAL** |
| SHENZHEN ACE BATTERY CO., LTD., ) ) | |
| Defendant. ) ) ) ) ) ) | |

## COMPLAINT

Plaintiffs Inventus Power, Inc. and ICC Electronics (Dongguan) Ltd. (collectively, "Inventus") allege as follows against Defendant Shenzhen Ace Battery Co., Ltd. ("AcePower" or "Defendant"). The allegations herein are made based on personal knowledge as to Inventus with respect to its own actions, and upon information and belief as to all other matters.

## INTRODUCTION

1.      Based in Woodridge, Illinois, Inventus has been building advanced battery and power systems for global OEMs for over 60 years. It specializes in the design and manufacture of lithium ion (known as "Li-ion") battery packs, smart chargers, and efficient power supplies across a broad range of portable, mobile, and stationary applications. Inventus's commitment to safe, reliable, and high-quality products for its customers—whether they are global enterprises, the U.S. military, or individual customers—is the result of significant investment of time and resources. In particular, Inventus invests heavily to support its engineering and business teams to create industry leading technologies and products. Inventus's substantial investments in research and other forms

of innovation require protection, and Inventus relies on its trade secrets to guard the intellectual property created by the ingenuity and industry of its employees.

2. AcePower's story is the opposite. Unlike Inventus, AcePower has not invested in the substantial, time-consuming research and development required to produce innovative technologies and products. Founded in 2014 in Shenzhen, China, AcePower began working on battery technologies only recently—well after Inventus had already pioneered the field and established its battery pack, charger, and power supply technologies in the marketplace for a variety of industries, government, public works, and military applications.

3. Eager to tap into the battery market developed by Inventus, AcePower embarked on an unlawful plot to surreptitiously take Inventus's confidential and proprietary trade secrets, and use those trade secrets to build and test competing products. Rather than design its own products to compete fairly in the marketplace, AcePower instead misappropriated Inventus's proprietary technologies and critical business strategies. This included surreptitiously taking Inventus's confidential documents and source code embodying critical technologies for Inventus's products and other highly valuable confidential Inventus information.

4. AcePower's plan to steal Inventus's technologies started with a plot to target Inventus from the inside, through its personnel—namely, by recruiting high-ranking Inventus personnel who had substantial access to Inventus's proprietary technologies, and who, at AcePower's direction, downloaded over 100,000 confidential technical documents and source code from Inventus's computers in the weeks and days prior to their departure in order to serve and benefit AcePower's business. Specifically, in order to expand into the battery pack market, beginning at least as early as mid-2019, AcePower lured away several Inventus senior engineers who were extensively familiar with Inventus's technologies and intellectual property, and who had

or could gain access to other confidential Inventus information. AcePower hired these employees to work in senior positions at AcePower for the purpose of developing products that directly compete with those they previously worked on at Inventus, and, within the scope of that work, instructed the employees to unlawfully take Inventus's confidential trade secret materials to AcePower for use in their work at AcePower, including by using information taken from Inventus to develop and test battery components for AcePower's own products within their work responsibilities as engineers and managers at AcePower.

5. As part of AcePower's plan to benefit AcePower's competing products and business, and in connection with leaving Inventus for AcePower, these individuals mass downloaded over 100,000 highly confidential documents concerning Inventus's products and business operations, including numerous requirement documents, design documents, testing documents, source code, and detailed specifications regarding Inventus's small and medium-to-large battery pack projects. The list of individuals involved in this scheme is lengthy, and includes at least Gang (Lucken) Cai, who formerly served as a Supporting Engineering Director in the Qualification and Costing Department for Inventus and now serves as the R&D Director at AcePower; Kui (Gerrard) Liu, who formerly served as a Chief Firmware Engineer for Inventus and now serves as Firmware Manager at AcePower; Guochao (Andy) Quan, who formerly served as a Compliance Engineering Manager for Inventus and now leads the Safety Regulation Lab at AcePower; Xinliang (Robert) Cao, who formerly served as a Mechanical Engineering Manager for Inventus, and now serves as the Senior Manager in the Mechanical Team at AcePower's R&D department; Jun (Yancey) Yang, who formerly served as an Assistant Firmware Engineering Manager at Inventus, and now serves as the head of the software team at the R&D department at AcePower; Haihua (Alan) Liu, who previously served as a Senior Systems Engineer at Inventus

and now serves as Assistant Field Application Engineer Manager at AcePower; Jina (Conner) Guan who previously served as a Senior Systems Engineer at Inventus and now serves as Assistant Field Application Engineer Manager at AcePower; and Jingyang (Paul) Mai, who previously served as a Senior Qualification Engineer at Inventus, and now serves as Assistant BMS Design & Qualification Manager at AcePower (collectively the "AcePower Employees").

6.      During their years of employment at Inventus, Inventus trusted these AcePower Employees with Inventus's confidential information on highly sensitive and proprietary technologies and products. While at Inventus, they were privy to Inventus's proprietary technical documents, source code, design ideas, product testing technologies, product planning, cost management, compliance testing, design guidelines, and research and development efforts; and they were intimately familiar with Inventus's development efforts into battery packs, chargers, and power supplies, including those related to the secret technologies at issue in this case. And while that knowledge alone presented incalculable value to Inventus, in the weeks and days prior to their coordinated resignations from Inventus (and unbeknownst to Inventus), the AcePower Employees surreptitiously downloaded and misappropriated more than 100,000 confidential Inventus documents and source code, including documents related to Inventus's proprietary and cutting-edge battery pack, charger, and power supply technologies. Critically, many of these unlawfully-downloaded documents provided Inventus's specific technology implementations and other highly detailed technical information relating to critical technologies that took Inventus years and substantial monetary investment to develop and implement. AcePower, through its employees including the AcePower Employees, unlawfully accessed and acquired Inventus's trade secret information to develop, improve, test, and supply its battery, charger, and power supply products sold and to be sold in the United States. AcePower used the technical documents taken from

Inventus to design and test similar products using the same components manufactured by the same supplier for Inventus. Egregiously, and notwithstanding its unlawful conduct, AcePower publicly disclosed some of the very innovations it took from Inventus as its ***own*** invention by incorporating Inventus's proprietary information into its patent applications in China, evidencing a degree of wanton misappropriation.

7. AcePower and the AcePower Employees knew that the information they downloaded without permission was confidential, and knew that those materials were replete with Inventus's trade secrets. But despite this knowledge, AcePower acquired and continue to possess those trade secret materials in connection for use in developing and testing their own competing products. AcePower's misappropriation was deliberate, wholesale, and systematic—not only did AcePower take Inventus's technical trade secrets, they even obtained the marketing, cost, pricing, contract, and human resources information related to the misappropriated technologies as well, leaving no doubt about its unlawful scheme.

8. The AcePower Employees—and by extension, their employer at whose direction they acted, AcePower—intentionally hid their wrongful conduct from Inventus. Inventus undertakes substantial measures to ensure that its highly confidential information remains secret and is not misused, including by restricting access to only certain employees who need such information and through numerous other measures. Inventus requires employees to acknowledge their understanding of the confidentiality provisions in the Inventus Employee Handbook, and expressly incorporates by reference a confidentiality and intellectual property agreement further detailing these requirements as a condition of employment.

9. Inventus also employs additional extensive protective measures to safeguard its trade secrets. For instance, departing employees are required to submit a departure checklist

requiring them to return all property belonging to Inventus. Inventus also applies confidentiality labels to its documents and uses encryption to protect data transfers. As just one example of Inventus's physical security measures, it requires key card access, which can only be granted by Inventus, to enter into its buildings, and additional key card access to enter any separate engineering, manufacturing, testing, or research center within the building. Other examples of Inventus's security measures include pre-hire security and background checks, required security training before accessing confidential documents, mandated ongoing training on security issues, limiting access to files only on a need-to-know basis, periodic review of security clearances, implementation of a system to report suspicious activity, and requirements that work spaces need to be cleared of confidential documents when employees are not at their desks.

10.     AcePower's brazen misappropriation and theft of trade secrets leaves Inventus no choice but to file this lawsuit seeking immediate injunctive relief and recovery of damages for the harm that has been caused by AcePower's illegal conduct. AcePower did not even attempt to compete fairly. Rather than spend years to innovate its own battery pack, charger, and power supply technologies, it instead took a shortcut by stealing Inventus's trade secrets in order to misuse Inventus's proprietary innovations. Such conduct renders investments in costly research and development pointless, and harms American businesses and the economy in critical ways. Unless halted immediately, AcePower's illegal actions will serve as a roadmap for other companies who have not invested in their own research and development to steal the trade secrets of their competitors, and violate the intellectual property rights of the true innovators and market leaders.

**THE PARTIES**

11.     Inventus Power, Inc. is a Delaware corporation having its headquarters and principal place of business at 1200 Internationale Parkway, Woodridge, IL 60517.

12.     ICC Electronics (Dongguan) Ltd. is a Chinese corporation having its principal place of business at No. 23, Shang Yuan Rd., Qingxi Town, Dongguan City P.R., China, 523640.  ICC Electronics (Dongguan) Ltd. is a wholly owned subsidiary of Inventus Power, Inc.

13.     Defendant Shenzhen Ace Battery Co., Ltd. is a company organized and existing under the laws of the People's Republic of China, with its principal place of business at 26/F, BAK Technology Building, 9 Keyan Rd., Nanshan Hi-Tech Park, Shenzhen City, China, 518119.

**JURISDICTION AND VENUE**

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201, 2202, and the trade secret laws of the United States, 18 U.S.C. §§ 1836 and 1839.  This Court also has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.  This Court further has jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and an amount in controversy in excess of $75,000.

15.     This Court has personal jurisdiction over AcePower.  Personal jurisdiction exists specifically over AcePower including because it has sufficient minimum contacts with the Northern District of Illinois as a result of intentional contacts with this District and knowing misappropriation of trade secrets that were developed at Inventus's Woodridge, Illinois headquarters located in this District, and AcePower's illegal acts that have and continue to inflict injury on Inventus in this District.

16.     For example, AcePower's marketing activity in this District relates to the claims because it regularly markets its product lines that AcePower intends to benefit by using Inventus's trade secrets in this District through, for example, its website at www.acebattery.com, as well as attending trade shows in-person, and has traveled to this District for that purpose.  As just one example, and as pictured immediately below, AcePower attended the 2019 PROMAT tradeshow in Chicago in order to increase their presence and sales of these products in this District, the State of Illinois, and in the U.S. generally.[1]  Moreover, AcePower Employees Alan Liu, Conner Guan, and Paul Mai—all former Inventus employees—spent several months at the Inventus headquarters in Woodridge, Illinois in 2019 developing products directly related to the trade secrets at issue in this case.



**AcePower Attends PROMAT 2019 Tradeshow in Chicago**

17.     Further, many of the stolen trade secrets were developed at and ultimately taken from Inventus's Woodridge, Illinois headquarters.  Inventus's Woodridge facility is the main hub

---

[1]  *See* Ex. 1, CBAK Power / Ace Battery to attend PROMAT 2019, available at http://www.acebattery.com/news_view-1.html.

for the company's global operations, with over 200 employees, and is the center of the company's engineering, research and development, and testing activities in the United States. Employees in the Woodridge facility are also responsible for establishing relationships with customers, approving contracts, purchase orders, and quotes for customers, setting up company-wide policies, creating technical guidelines, creating requirement documents, drafting product specifications, reviewing, revising, and approving technical materials from teams in other locations, monitoring and supervising project and research and development progress, reviewing and approving costs, and approving the internal and official release of products. For instance, the Inventus U.S. research and development team, based out of the Woodridge headquarters, works regularly with the Inventus research and development engineering team in Guangzhou, China to review source code for Inventus projects, provide critical feedback from customer testing, provide requirements specifications, hardware-software interfaces, and state machine diagrams, which are all integrated into Inventus's source code. The Inventus U.S. and Guangzhou teams share a network drive that allows the Chinese team—including the AcePower Employees while they were at Inventus—to request and access highly confidential materials originating in this District regarding the products at issue herein, and for the U.S. team in this District to upload those materials for the team in Guangzhou.

18.     As just one example of intentionally misappropriating these trade secrets developed in Illinois, Yancey Yang stored the entire source code base for a key project relating to the development of Inventus's medium-to-large sized battery packs—a project developed in Illinois for a U.S. customer with U.S. operations—on an external drive before leaving Inventus's Guangzhou team. Yancey similarly took information pertaining to Inventus's small-sized battery packs and additional U.S.-based projects that are exclusively developed for U.S. customers. Yang

also took additional confidential documents and source code, including Inventus's production source code for additional projects, as well as Inventus's bootloader source code that is widely applicable to a range of products and projects, including those sold in the United States. Similarly, documents accessed by other AcePower Employees prior to their departure also include confidential information regarding design and implementation of U.S.-based projects, as well as pricing, cost, and contract information involving these projects.

19.     In addition, AcePower's activities are sufficient to establish personal jurisdiction because AcePower intentionally aimed its conduct and intended to cause harm in the state of Illinois and this District by misappropriating trade secret information it knew to be developed in, stored in, and/or accessed from Inventus's Woodridge, Illinois headquarters.  Specifically, as alleged herein, Inventus is a Delaware corporation with its U.S. operations, including substantial research and development, testing, engineering, and sales operations, run solely out of its location in this District.  AcePower knew that the Illinois headquarters would be harmed by its trade secret misappropriation; indeed, the AcePower Employees worked extensively with Inventus employees from the Illinois headquarters to develop and test Inventus technology and products.  The U.S. engineering teams actively provided documents, edits, feedback, design, testing, compliance guidelines, and instructions to the Guangzhou team, including the AcePower Employees, regarding all aspects of the engineering, testing, research and development activities as well as the development of business and human resources strategies.  Moreover, a large number of documents accessed and downloaded by the AcePower Employees are clearly marked as originated from "Woodridge, IL"—in this District.  For example, many of the stolen documents such as Inventus's technical specifications, requirement documents, and interface documents are clearly designated as having originated at Inventus's location in this District, "1200 Internationale Parkway,

Woodridge, IL 60517, USA."  Additional specific details regarding AcePower's knowledge and intent to cause injury to Inventus are provided herein.  Additionally, each of the AcePower Employees, while at Inventus, received an Employee Handbook in Chinese—which they each signed as a condition of their employment with Inventus—clearly explaining that they must protect the intellectual property rights of the company, including its "overseas parent"—*i.e.,* Inventus located in this District.  For example, the Employee Handbook includes a section on "Corporate Property Rights" that requires that "[a]ll employees shall protect the intellectual property rights of the company," which would include Inventus's headquarters in Woodridge, Illinois.  The Employee Handbook further includes a letter from the CEO of Inventus Power— who is based out of the Woodridge headquarters—and includes the Inventus logo, acknowledging that each employee is a part of the Inventus Power family, undeniably connecting their work to Inventus in this District.  Thus, AcePower knew, at all times, that the information it took for use in developing, testing, and improving AcePower's products originated from this District and the State of Illinois.

20.    Personal jurisdiction also exists over AcePower under Federal Rule of Civil Procedure 4(k)(2) because AcePower is not subject to general personal jurisdiction in any state court and has sufficient minimum contacts with the United States as a whole as a result of substantial business it has conducted within the United States.  For example, AcePower promotes on its English-language website its relationship with multiple U.S.-based customers that do significant business throughout the U.S., including, for example, Dell Technologies, Inc. and HP, Inc.[2]  Not only do these companies sell products throughout the U.S., but they are incorporated in and have principal places of business in the U.S.: Dell Technologies, Inc. is incorporated in

_____

[2]    *See* Ex. 2, AcePower Enterprise Profile listing AcePower's U.S. Customers, available at http://www.acebattery.com/about-2.html.

Delaware with its principal place of business in Texas; and HP, Inc. is incorporated in Delaware with its principal places of business in California. In addition to its customers, AcePower specifically promotes its products in the United States. For example, AcePower markets its products and actively seeks business with U.S.-based customers by attending trade shows throughout the United States, including the 2018 and 2019 Battery Show in Michigan, and the 2019 Solar Power Show in Salt Lake City, Utah.[3] Moreover, AcePower specifically markets at least its Li-ion (LFP/NCM) cell list, LFP Pouch Cell, and LFP Prismatic Cell products in the United States.[4] In addition to other AcePower products, these products are available for purchase in the United States through AcePower's website.[5] Additionally, AcePower has approached a longtime Inventus customer based in the United States to supply similar products to those currently supplied by Inventus in the medium-to-large sized battery pack market. AcePower has also approached at least one of Inventus's U.S.-based suppliers, and requested Inventus's schematics to obtain parts specifically designed for Inventus, that Inventus uses in its proprietary medium-to-large sized battery pack designs.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because AcePower has misappropriated trade secrets in this District and is subject to personal jurisdiction in this District. In addition, venue is proper because Inventus is headquartered in this District, has made significant investments of both equipment and engineering talent in this District, stores in or

---

[3] *See* Ex. 3, CBAK / AcePower will attend the Battery Show 2018, available at http://www.acebattery.com/news_view-8.html; Ex. 4, The Battery Show 2019, CBAK Returned Laden!, available at http://www.acebattery.com/news_view-11.html; Ex. 5, CBAK / AcePower will attend The Solar Power Show 2019, available at http://www.acebattery.com/news_view-10.html.

[4] *See* Ex. 5, CBAK / AcePower will attend The Solar Power Show 2019 invitation listing AcePower products, available at http://www.acebattery.com/news_view-10.html.

[5] *See* Ex. 6, AcePower Products, available at http://www.acebattery.com/pro_view-1.html; each product has an online inquiry form through which a user may purchase AcePower products, *see, e.g.,* Ex. 7, http://www.acebattery.com/pro_detail-1.html.

developed in this District at least certain of the trade secrets at issue in this case, and has suffered harm in this District.

## ADDITIONAL FACTUAL ALLEGATIONS

### A.     Inventus's Trade Secrets Are Critical To Its Business And Success

22.     In the United States and around the world, Inventus leads the industry in cutting-edge battery pack, chargers, docking station, and power supply technologies.  Since the company's founding in 1960, Inventus's engineers and technicians have focused on developing the hardware, cell, circuit, and firmware necessary to create innovative, safe, and efficient technologies for a broad range of portable, mobile, and stationary applications.  As a result of substantial investments and a decades-long dedication to innovation, Inventus has been awarded approximately 50 patents covering, among other things, its battery pack technology.  In addition, significant aspects of Inventus's products are highly confidential and maintained in strict confidence as trade secrets to protect the substantial investment Inventus has made to develop them.  This confidential information derives considerable value from not being publicly known outside of Inventus, including because of the competitive advantage that the secret nature of the information confers on Inventus from both a technological and business perspective.

23.     Such commitment to cutting-edge innovation in the service of customers—whether in the field of medical devices, industrial and commercial vehicles, power tools, or products for the United States military—comes at a significant price.  Throughout its history, Inventus has invested heavily in research and development, spending well over $100M to develop a wide range of technologies across many industries.  Additionally, Inventus's significant investment in its business, including marketing, employee development, competitive analysis, and consumer research, sets Inventus apart from others in the market.

24.     Inventus's innovation and market leadership is praised by many in the industry. For instance, Inventus was recognized as a Top 10 Defense Manufacturing Solutions Provider for 2020 and a Top 10 Battery Storage Solution Provider for 2018.[6]  In addition, Inventus is consistently recognized for its work at the forefront of designing and manufacturing high-performance rechargeable battery packs and charging devices used in defense manufacturing solutions.

25.     As part of its industry-leading battery pack technology, Inventus has developed proprietary medium-to-large battery packs which use Inventus's smart charging and communication technologies and are designed to deliver smart, robust, safe, and highly efficient performance.  Inventus has invested a tremendous amount of time and resources into its research and development of the medium-to-large battery packs and created many confidential technical documents and source code during the research and development process, including, for example, confidential technical requirements, specifications, interfaces, design, and implementation documents, project tracking spreadsheets, technical schematics, flow charts, prototype development documents, and source code (also called software or firmware).  For instance, one of the Inventus technical documents accessed and unlawfully misappropriated by AcePower describes Inventus's confidential and proprietary hardware and software interfaces for the medium-to-large battery pack projects, which describes a particular products' proprietary design and implementation of state machine functions, bus bar connectivity, interface and control

---

[6]     *See* Ex. 8, Inventus Power Recognized as a Top 10 Defense Manufacturing Solutions Provider, available at https://news.inventuspower.com/blog/inventus-power-recognized-as-a-top-10-defense-manufacturing-solutions-provider; *see also* Ex. 9, Inventus Power Recognized as a Top 10 Battery & Energy Storage Solution Provider for 2018, available at https://news.inventuspower.com/blog/inventus-power-recognized-top-10-battery-energy-storage-solutions-provider-2018.

diagrams, system architecture details, communication and timing details, and capacity and fault indication details and conditions, which are highly confidential technical details critical to the development of Inventus's products. The information contained in these documents is critically important to ensure that Inventus's products meet customer requirements and performance benchmarks, operate safely, and deliver performance that surpasses its competition. As one example, Inventus's proprietary source code for its medium-to-large battery pack technology controls the operation of batteries and chargers in a manner that delivers great efficiency, life-expectancy, performance, and safety to its customers. This information is the result of many years of engineering, is kept strictly confidential by Inventus, and as a technological differentiator is critical to Inventus's success in the marketplace, including as a result of its secret and proprietary nature.

26.     Inventus's industry-leading battery pack technology also includes its small-sized battery pack technology, which is important for Inventus's consumer-oriented markets. Inventus's proprietary design and implementation of its small battery packs are embodied in its hardware, compliance, testing technologies, as well as its source code and related documentation. Inventus has invested tremendous time and resources into its research and development related to small battery packs, including creating confidential documents and source code. Inventus's proprietary information resulting from its research and development are included in, for example, customer requirements and implementation documents, specifications, interfaces, design, project tracking spreadsheets, schematics, flow charts, prototype development documents, and source code. For instance, Inventus technical documents misappropriated by AcePower describe Inventus's confidential and proprietary design and implementation with respect to boot loader with alternative configurations adapted for different usage situations, which are highly confidential technical

details critical to the development of Inventus's products. As another example, Inventus's proprietary source code for small-sized battery pack technology that was misappropriated by AcePower controls the operation of batteries and chargers in a manner that delivers great efficiency, life-expectancy, performance, and safety to its customers. This information is the result of many years of engineering, is kept strictly confidential by Inventus, and as a technological differentiator is critical to Inventus's success in the marketplace, including as a result of its secret and proprietary nature.

27. Inventus has also invested significant resources into its confidential and proprietary compliance and testing technologies, which are similarly critical to Inventus's success in the marketplace. These technologies ensure that Inventus's products can be manufactured and transported worldwide in a way to avoid and prevent damage. Inventus has also developed robust confidential mechanical, chemical, and electrical testing procedures, such its proprietary cell technology, drop tests, and high and low-temperature testing for its products to ensure their performance and safety in a variety of environments. For instance, one of the confidential Inventus technical documents accessed and unlawfully misappropriated by AcePower describes Inventus's proprietary design and implementation of its cycle tester, requirements for the control software, and detailed requirements of the channels for cycler tester. Such compliance and testing information is thus critical to Inventus's business because it provides the consistency and quality that Inventus's customers demand in its battery technology across all industries. This information is the result of many years of engineering, is kept strictly confidential by Inventus, and is critical to Inventus's success in the marketplace, including as a result of its secret and proprietary nature.

28. Inventus has also invested significant resources into its confidential and proprietary mechanical engineering and manufacturing techniques related to battery packs, chargers, and

power supplies.  For example, Inventus has designed and developed automated manufacturing capabilities that are safe and highly effective using robotic technologies.  The results of Inventus's research and development are included in, for example, manufacturing process guideline documents, prototype development documents, mechanical and PCBA design guidelines, specifications, and schematics.  For instance, one of the Inventus technical documents accessed and unlawfully misappropriated by AcePower describes Inventus's design and implementation of its PCBA, which includes board schematic diagrams in Gerber file format.  Inventus's engineering and manufacturing techniques ensure that Inventus's products are manufactured and assembled according to a rigorous, precise, and efficient processes that Inventus has developed through its substantial experience developed over years of research and development.  This information also ensures that Inventus can manufacture its products safely, efficiently, and that the manufactured products consistently meet their design and safety requirements.  Such confidential and proprietary information is thus key to delivering innovative, high-quality products across a wide range of industries efficiently and consistently.  This information is the result of many years of engineering, is kept strictly confidential by Inventus, and is critical to Inventus's success in the marketplace, including as a result of its secret and proprietary nature.

29.     Inventus has also invested significant resources into its confidential and proprietary business strategy information.  For instance, Inventus has accumulated years of proprietary cost strategies, pricing information and strategies, and contract information that are critical to the company's success in the marketplace.  This includes, for example, confidential documents regarding Inventus's cost and pricing strategy, cost review spreadsheets, cost management presentations, pricing strategies, and quotes.  Such confidential information represents Inventus's years of experience and investment establishing effective supply chains, understanding market

dynamics and the various factors driving market and product growth, and building relationships with customers who value the safety and high quality of Inventus's products. Inventus's customer and vendor contracts also represent important business information that the company has accumulated through years of trial and error working with customers and suppliers across a wide array of industries. This confidential information is critical to Inventus's business by allowing it to maintain efficient relationships with customers and suppliers, and reduce cost while providing tremendous value for its customers. For instance, one of Inventus's documents accessed and unlawfully misappropriated by AcePower summarizes the cost information for Inventus's products, projects, as well as projects under development. As another example, AcePower also misappropriated documents regarding Inventus's contract with suppliers, monthly cost reports, and price lists. This information is the result of many years accumulation of Inventus's business acumen, is kept strictly confidential by Inventus, and is critical to Inventus's success in the marketplace, including as a result of its secret and proprietary nature. This also includes, for example, Inventus's confidential performance appraisals and other human resources documents, such as organization charts, employee lists, salary information, and career growth plans. Inventus's human resources documents accessed and unlawfully misappropriated by AcePower describe Inventus's employee career growth plans and goals, performance appraisals, and salary adjustment spreadsheets. This information is the result of many years accumulation of successful hiring and training practices, is kept strictly confidential by Inventus, and is critical to Inventus's success in the marketplace, including as a result of its secret and proprietary nature.

30. These exemplary confidential materials misappropriated by AcePower demonstrate just some of Inventus's substantial and sustained investment in its confidential and proprietary battery pack, charger, and power supply technologies, as well as its confidential business

strategies. Underlying these technologies are carefully guarded trade secrets that Inventus has developed over the course of many years. These efforts resulted in substantial trade secrets that, together with other Inventus intellectual property, have made Inventus a market leader. For these reasons and others, Inventus's battery pack, charger, and power supply technologies and the secret design, testing, and implementation of its proprietary features and processes are highly valuable assets.

## B. Inventus Protects Its Trade Secrets

31. The measures Inventus has taken to protect the secrecy of its confidential and proprietary information are extensive. For example, as a condition of their employment, all Inventus employees—including the AcePower Employees—sign an Employee Handbook pursuant to which they agree, among other things, to not disclose or make improper use of any of Inventus's confidential information or trade secrets.

**II. Confidentiality**

1. Employees shall not obtain confidential documents, books, paper, software, web pages, e-mails or any form of information of the company without the consent of the company, and shall not extract or disclose information related to the company's business and/or customers by oral, written or other methods.
2. Employees shall keep confidential the company's trade secrets (including but not limited to product design drawings, production process, purchase and sale channels, etc.) and other proprietary technologies and business information. Without the company's permission, employees are not allowed to ask or inquire about any kinds of confidential information of the company (including but not limited to product design drawings, production process, purchase and sale channels, etc.) from others in any form.
3. Employees shall abide by the Company's Confidentiality and Intellectual Property Agreement and other relevant regulations.
4. From the date of resignation, the employee shall not log on the intranet of the company and/or the work email box provided by the company to read and obtain any information for any reason. Otherwise, the employee's behavior will constitute infringement and the company will investigate the employee's corresponding liability for infringement and damages liabilities.
5. Any employee who violates the above regulations shall be subject to disciplinary actions. If the circumstances are serious, the labor contract shall be terminated and legal responsibilities shall be pursued.

**VII. Corporate Property Rights**

All employees shall protect the intellectual property rights of the company, its overseas parent companies, subsidiaries and other affiliated companies as well as its customers, including but not limited to trademarks, patents, proprietary technologies, copyrights and confidential information. Employees shall not infringe the above-mentioned intellectual property rights either during the employment period or after leaving the company.

**Inventus Employee Handbook (English translation)**

The AcePower Employees, including Yancey Yang, Gerrard Liu, Robert Cao, Andy Quan, Lucken Cai, Alan Liu, Conner Guan, and Paul Mai all acknowledged and agreed to undertake these obligations, and more generally to protect and treat as confidential all Inventus trade secrets and/or confidential information.

32.    As another example, the Employee Handbook also requires employees to abide by the company's Confidentiality and Intellectual Property Agreement, which is expressly incorporated by reference.  This agreement further confirms that the employees are not permitted to disclose Inventus's trade secrets or other confidential information, and, using examples, broadly describes the types of information and materials which are considered to be Inventus trade secrets, which include the information and materials that were misappropriated by AcePower as alleged herein:

> **III. Party B shall keep confidential trade secrets, as well as business information that is valuable to Party A even when no special confidentiality measures have been taken**
>
> 1. During his term of office, Party B will inevitably come into contact with a large number of information and materials that are owned by Party A and have realistic applicability and can confer economic benefits to Party A, including "trade secrets" and "business information that is valuable to Party A even when no special confidentiality measures have been taken". Party B shall be, of course, obligated to keep them confidential for Party A.
>
> 2. Party B shall not directly or indirectly publicize, disclose, leak, or use for non-working purposes, allow third parties to use Party A's trade secrets and business information that is valuable to Party A even when no special confidentiality measures are taken, for personal purposes or for the benefit of third parties in any way during employment (except as required for performing work duties) and at any time after termination of employment (without time limit). Such information includes but is not limited to: relevant customer information, customer lists or requirements, price lists, pricing mechanisms, marketing and sales information, business plans or transactions, employees or managers, financial information and plans, data, designs, formulas, product lines, prototypes, services, research activities, source codes and computer systems, software, any document marked as confidential (or similar expressions), any information that Party B is instructed as confidential, information that Party B determines to be confidential to Party A using logic, and any information that customers/suppliers and other personnel grant to Party A. in confidence

**Inventus Confidentiality and Intellectual Property Agreement (English translation)**

33.     Inventus also employs additional security measures to safeguard its trade secrets, including restricting access to information to select individuals within the company on a need-to-know basis; confidentiality labels; encryption of transferred data; and a wide array of additional physical security and monitoring measures.  As just one example of Inventus's physical security measures, it requires key card access, which can only be granted by Inventus, to enter into its buildings, and additional key card access to enter any separate engineering, manufacturing, testing, or research center within the building.  Other examples of Inventus's security measures include pre-hire security and background checks, required security training before accessing confidential documents, mandated ongoing training on security issues, limiting access to files only on a need-to-know basis, periodic review of security clearances, implementation of a system to report suspicious activity, and requirements that work spaces need to be cleared of confidential documents when employees are not at their desks.  These measures further ensured that the AcePower Employees understood the secrecy of Inventus's trade secrets and confidential information, and were fully aware that such information was to be maintained as confidential.

34.     Inventus reasonably relied on the AcePower Employees' representation and agreements as contained in their acknowledgement of Employee Handbook and confidentiality and intellectual property agreements.  Unbeknownst to Inventus, however, the AcePower Employees blatantly abrogated their obligations to Inventus when, at AcePower's direction, they mass downloaded large volumes of Inventus's confidential trade secrets in the weeks leading up to their respective departures to AcePower to bring to AcePower for use in improving and developing competing products (a fact that was also hidden).

C.     **AcePower Misappropriates Inventus's Trade Secrets**

35.     By the time AcePower began working on medium-to-large sized battery packs, Inventus had already developed numerous proprietary battery pack, charger, and power supply

technologies, including its cutting-edge medium-to-large battery pack technologies.  In an unlawful attempt to overcome its late entry to the market for cutting-edge battery technologies, AcePower recruited senior Inventus engineers as part of a plan to acquire, copy, and use Inventus's trade secrets at AcePower.  As a result of their seniority, the AcePower Employees are knowledgeable about the development, testing, and implementation of Inventus's proprietary features, as well as the location and content of Inventus's confidential documents and/or source code associated with those features.  AcePower hired these employees to work in senior positions at AcePower for the purpose of improving, testing, and developing products that directly compete with those they previously worked on at Inventus, and, within the scope of that work, instructed them to unlawfully take Inventus's confidential trade secret materials to bring to AcePower, and to use Inventus's confidential trade secrets in their work at AcePower.

36.     Forensics examination of Inventus computer systems used by the AcePower Employees revealed that they unlawfully acquired and took with them to AcePower massive volumes of highly confidential Inventus trade secret documents and other trade secret materials in connection with leaving their employment at Inventus.  Unbeknownst to Inventus, between August 2019 and February 2020, just weeks before leaving Inventus, the AcePower Employees, for the purpose of benefiting AcePower's business, collectively downloaded over 100,000 technical, marketing, sales, business, and other human resources documents related to Inventus's proprietary battery pack, charger, and power supply technologies.  In addition, prior to the AcePower Employees' departure, they used external storage devices and/or internet based storage services— in violation of Inventus's policies—to take Inventus's confidential documents and source code. Acting at the direction of AcePower, the AcePower Employees concealed this theft from Inventus

through their surreptitious activities and affirmative misrepresentations, including misrepresenting to Inventus their reasons for leaving the company.

37. For example, Robert Cao served as a Mechanical Engineering Manager at Inventus. Cao was one of the first engineers recruited by AcePower to steal Inventus's trade secrets—his last day at Inventus was August 16, 2019. In accordance with AcePower's plan, during his last weeks at Inventus, Cao mass downloaded hundreds of documents encompassing Inventus's trade secrets, only to immediately depart to AcePower with those documents pursuant to AcePower's direction. The documents accessed by Cao included confidential schematics, drawings, technical presentations, and design specifications describing Inventus's trade secret technologies. These materials included documents and information that AcePower knew originated at Inventus's Illinois headquarters in this District as well as the technologies in them, including documents and information that originated from Inventus in Woodbridge, IL. Moreover, Cao requested and/or accessed these materials using his work computer. AcePower used these confidential documents, including confidential schematics and design guidelines, to improve and design products that compete with Inventus. Cao is currently the Senior Manager in the Mechanical Team at AcePower's R&D department. Moreover, AcePower used confidential Inventus's documents and information, including designs for products that Inventus has not yet released, to file patent applications in Cao's name shortly after he joined AcePower from Inventus. In particular, Cao is the sole named inventor of the following patents, which list AcePower as the assignee: Chinese Patent Nos. CN210467927U, titled "A lithium battery packaging container;" CN210272576U, titled "A lithium ion battery cell integration and packaging;" and CN210272484U, titled "A lithium ion battery formation cabinet." These patents include Inventus's trade secret information, and were filed on September 20, 2019—a mere 35 days after Cao joined AcePower—which

demonstrates that AcePower immediately began using Inventus's trade secrets to improve and develop products to compete with Inventus. These patents include schematics, drawings, and descriptions of various aspects of the mechanical engineering and manufacturing processes that are substantially similar to the confidential technology designed by Inventus for its medium-to-large sized battery packs, which have not yet been released to the public. The design and implementation detailed in these patents reflect Inventus's proprietary research and development that focus on creating safe, reliable, smart, and efficient battery packs. Such information is the results of years of engineering and research efforts by Inventus, and is critical for Inventus's continued success in the market. Without the confidential information misappropriated from Inventus, AcePower would not have been able to file these patent applications and describe the details of these mechanical and manufacturing designs. By taking Inventus's confidential designs and implementation details as its own and incorporating them into AcePower's patent applications, AcePower has gained a significant head start in developing competing battery pack technology.

38. AcePower continued its plan to steal Inventus trade secret materials by recruiting Gerrard Liu, who left Inventus on October 10, 2019, and having him take to AcePower substantial quantities of Inventus's trade secret materials. Liu served as a Chief Firmware Engineer at Inventus, and thus had access to Inventus's proprietary technical documents. In accordance with AcePower's plan, during his final days at Inventus, Liu accessed and downloaded a significant number of files including Inventus's trade secret information. For example, Liu downloaded confidential documents containing proprietary information regarding battery packs, chargers, and power supplies, design requirements, detailed specifications, source code, configurations, and schematics, and took them with him to AcePower. These materials included documents and information that AcePower knew originated at Inventus's Illinois headquarters in this District as

well as the technologies in them, including documents and information that originated from Inventus in Woodbridge, IL. Moreover, Liu requested and/or accessed these materials using his work computer. AcePower acquired these confidential documents and source code to improve, test, and design products to compete with Inventus. Although Liu represented to Inventus that he was leaving the company to start his own business, he is currently a Firmware Manager at AcePower.

39. AcePower's scheme also included recruiting additional senior Inventus engineers to misappropriate critical compliance and testing trade secrets from Inventus, and that plan involved the hiring of Andy Quan, who left Inventus on January 3, 2020, and having him take with him to AcePower substantial quantities of Inventus's trade secret materials. Quan served as a Compliance Engineering Manager at Inventus, and similarly had access to Inventus's proprietary trade secrets. Quan accessed and downloaded a significant amount of confidential technical documents and source code in the weeks leading to his departure from Inventus to take with him to AcePower. Specifically, Quan downloaded confidential documents regarding battery packs of all sizes, chargers, power supplies, as well as proprietary testing and improvement plans, and project management documents. These materials included documents that AcePower knew originated at Inventus's Illinois headquarters in this District as well as the technologies in them, including documents and information that originated from Inventus in Woodbridge, IL. Moreover, Quan requested and/or accessed these materials using his work computer. AcePower acquired these confidential documents to improve, test, and design products that compete with Inventus. Quan represented to Inventus that he was leaving the company because his hometown house was due for demolition and he needed to go back and make plans for rebuilding. In fact, however, Quan currently leads the Safety Regulation Lab at AcePower.

40.     AcePower's scheme also included recruiting Yancey Yang, who left Inventus on January 11, 2020, and having him take with him to AcePower substantial quantities of Inventus's trade secret materials.  Yang served as an Assistant Firmware Engineering Manager at Inventus, and similarly had access to Inventus's confidential technical information.  Like Quan, Yang accessed and downloaded a large amount of confidential technical documents and source code in the weeks leading to his departure from Inventus to take with him to AcePower.  Specifically, Yang downloaded confidential documents regarding battery packs of all sizes, chargers, power supplies, as well as testing and improvement plans, and project management documents.  These materials included documents that AcePower knew originated at Inventus's Illinois headquarters in this District as well as the technologies in them, including documents and information that originated from Inventus in Woodbridge, IL.  Moreover, Yang requested and/or accessed these materials using his work computer.  AcePower acquired these confidential documents for use in improving, testing, and designing products that compete with Inventus.  Although Yang represented to Inventus that he was leaving the company for personal reasons, he currently leads the Software Team in the R&D department at AcePower.

41.     AcePower's scheme also included recruiting Lucken Cai, who left Inventus on February 28, 2020, and having him take with him to AcePower substantial quantities of Inventus's trade secret materials.  Cai served as a Senior Supporting Engineer Manager in the Qualification and Costing Department at Inventus and had access to Inventus's proprietary information.  In the weeks leading up to his departure, Cai accessed and downloaded a large number of confidential documents containing Inventus's trade secrets.  These documents include not only design, implementation, and engineering details, but also cost, project planning, salary, pricing, and other confidential business and technical information critical to Inventus's success.  These materials

included documents that AcePower knew originated at Inventus's Illinois headquarters in this District as well as the technologies in them, including documents and information that originated from Inventus in Woodbridge, IL. Moreover, Cai requested and/or accessed these materials using his work computer. AcePower acquired these confidential documents to improve, design, test, and develop products that compete with Inventus and gain insights into Inventus's confidential business strategies, relationships, and internal talent pools. Although Cai represented to Inventus that he was leaving the company for personal reasons, he is currently the R&D Director at AcePower.

42.     In addition to the massive quantities of confidential technical and business information that the AcePower Employees took with them from Inventus to AcePower, there will also be an inevitable disclosure of additional Inventus trade secrets because AcePower competes directly with Inventus in the battery and charger market over the same clients and suppliers. The AcePower Employees also hold the same or similar technical management roles as they did at Inventus, and AcePower, instead of taking steps to prevent disclosure of Inventus's trade secrets, have directed the AcePower Employees to take and use Inventus's trade secrets for its own benefit. The AcePower Employees were intimately familiar with Inventus's proprietary information regarding the battery pack, charger, and power supply technologies while at Inventus, making them ideal agents for AcePower to hire for the taking and transplanting of Inventus's confidential trade secret materials. By way of example, as further alleged above, Lucken Cai, Gerrard Liu, Yancey Yang, and Robert Cao were actively involved in research and development of battery projects at Inventus, particularly in the recent development of medium-to-large battery pack technologies. Moreover, Andy Quan was responsible for compliance testing of a wide range of battery, charger, and power supply products at Inventus and worked extensively with Inventus's compliance testing

and design control procedures for these products. All of this confidential and proprietary information from Inventus will assist AcePower in competing against Inventus by saving AcePower the time, money, and additional resources Inventus already spent developing these technologies. Not only were the AcePower Employees intimately familiar with this information, but they also collectively downloaded over 100,000 confidential documents and source code from Inventus at AcePower's direction in order to increase its competitive position. These facts demonstrate not only actual misappropriation but additionally a clear threat of misappropriation in the form of inevitable disclosure of Inventus's trade secrets.

43.     The highly confidential documents misappropriated by the AcePower Employees, some of which include very detailed technical requirements, specifications, schematics, business strategies, and source code related to Inventus's technologies, constitute Inventus trade secrets, and include trade secret information regarding implementation, marketing, cost, pricing, human resources, contracts, and other confidential details regarding the proprietary Inventus technologies discussed above.

44.     For example, the AcePower Employees accessed and downloaded Inventus's documents and source code, including at least:

- Battery source code for medium-to-large sized battery packs and small battery packs
- Battery bootloader and source code version lists
- Battery requirement specifications
- Battery pack block diagrams
- Battery work mode state diagrams
- Equipment contracts
- Monthly project cost reports
- Compliance testing documents

- Manufacturing documents

- Automation videos

- Performance appraisals

- Organization charts

- Salary adjustment documents

45.     In furtherance of the theft, the AcePower Employees used cloud-based storage services, such as the Baidu Net Disk, and external file storage devices that were not returned to Inventus before their departure to steal Inventus's documents and source code in the weeks leading up to their departure.

46.     Since its employees acquired these documents, AcePower has both acquired and used Inventus's trade secrets in connection with its products and proceeded to disclose Inventus's trade secrets in patent applications.  AcePower is now developing and testing its very first branded medium-to-large sized battery pack, and is moving quickly to use Inventus's technology against it.  Further, AcePower has already filed three Chinese patent applications naming former Inventus engineer, Robert Cao, as the sole inventor within 35 days of Cao's departure from Inventus.  These Chinese patent applications describe various mechanical engineering features and design features of battery packs that are very similar to trade secret aspects of Inventus's battery pack products, which are still confidential and under development, and which Cao had similarly worked on at Inventus.  In particular, AcePower's Chinese patents include diagrams similar to Inventus's confidential schematics regarding the mechanical engineering aspects of Inventus's battery pack technology.

47.     AcePower intentionally used the trade secrets it has improperly acquired from Inventus.  In particular, AcePower has approached a longtime Inventus customer based in the United States to supply similar products to those currently supplied by Inventus in the medium-to-

large sized battery pack market. AcePower has also approached at least one of Inventus's U.S.-based suppliers, and requested Inventus's schematics to obtain parts specifically designed for Inventus, that Inventus uses in its proprietary medium-to-large sized battery pack designs.

48.     At all relevant times, the AcePower Employees were acting within the scope of their employment at AcePower, which involved them taking on senior, managerial roles in connection with developing competing products, and all acts of misappropriation alleged herein were in furtherance of work within that scope, including the design, development, testing, marketing and sale of products that compete with Inventus using Inventus's trade secrets. AcePower knew that the AcePower Employees had previously been employed by Inventus as well as the nature of their work and responsibilities as Inventus employees, and their obligations to Inventus to maintain Inventus's trade secrets in confidence, to refrain from taking Inventus's confidential materials away from Inventus, to refrain from bringing those materials to AcePower and/or using them in any way outside of Inventus. AcePower, including through the AcePower Employees it hired sequentially over time as alleged herein, knew and/or should have known that the AcePower Employees had access to Inventus's trade secrets and confidential information. Yet AcePower acquired, used, and/or disclosed Inventus's trade secrets by instructing and allowing the AcePower Employees to acquire and/or use Inventus's trade secrets and confidential information in, among other things, developing Defendant's products and strategies. At all relevant times, AcePower's theft was willful and malicious, including because it was intentionally directed to avoid time-consuming and expensive investments in its own research and development, obtain a massive time savings in releasing its products to the market, and unlawfully earn substantial sums by taking away Inventus's current and potential customers using Inventus's own technology against it in competing products.

## COUNT I

**Trade Secret Misappropriation Under the Defend Trade Secrets Act (Inventus Power, Inc.)**

**(18 U.S.C. §§ 1836(b), 1839 *et seq.*)**

49.     Inventus incorporates and re-alleges each and every allegations above as if fully set forth herein.

50.     Inventus is the owner of certain valuable trade secrets contained in and relating to battery packs, chargers, docking stations, and power supplies, including as described herein.  These trade secrets relate to Inventus's products and services that are used in or intended for use in interstate and foreign commerce.  These confidential and proprietary trade secrets are of substantial economic value and have conferred a competitive advantage on Inventus.

51.     As stated above, Inventus sells its products throughout the United States.  For example, Inventus's standard and custom-made battery packs, smart chargers, docking stations, and power supplies are sold and used throughout the United States.

52.     At AcePower's direction, the AcePower Employees gained access to Inventus's trade secrets in the course of an employee-employer relationship between Inventus and the AcePower Employees.  At AcePower's direction, the AcePower Employees improperly acquired and retained Inventus's trade secrets upon termination of their employment with Inventus for use in their competing work for AcePower.

53.     AcePower is in possession of the foregoing trade secrets due to the AcePower Employees subsequently taking these trade secrets, which are subject to confidentiality agreements in which the AcePower Employees expressly acknowledged and confirmed the confidential nature of these secrets, with them to AcePower for use.  At all relevant times, AcePower was aware that the AcePower Employees had obligations to Inventus to refrain from taking Inventus's trade secrets.

54.     AcePower improperly acquired Inventus's trade secrets from the AcePower Employees and have since improperly used and disclosed those Inventus trade secrets, including by incorporating them into products AcePower develops as its own, and approaching Inventus's customers, suppliers, and additional employees, using Inventus's confidential trade secret information, and disclosing them in patent applications filed by AcePower.

55.     AcePower has misappropriated Inventus's trade secrets by acquiring, using, and/or disclosing the information as described above, including in connection with products marketed, offered, and/or sold or to be sold in the United States.

56.     AcePower willfully and maliciously misappropriated Inventus's trade secrets in order to gain economic value from that information.

57.     Inventus has taken reasonable steps to maintain the secrecy of its trade secrets, including by requiring confidentiality and/or confidentiality provisions in employee handbooks and confidentiality agreements to be signed by any party granted access to Inventus's trade secrets, and through the physical security measures described above.

58.     As alleged herein, AcePower committed numerous acts in furtherance of its misappropriation in the United States and in this District, including misappropriating trade secrets that it obtained and/or originated from this District with knowledge and intent to harm Inventus in this District, as well as attempting to sell and/or selling products in the U.S. and this District that benefit from AcePower's theft.

59.     As a direct and proximate result of AcePower's current and continued misappropriation of Inventus's trade secrets, Inventus has been damaged and will suffer imminent and irreparable harm.

60.     Unless enjoined by this Court, AcePower's acts of misappropriation will continue and Inventus will continue to suffer irreparable harm.

61.     Inventus has no adequate remedy at law.

## COUNT II

**Trade Secret Misappropriation Under Illinois Trade Secrets Act (Inventus Power, Inc. and ICC Electronics (Dongguan) Ltd.)**

**(765 ILCS 1065 *et seq.*)**

62.     Inventus incorporates and re-alleges each and every allegation above as if fully set forth herein.

63.     Inventus is the owner of certain valuable trade secrets contained in and relating to battery packs, chargers, docking stations, and power supplies, including as described herein. These confidential and proprietary trade secrets are of substantial economic value and have conferred a competitive advantage on Inventus.

64.     At AcePower's direction, the AcePower Employees gained access to Inventus's trade secrets in the course of an employee-employer relationship between Inventus and the AcePower Employees. At AcePower's direction, the AcePower Employees improperly acquired and retained Inventus's trade secrets upon termination of their employment with Inventus for use in their competing work for AcePower.

65.     AcePower is in possession of the foregoing trade secrets due to the AcePower Employees subsequently taking these trade secrets, which are subject to confidentiality agreements in which the AcePower Employees expressly acknowledged and confirmed the confidential nature of these secrets, with them to AcePower for use. At all relevant times, AcePower was aware that the AcePower Employees had obligations to Inventus to refrain from taking Inventus's trade secrets.

66. AcePower improperly acquired Inventus's trade secrets from the AcePower Employees and has since improperly used and disclosed those Inventus trade secrets, including by incorporating them into products AcePower develops as its own, and approaching Inventus's customers, suppliers, and additional employees, using Inventus's confidential trade secret information, and disclosing them in patent applications filed by AcePower.

67. AcePower has misappropriated Inventus's trade secrets by acquiring, using, and/or disclosing the information as described above, including in connection with products marketed, offered, and/or sold or to be sold in the United States.

68. AcePower willfully and maliciously misappropriated Inventus's trade secrets in order to gain economic value from that information.

69. Inventus has taken reasonable steps to maintain the secrecy of its trade secrets, including by requiring confidentiality and/or confidentiality provisions in employee handbooks and confidentiality agreements to be signed by any party granted access to Inventus's trade secrets, and through the physical security measures described above.

70. As alleged herein, AcePower committed numerous acts in furtherance of its misappropriation in the United States and in this District, including misappropriating trade secrets that it obtained and/or originated from this District with knowledge and intent to harm Inventus in this District, as well as attempting to sell and/or selling products in the U.S. and this District that benefit from AcePower's theft.

71. As a direct and proximate result of AcePower's current and continued misappropriation of Inventus's trade secrets, Inventus has been damaged and will suffer imminent and irreparable harm.

72.     Unless enjoined by this Court, AcePower's acts of misappropriation will continue and Inventus will continue to suffer irreparable harm.

73.     Inventus has no adequate remedy at law.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Inventus demands a trial by jury on all issues raised by the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Inventus prays for relief as follows:

1.     Award a temporary restraining order, preliminary injunction, and/or permanent injunction prohibiting AcePower and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from unfairly competing with Inventus by possessing and/or using Inventus's trade secrets.

2.     Award a temporary restraining order, preliminary injunction, and/or a permanent injunction restraining and enjoining AcePower from altering, destroying, or disposing of any evidence, in any form, relating to this action, including without limitation emails and paper and electronic documents, including current or archived electronic logs, metadata, and directories.

3.     Order AcePower to return all Inventus confidential and proprietary information in their possession and to cease and desist from its efforts to encourage employees and others, including the AcePower Employees, from violating Inventus's intellectual property rights relating to its confidential and proprietary information.

4.     Declare that AcePower has no rights or privileges to use Inventus's trade secrets.

5.        Award Inventus damages in an amount to be determined at trial, including without limitation, Inventus's lost revenues and profits, and any unjust enrichment, restitution, or disgorgement, plus a reasonable royalty to the extent permitted under the law.

6.        Award Inventus punitive damages in an amount to be determined at trial.

7.        Award Inventus pre-judgment and post-judgment interest.

8.        Award Inventus attorneys' fees and costs.

9.        Award Inventus any such other relief as the Court deems appropriate.

DATED: June 8, 2020                    Respectfully submitted,


                                       /s/ Gianni Cutri
                                       Gianni Cutri
                                       gianni.cutri@kirkland.com
                                       KIRKLAND & ELLIS LLP
                                       300 North LaSalle
                                       Chicago, IL 60654
                                       Telephone: (312) 862-2000
                                       Facsimile: (312) 862-2200

                                       Adam Alper (*pro hac vice forthcoming*)
                                       adam.alper@kirkland.com
                                       Natalie Flechsig (*pro hac vice forthcoming*)
                                       natalie.flechsig@kirkland.com
                                       KIRKLAND & ELLIS LLP
                                       555 California Street
                                       San Francisco, CA 94104
                                       Telephone: (415) 439-1400
                                       Facsimile: (415) 439-1500

                                       Michael De Vries (*pro hac vice forthcoming*)
                                       michael.devries@kirkland.com
                                       Kevin Bendix (*pro hac vice forthcoming*)
                                       kevin.bendix@kirkland.com
                                       Yimeng Dou (*pro hac vice forthcoming*)
                                       yimeng.dou@kirkland.com
                                       KIRKLAND & ELLIS LLP
                                       555 South Flower Street
                                       Los Angeles, CA 90071
                                       Telephone: (213) 680-8400
                                       Facsimile: (213) 680-8500

                                       Attorneys for Plaintiffs
                                       *INVENTUS POWER, and ICC*
                                       *ELECTRONICS (DONGGUAN) LTD.*

## **CERTIFICATE OF SERVICE**

I, Gianni Cutri, an attorney, hereby certify that on June 8, 2020, I caused a true and correct copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

DATED: June 8, 2020                  */s/ Gianni Cutri/*
                                        Gianni Cutri