**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| INVENTUS POWER, INC., and ICC ELECTRONICS (DONGGUAN) LTD. | ) ) | |
| | ) | Civil Action No.: 1:20-cv-03375 |
| Plaintiffs, | ) ) | |
| | ) | Honorable Robert M. Dow, Jr. |
| v. | ) ) | |
| | ) | Magistrate Judge Jeffrey Cummings |
| SHENZHEN ACE BATTERY CO., LTD., | ) ) | |
| Defendant. | ) ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL FORENSIC
INSPECTION PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ..................................................................................................... 1

II.    LEGAL STANDARDS ............................................................................................. 2

III.    ARGUMENT ............................................................................................................ 4

    A.    Article 277 Is Not A "Blocking" Statute ............................................... 4

    B.    The Factors Of Comity Favor Proceeding With Discovery Under The Federal Rules Of Civil Procedure ........................................................... 8

        1.    The importance to the investigation or litigation of the documents or other information requested.................................. 9

        2.    The degree of specificity of the request................................... 10

        3.    Whether the information originated in the United States. ........................ 11

        4.    The availability of alternative means of securing the information. .......... 11

        5.    The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located. ...................................................... 13

        6.    The hardship of compliance on the party or witness from whom discovery is sought...................................................... 15

IV.    CONCLUSION........................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Sys. Corp. v. Miller*,
  No. 1:17-CV-03252-RLY-MJD, 2018 WL 7350939 (S.D. Ind. Mar. 13, 2018)......................6

*3M v. Nippon Carbide Indus. Co.*,
  171 F.R.D. 246 (D. Minn. 1997).............................................................................................9

*Am. Home Assurance Co. v. Societe Commerciale Toutelectric*,
  104 Cal. App. 4th 406 (2002).................................................................................................5

*AstraZeneca LP v. Breath Ltd.*,
  No. 08-1512, 2011 WL 1421800 (D.N.J. Mar. 31, 2011) .....................................................13

*Autodesk, Inc. v. ZWCAD Software Co.*,
  No. 5:14-cv-01409, 2015 WL 1928184 (N.D. Cal. Mar. 27, 2015) ............................... *passim*

*Brown v. China Integrated Energy, Inc.*,
  No. CV112559BROPLAX, 2014 WL 12577173 (C.D. Cal. Aug. 15, 2014)..........................6

*Calderon v. Experian Info. Sols., Inc.*,
  290 F.R.D. 508 (D. Idaho 2013) .............................................................................................4

*Cooper Indus., Inc. v. British Aerospace, Inc.*,
  102 F.R.D. 918 (S.D.N.Y. 1984) ............................................................................................5

*Gucci Am., Inc. v. Curveal Fashion*,
  No. 09 CV 8458, 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010)................................3, 10, 14, 15

*Junjiang Ji v. Jling Inc.*,
  No. 15-CV-4194, 2019 WL 1441130 (E.D.N.Y. Mar. 31, 2019), *appeal
  dismissed sub nom. Ji v. Jling Inc.*, 799 F. App'x 88 (2d Cir. 2020)........................................7

*Linde v. Arab Bank, PLC*,
  706 F.3d 92 (2d Cir. 2013)....................................................................................................14

*Loops LLC v. Phoenix Trading, Inc.*,
  No. C08-1064 RSM, 2010 WL 786030 (W.D. Wash. Mar. 4, 2010).......................................6

*Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule
  "A"*,
  391 F. Supp. 3d 816 (N.D. Ill. 2019), *reconsideration denied in part*, No. 18
  CV 2188, 2019 WL 2357011 (N.D. Ill. June 4, 2019) ............................................................7

*Mickey's Linen v. Fischer*,
    No. 17 C 2154, 2017 WL 3970593 (N.D. Ill. Sept. 8, 2017)....................................................9

*Milliken & Co. v. Bank of China*,
    758 F. Supp. 2d 238 (S.D.N.Y. 2010)............................................................. *passim*

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
    365 F. Supp. 3d 916 (N.D. Ill. 2019) ...................................................................7

*Munoz v. China Expert Tech., Inc.*,
    No. 07-cv-10531 AKH, 2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011) ....................................6

*NIKE Inc. v. Wu*,
    349 F. Supp. 3d 346 (S.D.N.Y. 2018)...............................................9, 12, 14, 15

*Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*,
    No. 3:16 CV-00024, 2019 WL 1261352 (W.D. Ky. Mar. 19, 2019)............................. *passim*

*Polaris Indus., Inc. v. CFMOTO Powersports, Inc.*,
    No. CV 10-4362, 2012 WL 13028232 (D. Minn. Jan. 12, 2012) .............................................6

*Prot. Techs., Inc. v. Ribler*,
    No. 3:17-CV-00144, 2017 WL 923912 (D. Nev. Mar. 8, 2017) ............................................13

*Radiant Glob. Logistics, Inc. v. Furstenau*,
    368 F. Supp. 3d 1112 (E.D. Mich. 2019), *appeal dismissed*, 951 F.3d 393 (6th
    Cir. 2020) ...........................................................................................13

*Regal Beloit Am., Inc. v. Broad Ocean Motor LLC*,
    No. 4:16-CV-00111, 2017 WL 35702 (E.D. Mo. Jan. 4, 2017) ............................................15

*Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State
    Ins.)*,
    902 F.2d 1275 (7th Cir. 1990) ...........................................................................14

*Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*,
    No. 16 C 3401, 2017 WL 4287205 (N.D. Ill. Sept. 27, 2017)..............................8, 13, 14, 15

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) .......................................................................3, 10

*RKI, Inc. v. Grimes*,
    177 F. Supp. 2d 859 (N.D. Ill. 2001) .....................................................................9

*Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v.
    Rogers*,
    357 U.S. 197 (1958)...............................................................................14

*Societe Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*,
  482 U.S. 522 (1987).................................................................................2, 3, 8

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
  104 F. Supp. 3d 1150 (D. Or. 2015) ......................................................... *passim*

*Strauss v. Credit Lyonnais, S.A.*,
  249 F.R.D. 429 (E.D.N.Y. 2008) ...................................................................10, 14

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
  No. 17-CV-02191-SK, 2019 WL 6134958 (N.D. Cal. Nov. 19, 2019)...........................7, 12

*Tiffany (NJ) LLC v. Forbse*,
  No. 11-cv-4976, 2012 WL 3686289 (S.D.N.Y. Aug. 23, 2012)......................................12, 13

*Vringo, Inc. v. ZTE Corp.*,
  No. 14-cv-4988, 2015 WL 2380061 (S.D.N.Y. May 14, 2015) .........................................6, 15

*WeRide Corp. v. Kun Huang*,
  No. 5:18-CV-07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020)................................6

*Wultz v. Bank of China Ltd.*,
  942 F. Supp. 2d 452 (S.D.N.Y. 2013)........................................................... *passim*

*Zhizheng Wang v. Hull*,
  2020 WL 4734930 (W.D. Wash. June 22, 2020)....................................................7

**Statutes**

China's Civil Procedure Law Article 277............................................................ *passim*

**Rules**

Federal Rule of Civil Procedure 26(b)(1) .......................................................6

## I.     INTRODUCTION

Plaintiffs ICC Electronics (Dongguan) Ltd. and Inventus Power, Inc. (collectively, "Inventus") respectfully move the Court to compel Defendant Shenzhen Ace Battery Co., Ltd. ("AcePower") to proceed with the Court-ordered forensic inspection without submitting letters of request to the Chinese authorities in accordance with Hague Convention procedures.  As part of its latest bid to avoid Court-ordered discovery in this case, AcePower claims that the forensic inspection somehow conflicts with Article 277 of China's Civil Procedure Law, thereby requiring Chinese government approval—a process that AcePower knows could take years to resolve and will, in a practical if not an absolute sense, put an end to the forensic inspection in this case.  But there is no conflict with Article 277, and even if there was, U.S. law is clear that this Court has full authority to order AcePower to comply without resort to the Hague process.  AcePower's request is just the latest in a string of attempts to evade discovery, as well as the U.S. laws condemning trade secret theft—laws that Judge Dow has already found were likely violated here, requiring immediate injunctive relief and an expedited discovery investigation.

The framework for addressing this issue involves a well-established two-step analysis.  First, the party seeking to avoid discovery based on foreign law must show that the foreign law is in fact "blocking": *i.e.,* it bars production.  Notably, Article 277 does not apply to discovery the parties engage in voluntarily.  But that is exactly what happened here:  AcePower repeatedly voluntarily agreed to proceed with the forensic inspection, and even affirmatively ***relied*** on its intent to do so to benefit its positions in this case.  Though AcePower only recently raised the Hague Convention, it still to this day agrees that the forensic inspection should proceed, rendering its concerns over Article 277 moot, and in any event confirming that AcePower has long since waived any objections based on the Hague.  But even if it had timely objected, AcePower cannot carry its high burden to establish that Article 277 is blocking in these circumstances, as there is no

1

evidence that China has ever enforced Article 277 against a party for conducting discovery in connection with foreign litigation, let alone where a party has voluntarily agreed to facilitate the discovery at issue. AcePower's generalized invocation of Article 277 in a gambit to evade discovery is not nearly enough. And while the Court has every right to order that the forensic inspection proceed in China, it can also order AcePower to bring copies of the computer media to be inspected outside of China, thereby obviating Article 277 entirely.

Second, even if the Court determines that Article 277 is "blocking," U.S. law is clear that the Court may *still* order the forensic inspection to proceed without resort to Hague Convention procedures upon analyzing six "comity" factors. Every factor weighs strongly in favor of granting this motion, not the least of which is the critical nature of this discovery (as confirmed, *inter alia*, by Judge Dow in the TRO Order), as well as the well-established strong United States interests in protecting trade secrets that originated in the U.S. and are owned by U.S. companies, and enforcing its laws through the full and fair adjudication of lawsuits pending before U.S. courts.

Far from moving expeditiously to complete this critical discovery, as it has been ordered to do, AcePower wants to deep six it. That is not only inconsistent with numerous orders from this Court, but also the law on this issue. AcePower cannot justify deviating from this Court's mandate—and its own repeated agreements. Inventus's motion should be granted.

## II.     LEGAL STANDARDS

The "Hague Convention d[oes] not deprive the District Court of the jurisdiction it otherwise possesse[s] to order a foreign national party before it to produce evidence physically located within a signatory nation." *Societe Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 540-41 (1987). "A party claiming the shelter of foreign law to avoid discovery must first show that foreign law in fact bars production." *St. Jude Med. S.C., Inc. v. Janssen-Counotte,* 104 F. Supp. 3d 1150, 1161 (D. Or. 2015). If the court finds no conflict

between the foreign statute and U.S. laws, then the challenging party fails and the court need not conduct the second step of comity analysis.[1]  Even if a foreign statute is shown to block the requested discovery, "[i]t is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."  *Aerospatiale*, 482 U.S. at 544 n.29.  The Court may order the requested discovery after engaging in a "particularized analysis of the respective interests of the foreign national and the requesting nation" taking into account:

> (1) the importance to the litigation of the documents or other information requested;
> (2) the degree of specificity of the request; (3) whether the information originated
> in the United States; (4) the availability of alternative means of securing the
> information; (5) the extent to which noncompliance with the request would
> undermine important interests of the United States, or compliance with the request
> would undermine important interests of the state where the information is located.

*Id.* at 543-544, n.28.[2]  The party objecting to discovery based on foreign law bears the burden "of demonstrating that such law actually bars the production or testimony at issue" and "to meet that burden, the party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law."[3]  AcePower must also show a "genuine risk," not just a mere

---

[1]  *Phoenix Process*, 2019 WL 1261352, at *13 ("Because the Court finds no true conflict exists, there is no need for a comity analysis.").

[2]  Second and Ninth Circuits also consider (6) extent and nature of hardship inconsistent enforcement imposes on a foreign party.  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992); *Gucci Am., Inc. v. Curveal Fashion*, No. 09 CV 8458, 2010 WL 808639, at *2 (S.D.N.Y. Mar. 8, 2010).

[3]  *Wultz v. Bank of China Ltd.*, 942 F. Supp. 2d 452, 460-61 (S.D.N.Y. 2013) (denying Hague and compelling production of banking documents from China); *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-cv-01409, 2015 WL 1928184, at *2 (N.D. Cal. Mar. 27, 2015) (party "seeking to apply the Hague" has "the burden to demonstrate . . . reasons for employing Convention procedures") (quotation omitted); *St. Jude*, 104 F. Supp. 3d at 1167 ("party relying on foreign law has the burden of showing that such law bars production.").

possibility, that its production of discovery would cause it to be penalized by Chinese authorities.[4]

### III.     ARGUMENT

#### A.     Article 277 Is Not A "Blocking" Statute

Article 277 does not bar the forensic discovery at issue.  First, AcePower repeatedly voluntarily agreed to proceed with the forensic inspection, and waived any objections including in relation to the Hague Convention.  AcePower specifically agreed to the forensic inspection in the parties' first Joint Statement on discovery, and through every stage of this case thus far.[5]  Indeed, AcePower affirmatively *relied* on its intent to comply with the forensic inspection to benefit its positions in this case, *e.g.,* when it certified that it was in compliance with the TRO, and in its Motion for Protective Order, AcePower argued that the forensic inspection should proceed, ***before any other discovery commences***.[6]  And parties can, by agreement, address foreign law issues, without resorting to the Hague.[7]  Article 277's own terms specifically limit its application to evidence collection by "foreign agencies or individuals"—the opposite of the discovery envisioned

---

[4]     *See Autodesk*, 2015 WL 1928184, at *4; *see also id.* at *5 ("Chinese companies may not avoid producing documents in United States litigation by citing to broad concerns that liability may be imposed under 'unclear' or 'amorphous' Chinese laws.").

[5]     *See, e.g.,* Dkt. 55 at 1 ("[T]he parties have agreed to extend the TRO . . . which the parties believe will allow them to conduct the discovery (including forensic discovery) . . . and allow time for the Court's decision."); *id.* at 4 (agreeing to "forensic examination . . . [that] shall at least include a reasonable search of the parties' relevant media for potentially relevant files").

[6]     Dkt. 54 ("ACE has conducted keyword searches related to Plaintiff to determine if any of the former employees' devices or drives contain any of Plaintiff's documents, files, or other materials.  ACE has not found that it possesses or has accessed, reviewed, used, disclosed, or divulged any Inventus documents, files, or other materials."); Dkt. 69 at 3 ("[N]one of [Inventus's] requests [for production] can be reasonably fulfilled without a proper inspection. . . . Accordingly, request for production should only be entertained after the inspection, if there are any documents to be produced related to Plaintiffs' trade secrets.").

[7]     *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 520 (D. Idaho 2013) ("There is no provision under Chilean law … preventing a plaintiff or its employees or agents in Chile from ***cooperating with the courts in the U.S. voluntarily*** …."); Fang Decl. ¶ 24 ("I am not aware of any Chinese law or regulation that generally forbids the litigant from voluntarily opening up 'access' of foreign individuals or organizations to documents, information, or objects that might be used in a civil litigation in a foreign country.").

here, where AcePower itself has repeatedly agreed to facilitate this discovery, through agreed-to examiners whose teams include Chinese nationals. And in view of AcePower's repeated agreements to promptly proceed with the forensic inspection (and reliance on that agreement), any objection relating to Article 277 is untimely and long since waived.[8]

Second, AcePower has not established that Article 277 is blocking. Courts invariably come out ***against*** application of the Hague Convention where a party attempts to "avoid producing documents in United States litigation by citing to broad concerns that liability may be imposed under 'unclear' or 'amorphous' Chinese laws."[9] It is AcePower's heavy burden to "provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by . . . foreign law, the basis for its relevance, and the application of foreign law to the facts of this case." *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, No. 3:16 CV-00024, 2019 WL 1261352, at *11 (W.D. Ky. Mar. 19, 2019). AcePower cannot do so here. Indeed, there is no evidence that China has ever enforced Article 277 against a party for conducting discovery in connection with foreign litigation, especially where that party voluntarily agreed to a forensic inspection.[10] Ex. 1 (Fang Decl.) ¶¶ 12-

---

[8]  *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 918–19 (S.D.N.Y. 1984) ("Defendant has waived any right to claim protection under the Hague Convention. Defendant made no effort to seek protective relief when the discovery request was served upon it."); *Am. Home Assurance Co. v. Societe Commerciale Toutelectric*, 104 Cal. App. 4th 406, 429-30 (2002) ("[T]he party seeking to utilize Hague Convention procedures has the burden of convincing the trial court that they are justified by considerations of international comity. It necessarily follows that a party may indeed waive the claim that discovery must proceed under the Hague Convention, by failing to properly raise the issue.").

[9]  *Autodesk*, 2015 WL 1928184, at *4-5, 9 ("ZWSoft does not adequately support its contention that China 'may' consider its source code to be or contain state secret information").

[10]  *Autodesk*, 2015 WL 1928184, at *2, *5 ("[A] party seeking to apply the Hague Convention procedures has the burden to demonstrate appropriate reasons for employing Convention procedures" and "a generalized assertion that production of ZWSoft's source code may violate Chinese privacy laws is not sufficient to establish that a genuine sovereign interest is at issue."); *St. Jude*, 104 F. Supp. 3d at 1167 ("[t]he party relying on foreign law has the burden of showing that such law bars production."); *Wultz*, 910 F. Supp. 2d at 559–60 ("BOC has produced no evidence that it has been meaningfully sanctioned by the Chinese government for complying with the two previous U.S. court orders to produce documents in contravention

24.  Chinese authorities do not consider such evidence collection to fall within Article 277, and do not intend or have the resources to oversee such activities.  *Id.* ¶¶ 9-10.  To the contrary, Chinese parties frequently participate in discovery activities such as those at issue without implicating Article 277 or the Hague.[11]  *Id.* ¶¶ 12-24 (describing cases "in which companies based in mainland China complied with discovery under the Federal Rules," including forensic inspection performed by the staff of the neutral examiner in this case, Mr. Roffman).

Moreover, as Mr. Fang confirms, engaging an independent third party to conduct the forensic inspection of AcePower's devices is unlikely to be deemed "investigation and evidence

---

of China's bank secrecy laws."); *Vringo, Inc. v. ZTE Corp.*, No. 14-cv-4988, 2015 WL 2380061, at *3 (S.D.N.Y. May 14, 2015) (requiring discovery from Chinese company where "it is no better than debatable that there is a true conflict between Chinese and U.S. law").

[11] *See, e.g.*, *WeRide Corp. v. Kun Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209, at *5 (N.D. Cal. Apr. 24, 2020) ("As directed by the Court, FTI undertook the following tasks as part of its investigation: (1) quantifying and qualifying the scope of [defendants'] document/email destruction, (2) recovering, to the extent possible using commercially reasonable efforts, any documents destroyed, and (3) describing, to the extent possible, the nature and contents of any destroyed documents that cannot be recovered."); *3D Sys. Corp. v. Miller*, No. 1:17-CV-03252-RLY-MJD, 2018 WL 7350939 (S.D. Ind. Mar. 13, 2018) ("[T]he Court orders Union Tech to produce the information and/or [searchable electronic media] devices within fourteen (14) days from the date of this Order"); *see also Munoz v. China Expert Tech., Inc.*, No. 07-cv-10531 AKH, 2011 WL 5346323, at *1 (S.D.N.Y. Nov. 7, 2011) ("Defendants argue that the procedures of the Hague Convention should first be followed," but "[t]hese procedures are slow and cumbersome, and subject discovery to the law of the country where the producing party is located."  Because "[t]he lawsuit is properly in this Court's jurisdiction, involves securities sold in the United States and under the protection of United States' laws governing United States capital markets, and implicates important United States' policies and practices," then, "[i]n the circumstances, discovery will proceed under the Federal Rules of Civil Procedure."); *Loops LLC v. Phoenix Trading, Inc.*, No. C08-1064 RSM, 2010 WL 786030, at *4 (W.D. Wash. Mar. 4, 2010) ("Defendants make no contention that Convention procedures will facilitate the gathering of evidence while protecting China's sovereign interests.  Instead, the tenor of Defendants' argument is that because China joined part of the Hague Evidence Convention, Plaintiffs should not be allowed to take the depositions of Chinese persons at all, an argument contrary to the policies behind the Convention. . . . Thus, the Court declines to command the use of these optional procedures."); *Polaris Indus., Inc. v. CFMOTO Powersports, Inc.*, No. CV 10-4362, 2012 WL 13028232, at *2, *5 (D. Minn. Jan. 12, 2012) (analyzing plaintiff's motion to compel under FRCP and holding that non-party parent company "CFMOTO-China and Defendant are so closely related that Defendant should ***be required to disclose information in CFMOTO-China's physical possession***"); *Brown v. China Integrated Energy, Inc.*, No. CV112559BROPLAX, 2014 WL 12577173, at *2 (C.D. Cal. Aug. 15, 2014) ("The Court will examine the subject document Requests using the general standard set forth in Federal Rule of Civil Procedure 26(b)(1)" where plaintiff moved to compel documents from defendant China Integrated Energy, Inc.).

collection" within the territory of the PRC as contemplated by Article 277. *Id.* ¶ 5. Specifically, the legislative history of Article 277 confirms it is intended to protect the integrity of ***PRC judicial sovereignty*** and the exercise of investigative power reserved for the Chinese judicial authorities. *Id.* As such, performing a forensic inspection for use ***in a U.S. court*** is not covered by Article 277 because it is not for purposes of being presented to the Chinese judicial authorities. *Id.* ¶¶ 9-10. And Mr. Roffman's forensic examination team includes Chinese nationals who can perform the forensic inspection in China, which would thus not invoke Article 277. *Id.* ¶ 11.

Although other courts have—in different circumstances—found Article 277 to satisfy this first step of the analysis, those decisions are highly distinguishable. For example, in *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916 (N.D. Ill. 2019), unlike here, the Court found that the Chinese party had not agreed to the forensic discovery at issue (*id.* at 921 n.3), and ultimately did not rely on its Article 277 analysis, instead repeatedly emphasizing its opinion that Motorola's motion to compel was "untimely." *Id.* at 921, 927 ("Motorola's motion, then, must be denied ***without any foray into the complex issues of Chinese law***"). Additionally, the court found the Chinese party had already produced over ***two million documents*** such that additional documents would be "cumulative." *Id.* at 923, 929. Here, AcePower has produced no other discovery. Those same circumstances were present in *Sun Group,* which further noted that the plaintiff "may be able to obtain a substantial portion of its requested documents" from its U.S. subsidiary, which is not the case here. *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, No. 17-CV-02191-SK, 2019 WL 6134958, at *2, *5-6 (N.D. Cal. Nov. 19, 2019).[12] Neither of the

---

[12] *See also Zhizheng Wang v. Hull*, 2020 WL 4734930 (W.D. Wash. June 22, 2020) (only analyzing video depositions under Art. 277); *Junjiang Ji v. Jling Inc.*, No. 15-CV-4194, 2019 WL 1441130, at *11 (E.D.N.Y. Mar. 31, 2019), *appeal dismissed sub nom. Ji v. Jling Inc.*, 799 F. App'x 88 (2d Cir. 2020) (same); *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816, 826 (N.D. Ill. 2019), *reconsideration denied in part*, No. 18 CV 2188, 2019 WL 2357011 (N.D. Ill. June 4, 2019) (only analyzing service of complaint under Art. 277).

cases assessed the likelihood of enforcement of Article 277 on ordinary discovery relating to U.S. litigation—a fundamental requirement in the analysis. *Autodesk*, 2015 WL 1928184, at *5.

Lastly, as AcePower acknowledged, Article 277 would have no application whatsoever if the forensic examination took place outside of China. Dkt. 101 at 4 (AcePower asserting that "ACE's main concern is that ***since the forensic examination is to be conducted in China***," Article 277 applies). Although the inspection may certainly occur in China without regard to the Hague Convention, the Court may obviate this dispute by ordering AcePower to bring copies of the contents of the laptops, hard drives and other media to a location outside of China to be inspected (for instance to this District). Indeed, AcePower agrees that the inspection must proceed, and has waived any objections to bringing copies of the media outside of China.

### B. The Factors Of Comity Favor Proceeding With Discovery Under The Federal Rules Of Civil Procedure

Even if Article 277 is determined in these circumstances to be a blocking statute (it is not), that does not end the inquiry—to the contrary, a blocking statute does not deprive an American court of the power to compel a party subject to its jurisdiction to participate in the allegedly banned discovery.[13] In assessing whether to order such discovery without resort to the Hague Convention, courts evaluate the multi-factor comity analysis established by the Supreme Court in *Societe Nationale*.[14] Each of those factors indisputably favors proceeding under the FRCP.

---

[13] *Aérospatiale*, 482 U.S. at 544 n.29; *see also Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2017 WL 4287205, at *1 (N.D. Ill. Sept. 27, 2017) ("French blocking statute 'do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute.'… Hague Convention [procedures] are not 'mandatory' for seeking discovery located in a foreign country . . . ."); *Wultz*, 942 F. Supp. 2d 452, 459 (S.D.N.Y. 2013) ("Hague Convention process is optional, not mandatory, and does not deprive a District Court of the jurisdiction it would otherwise possess 'to order a foreign national party before it to produce evidence physically located within a signatory nation.'").

[14] In applying the comity factors, Courts regularly find it appropriate to proceed under the Federal Rules, even when foreign law prohibit it. *Milliken*, 758 F. Supp. 2d at 249 ("[t]he balance of national interests, then, tips in favor of proceeding with discovery under the Federal Rules" instead of the Hague); *Wultz*, 942 F.

8

1.    The importance to the investigation or litigation of the documents or other information requested.

Inventus's request to examine the computers associated with the eight AcePower employees accused of misappropriation is central to Inventus's forthcoming motion for preliminary injunction to establish the extent of AcePower's misappropriation, and irreparable harm to Inventus.[15]  Only a forensic inspection of the AcePower Employees' laptops, hard drives and other media they have accessed at AcePower can show how AcePower disseminated those files, and in particular whether AcePower deleted them after use.[16]  This is highly relevant to the core misappropriation allegations in this case, and is necessary to assess AcePower's assertions that it has not used or disseminated Inventus's trade secrets.[17]  Forensic inspection is particularly critical given the evidence acknowledged by the Court's TRO order confirming that the AcePower Employees attempted to conceal the theft by destroying their electronic paper trail.  Dkt. 48 at 4.

---

Supp. 2d 452; *3M v. Nippon Carbide Indus. Co.*, 171 F.R.D. 246, 250-51 (D. Minn. 1997) (compelling inspection of defendant's plant and manufacturing process in Japan under Federal Rules).

[15]  *Wultz*, 910 F. Supp. 2d at 556 ("[T]he importance of the documents requested by plaintiffs in its First Requests weighs in favor of granting plaintiffs' motion to compel….[O]nce plaintiffs' discovery requests have been narrowed . . . , the specificity factor will weigh in plaintiffs' favor as well."); *Phoenix Process,* 2019 WL 1261352, at *14 ("The first two factors support Phoenix's position.  Production of contracts or other business communications . . .  could form the basis of Phoenix's breach of contract and KUTSA claims….Additionally, Phoenix's requests are specific and tailored…"); *NIKE Inc. v. Wu*, 349 F. Supp. 3d 346, 365 (S.D.N.Y. 2018) ("The Magistrate Judge did not clearly err in determining that the Subpoenas were sufficiently specific and that this weighed in favor of granting the Assignee's motion to compel.").

[16]  Dkt. 11 ¶¶ 6, 9-15, 21, 22, 25-29, 31-34 (detailing how Mr. Yan deleted more than 1500 documents from his laptop the day before he departed Inventus and Mr. Quan deleted his Baidu Netdisk history database, which provides data storage capacities); *Mickey's Linen v. Fischer*, No. 17 C 2154, 2017 WL 3970593, at *11 (N.D. Ill. Sept. 8, 2017) ("Illinois case law is equally clear in holding that a defendant's elimination of computer files … allows for an inference of misappropriation"); *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 877 (N.D. Ill. 2001) ("[D]efendants' spoliation of evidence on their computer supports a negative inference that defendants destroyed evidence of misappropriation").

[17]  Dkt. 38-1 at 3 ("Plaintiff has no evidence whatsoever that the former employees took any document or trade secret with them to Defendant, or that Defendant induced the former employees to bring Plaintiff's documents with them."); Dkt. 54 at 1-2 ("ACE has not found that it possesses or has accessed, reviewed, used, disclosed, or divulged any Inventus documents, files, or other materials.").

Indeed, AcePower has made it clear that it intends to rely on such an absence of evidence to prove its case, previously contending that it ran keyword searches for Inventus materials on certain of its computers, but found nothing (Dkt. 54)—a highly questionable position that can be assessed through the forensic inspection.  Indeed, this Court has already stated that the disputed forensic examination would be "a highly logical place to focus attention in determining whether any of Plaintiffs' trade secrets have been disclosed to and used by Defendant."   Dkt. 48 at 31; Dkt. 100 at 2; *see Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 247 (S.D.N.Y. 2010) (bank records were "clearly crucial" to lien claims and thus factor "strongly favors" requesting party).  AcePower acknowledged the inspection's importance, arguing that it should come before any other discovery.  Dkt. 69 at 3 ("[R]equest for production should only be entertained after the [forensic] inspection").

## 2.   The degree of specificity of the request.

The neutral forensic examiner in this case will use the electronically-implemented search protocol ordered by the Court, applying specific, narrowly tailored search criteria designed to only produce results relevant to Inventus's claims and AcePower's defenses.  Dkt. 99 ¶¶ 3, 6.  These search criteria will include, for example, Inventus-related keywords, Inventus source code, confidential Inventus documents, and metadata or other computer information regarding such files. *Id.*  This factor weighs heavily in favor of allowing discovery to proceed under the FRCP because specific, narrowly-tailored requests minimize the burden on the producing party to locate and produce documents.[18]  AcePower does not contend that the forensic inspection request is not specific enough, instead agreeing that the forensic inspection should proceed, and certifying that it already had sequestered the particular laptops in question, created backups, and ran keyword

---

[18]   *Richmark*, 959 F.2d at 1475 (specificity found where the "great deal of information" sought was directly relevant); *St. Jude*, 104 F. Supp. 3d at 1166 (same); *Gucci*, 2010 WL 808639 at *3 (specificity found where relevant bank accounts targeted); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 441 (E.D.N.Y. 2008) (finding that the "requested discovery is relevant, vital and narrowly tailored to the litigation").

searches, showing that it understands the types of materials the request is targeting.  Dkt. 54.

          3.        <u>Whether the information originated in the United States.</u>

The stolen trade secret information originated from Inventus's headquarters in Woodridge, Illinois.[19]  Judge Dow has already credited Inventus's evidence establishing this fact.[20]  Five months later, AcePower still is unable to come forth with any evidence to the contrary, and thus this factor weighs heavily in favor of application of the FRCP.

          4.        <u>The availability of alternative means of securing the information.</u>

There is no adequate substitute for the forensic discovery at issue.  First, as the Court recently recognized, AcePower has refused to participate in discovery, and still has not produced a single document, responded substantively to a single written discovery request, or provided a single witness for deposition.  And even if it does now that it has—once again—been ordered to, such discovery is no substitute for the forensic examination.  As discussed above, the forensic inspections will provide information about the dissemination and deletion of evidence that will be unavailable through other discovery means—information that is particularly crucial in view of the evidence that AcePower has attempted to cover its tracks.  Dkt. 11 (1st Lau Decl.) ¶¶ 6, 9-14, 21, 22, 25-28, 31-34.  The absence of such alternative sources is an important factor in the analysis.[21]

Second, it is highly unlikely that the Hague Convention process will yield results, as it does

---

[19]   *See, e.g.*, Dkts. 1 (Complaint), 8 (TRO Memo), 9 at ¶¶ 20, 22, 23, 29, 30, 35, 42 (Nguyen Decl.) (Mr. Nguyen testified under oath that stolen trade secret information originated from Woodridge, Illinois.).

[20]   Dkt. 48 at 10 ("Plaintiff presents evidence (including a forensic analysis and declarations) that ACE employees, while working for Plaintiff and for the purpose of aiding Defendant, downloaded *en masse* volumes of documents that ***originated at Inventus's facilities in this District***, and were either placed on a shared network drive accessed by the employees or emailed to them, at their request.").

[21]   *Wultz*, 910 F. Supp. 2d at 467-68 ("the potential stakes of plaintiffs' discovery requests in the present motion are now sufficiently clear.  If BOC is not ordered to produce plaintiffs' requested materials in contravention of PRC law, there may be no alternative source of evidence for establishing one of the central elements of plaintiffs' claim….").

not provide for enforcement of China's actions and obligations with respect to a discovery request, and the time to receive a reply has "increased exponentially" due to the global pandemic. *See* Ex. 2 (Ingalls Decl.) ¶¶ 12-13; Fang Decl. ¶¶ 25-27. This is a critical factor in this case, particularly considering the importance of the discovery at issue, the Court's orders expediting discovery, and the lack of any evidence that Chinese authorities will find the forensic inspection to violate Article 277. *Id.* ¶ 12. This weighs heavily in favor of rejecting Hague procedures in favor of the Federal Rules.[22] Even in the *Sun Group* case relied on by AcePower, the court stated that "this balancing might shift if Plaintiff is not actually able to obtain documents necessary to litigate its claims through the Hague Convention procedures and through Defendant's subsidiaries"—a factor indisputably present here. *Sun Grp.*, 2019 WL 6134958, at *4.

Lastly, the Second Circuit also considers whether the producing party has acted in good faith in discovery.[23] Here, AcePower has attempted to thwart literally every form of discovery thus far, in a manner highly inconsistent with numerous of the Court's orders.[24] AcePower's

---

[22] *Milliken*, 758 F. Supp. 2d at 248 (there exists "no viable alternative means of discovery where a response to a request under the Convention would only be forthcoming upon approval from a ministry of a foreign state"); *Wultz*, 910 F. Supp. 2d at 557-58 ("'Hague Convention requests in circumstances similar to those presented here are not a viable alternative method of securing the information Plaintiffs seek.' … [T]he Chinese Ministry of Justice's response to the Hague request in *Qi Andrew* denied some of the valid discovery requested by the court's Letter of Request," and "the elapsed time since the submission of this Court's Letter of Request has already sufficiently demonstrated that plaintiffs' requested discovery materials cannot be 'easily obtained' through the Hague Convention process."); *NIKE*, 349 F. Supp. 3d at 365 ("[T]he Hague Convention would result in substantially delayed and less than fulsome discovery.").

[23] *Wultz*, 942 F. Supp. 2d at 468-69 (defendant's conduct weighed in favor of plaintiff where it "has shown bad faith toward its discovery obligations" and "bad faith in its responses to this Court's orders."); *Tiffany (NJ) LLC v. Forbse*, No. 11-cv-4976, 2012 WL 3686289, at *6 (S.D.N.Y. Aug. 23, 2012) (Bank of China's "conscious decision to selectively disclose information . . . as it suits BOC's litigation interests . . . is precisely the type of conduct that the Court may consider in undertaking the applicable comity analysis").

[24] Dkt. 48 at 34 (ordering expedited discovery); Dkts. 61 and 74 (Inventus's motions to compel based on AcePower's refusal to engage in expedited discovery); Dkt. 88 at 6–7 (AcePower requested stay of discovery); Dkt. 90 (denying AcePower's request for stay of discovery); Dkt. 100 at 5, 8 (ordering AcePower to "move forward expeditiously to ***fully and non-evasively*** respond to the discovery requests enumerated above ***without further objections*** . . ." and recognizing that "[a]part from the misplaced

---

invocation of the Hague procedures is another obvious attempt to shut it down, materially prejudicing Inventus by thwarting its ability to investigate the massive theft that occurred through the discovery process. This also weighs heavily in favor of proceeding without regard to the Hague Convention. *Wultz*, 942 F. Supp. 2d at 468–69; *Tiffany*, 2012 WL 3686289 at *6.

> 5.  The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located.

One of the most important factors concerns whether the U.S. interests at issue are more important than Chinese interests in prohibiting the forensic inspection.[25] Here, there is no question that the U.S. has a strong interest in protecting trade secrets that originated in the U.S. and are owned by U.S. companies.[26, 27] Judge Dow specifically confirmed that "the public has an interest in ensuring that trade secrets remain protected and that businesses do not engage in anti-competitive conduct." Dkt 48. Critically, courts regularly find that U.S. interests in the discovery of trade secret theft outweigh foreign interests, even in cases of foreign blocking statutes.[28] And

---

argument regarding the limitation to the inspections, defendant does little to explain how each of plaintiffs' requests goes beyond the scope of the issues relevant to the preliminary injunction proceedings.").

[25] *Republic Techs.*, 2017 WL 4287205, at *4 ("Most importantly to the comity analysis, the interests of the United States that are at issue are far more important than any interest that France has in prohibiting production of the documents."); *Phoenix Process*, 2019 WL 1261352, at *15 ("The fifth factor is the most important in that it directly addresses the relations between sovereign nations. . . . The United States' interests in permitting efficient discovery under the Federal Rules are, therefore, considerable and fundamental.").

[26] The stolen trade secrets were developed in the U.S. by a U.S.-based company and stolen by a foreign corporation to develop competing products for sale in the U.S. *See* Dkts. 1, 8, 9 ¶¶ 20-23, 29, 30, 35, 42.

[27] *Prot. Techs., Inc. v. Ribler*, No. 3:17-CV-00144, 2017 WL 923912, at *3 (D. Nev. Mar. 8, 2017) ("there is a strong public interest in protecting trade secrets, as evidenced by the existence of the DTSA and UTSA."); *Radiant Glob. Logistics, Inc. v. Furstenau*, 368 F. Supp. 3d 1112, 1135 (E.D. Mich. 2019), *appeal dismissed*, 951 F.3d 393 (6th Cir. 2020) ("The public has an interest in protecting trade secrets, and it is axiomatic that that the public has an interest in the enforcement of the legislatively enacted laws.").

[28] *See, e.g., AstraZeneca LP v. Breath Ltd.*, No. 08-1512, 2011 WL 1421800, at *15 (D.N.J. Mar. 31, 2011) (Sweden's interest in protecting trade secrets is outweighed by the discovery rules in U.S. courts, which expressly permit discovery of trade secrets subject to various protective measures); *Autodesk*, 2015 WL

the other branches of the U.S. government recently confirmed the U.S.'s strong interest in investigating and eradicating technology theft of the type at issue here.[29] The U.S. likewise has relied on its strong interest in enforcing its laws in lawsuits pending before U.S. courts to override foreign blocking statutes.[30] But if Hague Convention procedures are required, Inventus will likely be deprived of this critical evidence, as the forensic inspection will either be substantially delayed or entirely rejected.[31] By contrast, China's interest in proceeding through the Hague is speculative at best, as there is no evidence of Article 277 being enforced against discovery activities relating to U.S. litigation. Lastly, AcePower cannot invoke an allegedly blocking Chinese statute while also relying on evidence only accessible through forensic inspection.[32] AcePower alleges it has performed "keyword searches related to Plaintiff to determine if any of the former employees'

---

1928184, at *6 (FRCP applies because Hague "procedures may limit discovery to exclude relevant source code and related documents").

[29]  *See* S. Rept. 114-220 at 1 ("The growing importance of trade secrets as a form of intellectual property makes their theft a particularly economically damaging crime."); Ex. 3 (Trump statement that "Protecting the innovations, creations, and inventions that power our country are vital to our economic prosperity and national security."); Ex. 4 (Biden committing to "Confront foreign efforts to steal American intellectual property" with "a coordinated and effective strategy" because "China's government and other state-led actors have engaged in an assault on American creativity").

[30]  *See Republic Techs.*, 2017 WL 4287205, at *5 ("the courts of the United States undoubtedly have a vital interest in providing a forum for the final resolution of disputes and for enforcing these judgments.") (quoting *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, 902 F.2d 1275, 1280 (7th Cir. 1990)); *Milliken*, 758 F. Supp. 2d at 248-49 ("the United States has a substantial interest in fully and fairly adjudicating matters before its courts," which "requires full discovery"); *NIKE, Inc.*, 349 F. Supp. 3d at 367 ("The Magistrate Judge also did not err in affording comparatively greater weight to the U.S.'s interest in enforcing the Lanham Act. . . . [and] in finding that this factor weighed in favor of the Assignee."); *see also Strauss*, 249 F.R.D. at 443; *Gucci*, 2010 WL 808639, at *5.

[31]  Ingalls Decl. ¶ 12; Fang Decl. ¶ 26. If Hague procedures apply and Inventus cannot obtain the requested discovery, Inventus reserves the right to seek adverse inferences regarding AcePower's deletion and concealment of evidence. *Wultz*, 942 F. Supp. 2d at 472; *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 213 (1958); *Linde v. Arab Bank, PLC*, 706 F.3d 92, 95 (2d Cir. 2013).

[32]  *Republic Techs.*, 2017 WL 4287205, at *5 ("Republic cannot invoke the alleged foreign lineage of its cigarette paper packaging, advertising and signage as evidence of non-infringement on the one hand, and on the other hand, assert the foreign country's blocking statute as a bar to producing documents in its control that would prove—or disprove—Republic's assertions.").

devices or drives contain any of Plaintiff's documents, files, or other materials," and "has not found that it possesses or has accessed, reviewed, used, disclosed, or divulged any Inventus" confidential information (Dkt. 54 at 1-2), so it cannot assert Article 277 as a bar to permitting the very discovery that would prove or disprove those assertions. *Republic Techs.,* 2017 WL 4287205, at \*5.

> 6. <u>The hardship of compliance on the party or witness from whom discovery is sought.</u>

Despite AcePower's burden, it has introduced no evidence that Chinese companies have ever been prosecuted for hiring a vendor to provide documents or other information in a U.S. litigation, nor that a forensic inspection to accomplish that task would expose it to any liability. Fang Decl. ¶ 12-22. Thus, any purported hardship is entirely speculative and insufficient to carry AcePower's burden.[33] This is a critical factor: absent specific proof that prosecution will occur, courts have ordered compliance with discovery requests.[34]

## IV. CONCLUSION

Inventus respectfully requests that the Court find the Hague Convention inapplicable and order the forensic examination to proceed under the FRCP.

---

[33] *See St. Jude*, 104 F. Supp. 3d at 1167; *Gucci*, 2010 WL 808639, at \*6-7.

[34] *Milliken*, 758 F. Supp. 2d at 250; *Gucci*, 2010 WL 808639, at \*6-7 (declining to follow Hague "even though violation…could result in criminal sanctions, including imprisonment" and a fine of up to $900,000 because "[i]f the likelihood that the objecting party will be prosecuted and convicted is 'slight and speculative,' a court may order disclosure"); *Vringo,* 2015 WL 2380061, at \*3 (ordering discovery where "it is no better than debatable that there is a true conflict between Chinese and U.S. law"); *Regal Beloit Am., Inc. v. Broad Ocean Motor LLC*, No. 4:16-CV-00111, 2017 WL 35702, at \*2 (E.D. Mo. Jan. 4, 2017) (Hague not invoked because Defendants unable to "identify any documents or information requested by Plaintiffs that pose any civil or criminal liability issues in China"); *Wultz*, 910 F. Supp. 2d at 559-60 ("BOC has produced no evidence that it has been meaningfully sanctioned by the Chinese government for complying with the two previous U.S. court orders to produce documents in contravention of China's bank secrecy laws."); *NIKE, Inc.*, 349 F. Supp. 3d at 368 ("meaningful sanctions by the Chinese government against Chinese banks are highly doubtful" and party "had not cited a single case in which penalties had arisen from compliance with a U.S. court's discovery order."); *Phoenix Process*, 2019 WL 1261352, at \*16 ("Defendants fail to cite a single instance in which a Russian enforcement action was taken against an entity…. The speculative liability in this case is not a hardship so significant as to displace the [FRCP].").

DATED: November 20, 2020

Respectfully submitted,

*/s/ Gianni Cutri*

Gianni Cutri
gianni.cutri@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Adam Alper (admitted *pro hac vice*)
adam.alper@kirkland.com
Natalie Flechsig (admitted *pro hac vice*)
natalie.flechsig@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael De Vries (admitted *pro hac vice*)
michael.devries@kirkland.com
Kevin Bendix (admitted *pro hac vice*)
kevin.bendix@kirkland.com
Yimeng Dou (admitted *pro hac vice*)
yimeng.dou@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiffs
*INVENTUS POWER, and ICC*
*ELECTRONICS (DONGGUAN) LTD.*

## <u>CERTIFICATE OF SERVICE</u>

I, Gianni Cutri, an attorney, hereby certify that on November 20, 2020, I caused a true and correct copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

DATED:  November 20, 2020

*/s/Gianni Cutri*
Gianni Cutri