UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INVENTUS POWER, INC., and<br>ICC ELECTRONICS (DONGGUAN) LTD.,<br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SHENZHEN ACE BATTERY CO., LTD.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 1:20-cv-03375<br><br>Judge Honorable Robert M. Dow, Jr.<br><br>Magistrate Judge Honorable Jeffrey Cummings |

**DEFENDANT SHENZHEN ACE BATTERY CO., LTD.,'S 12(b)(2)
MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Shenzhen Ace Battery Co., Ltd. hereby moves to dismiss Plaintiffs' Complaint, [Dkt. No.1], pursuant to Federal Rule of Civil Procedure 12(b)(2) lack of personal jurisdiction.[1]

**INTRODUCTION**

Inventus Power, Inc. ("Inventus") is a Delaware corporation with its headquarters and principal place of business in Illinois. ICC Electronics Ltd. ("ICC") is a Chinese corporation with its headquarters and principal place of business in Dongguan, China. Defendant Shenzhen ACE Battery Co., Ltd. ("Ace" or "Defendant") is a Chinese corporation with its headquarter and principal place of business in Shenzhen, China.

---

[1] In the present case, Defendant has not waived its Rule 12(b) defenses. Under Fed. R. Civ. P. 12(h)(1) & (g)(2), any defense listed in Rule 12(b)(2) – (5) is only waived if the defense is not raised either in a responsive pleading or in a prior 12(b) motion to dismiss. Defendant has previously filed a motion to dismiss based on *forum non conveniens*. Courts have addressed this specific issue previously, holding that a motion to dismiss based on *forum non conveniens* does not waive the defendant's 12(b) defenses. *See Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1173, (10th Cir. 2009). Therefore, a Rule 12(b) motion to dismiss is still available to Defendant.

1

Inventus and ICC (together, "Plaintiffs") filed this action against ACE, alleging trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") pursuant to 18 U.S.C. §§ 1836(b) &1839 *et seq.*; and state trade secret misappropriation claim under Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065 *et seq*. Compl. ¶¶ 49-73, Dk No.1.

By grouping two companies Inventus and ICC together as "Inventus" in all their files, Plaintiffs easily disguised the most crucial facts that Inventus and ICC are two separate entities from two different countries, ACE has never hired any employees from Inventus, and none of the alleged trade secret misappropriation happened in Illinois or in the United States.

In fact, all the pertinent events took place in China. All the alleged wrongful download and misappropriation of trade secret took place in Southern China, not in U.S. Decl. of Zhao, ¶ 20, Dk No. 32-1. All potential witnesses, ex-employees of ICC and management at ICC and ACE are in China. *Id*. The three utility patent applications accused on using the Plaintiff's trade secret were filed in China. *Id*. Defendant has not established any purposeful contacts aimed at the forum state of Illinois. Therefore, dismissal based on lack of personal jurisdiction is proper.

## STATEMENT OF FACTS

It is undisputed that ACE hired ex-employees of ICC in China, including Gang (Lucken) Cai, Kui (Gerrard) Liu, Guochao (Andy) Quan, Xinliang (Robert) Cao, Jun (Yancey) Yang, Haihua (Alan) Liu, Jina (Conner) Guan, and Jingyang (Paul) Mai (collectively "ex-employees").

Plaintiffs allege that ex-employees, while they were still working at ICC, under ACE's direction, downloaded over 100,000 confidential documents, including documents that were related to trade secrets shared by Inventus and ICC. Compl. ¶¶ 4, 36-37, 42, Dk No.1.

Defendant is the rightful owner of three Chinese Utility Patents in dispute (Chinese Patent Nos. CN210467927U, titled "A lithium battery packaging container;" CN210272576U,

2

titled "A lithium ion battery cell integration and packaging;" and CN210272484U, titled "A lithium ion battery formation cabinet) (collectively "Patents"). DK, 7-1, 7-2, 7-3. The Patents were purchased form a Chinese patent broker and were filed in September 2019. Decl. of Zhao, ¶ 10, Dk No. 32-1. The Patens were granted in April 2020 and May 2020, respectively.

Plaintiffs allege that Defendant's Patents purportedly feature Plaintiffs' trade secrets that were wrongfully downloaded by ex-employees under ACE's direction. Compl. ¶ 37, Dk No.1.

Plaintiffs allege that Defendant planned to steal trade secrets by hiring ex-employees of ICC and instructed ex-employee, before leaving for their new job, to download files that might include Inventus' trade secret.

Based on these industrial espionage allegation, Plaintiffs filed their complaint under the Defend Trade Secrets Act ("DTSA") pursuant to 18 U.S.C. §§ 1836(b) &1839 *et seq.*; and state trade secret misappropriation claim under Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065 *et seq.*, on June 08, 2020, together with a motion for a temporary restraining order ("TRO"). Compl. ¶¶ 49-73, Dk No.1, 6. The TRO was granted on July 13, 2020. Dk No. 48.

## ARGUMENT

A complaint need not allege personal jurisdiction, but once a defendant moves to dismiss on that ground, the plaintiff bears the burden of establishing that jurisdiction is proper under both the federal and Illinois constitutions. *Purdue Res. Found v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Illinois long-arm statute "permits its courts to exercise personal jurisdiction on any basis permitted by the constitutions of both Illinois and the United States." *BE2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011); *see also* 735 ILCS 5/2-209(c). Thus "the state statutory and federal constitutional inquiries merge." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The federal test for personal jurisdiction under the Due Process Clause of the

3

Fourteenth Amendment authorizes a court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In other words, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The requirement that a defendant have "minimum contacts" with the forum ensures that a non-resident defendant will not be forced to litigate in a jurisdiction as a result of "random, fortuitous, or attenuated contacts" with the forum or the unilateral activity of the plaintiff; the defendant "should reasonably anticipate being haled into court" there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

"Personal jurisdiction can be either general or specific, depending on the extent of the defendant's contacts with the forum state." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Here, neither general jurisdiction nor specific personal jurisdiction can be constitutionally exercised over Defendant.

**A. This Court Lacks General Jurisdiction over Defendant.**

The Supreme Court has noted that a court may assert general jurisdiction over a foreign corporation "'to hear any and all claims against [it]' only when the corporation's affiliations with the forum state are so constant and pervasive 'as to render [it] essentially **at home** in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U. S. 915, 919 (2011)). "The paradigm all-purpose forums for

4

general jurisdiction are a corporation's place of incorporation and principal place of business." *Id*. at 118. (citing *Goodyear,* 564 U. S., at 924)

In this case, ACE is a Chinese corporation with its headquarter and principal place of business in Shenzhen, China. Under the "at home" test, it is obvious that ACE is not "at home" in Illinois, and thus, should not be subject to general or "all purpose" jurisdiction in Illinois. Further, ACE's attendance of a tradeshow in Illinois is neither continuous nor systematic. ACE's contacts with Illinois is a single instance and misses the mark of "so constant and pervasive as to render it essentially at home."

Therefore, this Court should only consider whether specific or "conduct-linked" jurisdiction exists in this case.

### B. This Court Lacks Specific Personal Jurisdiction over Defendant.

Plaintiff alleges that Defendant is subject to personal jurisdiction in this Court because it has attended a tradeshow in Chicago, and the alleged misappropriated trade secret were developed in Inventus' headquarter in Illinois.

There are three "essential requirements" for the exercise of specific jurisdiction over an out-of-state defendant: "'**[1]** First, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state. **[2]** Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And **[3]** finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.'" *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 398 (7th Cir. 2020) (quoting *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019)). "The plaintiff bears the burden of

5

satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

        1. <u>Defendant's contacts with the forum state do not all show "purposeful availment."</u>

In intentional tort cases, "the purposeful availment inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state," and looks to "whether the plaintiff has shown '(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured— in the forum state.'" *Walls v. VRE Chicago Eleven, LLC*, 344 F. Supp. 3d 932, 944 (N.D. Ill. 2018) (quoting *Tamburo*, 601 F.3d 702-03); see also *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, 148 F.3d 649, 654 (7th Cir. 1998) ("misappropriation of a trade secret is an intentional tort").

Defendant concedes that its attendance of the 2019 PROMAT tradeshow in Chicago and to promote its product purposefully availed itself to the forum state.

Defendant contests, however, that the alleged stealing of trade secret of ex-employees, even taken as true, does not "purposefully avail" Defendant to the forum state.

Plaintiffs have to prove both that the ex-employees of ICC in fact wrongfully downloaded Plaintiffs' trade secrets and that Defendant directed the ex-employees to do so or has in fact acquired or used the alleged stolen trade secrets.

Nothing in the Complaint and Exhibitions attached to the Complaint provide any direct evidence in support of Plaintiffs' allegation that Defendant intentionally planned the stealing of Plaintiffs' trade secrets. No evidence was provided to link Defendant's hiring of ICC's ex-employees to the alleged tortious intent of misappropriating Plaintiffs' trade secrets.

Plaintiffs relied heavily on their sealed documents [Dkt. No. 8, 9, 10, 11,12, 35, 36, 41 and 42] to establish Defendant's purposeful availment. Limited information in the sealed documents were included in this Court's Memorandum Opinion and Order. Order, pp 10-12, Dkt. No. 48. The declaration of Tom Nguyen focuses on Yang's (an ex-employee) access to Plaintiffs' trade secrets through a server in Hong Kong or through email requests, while still working at ICC. *Id*. This may establish this Court's specific personal jurisdiction over Yang but does not prove Defendant's knowledge or involvement in the alleged trade secret misappropriation.

In fact, multiple declarations provided by Plaintiffs argue against Defendant's involvement in the alleged trade secrete misappropriation. Reply to TRO, Exh. 4, ¶ 7, Exh. 5, ¶ 5, Exh. 6, ¶ 4, Dkt. No. 34-1, 34-2, 34-3. Defendant has also taken appropriate steps to prevent the any potential misappropriation of trade secrets form others, including requiring "all new employees to sign an agreement before the employment, agreeing not to use any confidential information or trade secret of others during their employment with ACE." Decl. of Zhao, ¶ 7, Dk No. 32-1.

From the available information, Plaintiff failed to provide any material evidence that shows Defendant planned the alleged trade secrete misappropriation. Therefore, the alleged wrongful download of Plaintiffs' trade secrets by ex-employees does not "purposefully avail" Defendant to the forum state.

2. <u>Plaintiff's alleged injury does not arise out of the defendant's forum-related activities.</u>

Plaintiffs' alleged injuries, misappropriated trade secret, do not arise from Defendant attendance of the 2019 PROMAT tradeshow in Chicago, since the trade show happened in April 2019, and any alleged trade secret misappropriation happened towards the end of 2019. Compl. Exh. 1. Dkt. No. 1. There is no direct or indirect connection between the trade show in Chicago and the alleged injuries.

Other tradeshows that Defendant attended in 2019 were in Michigan and Utah respectively.

Since Plaintiff failed to provide sufficient evidence to show that Defendant planned the alleged trade secret misappropriation, or that Defendant has acquired or used the alleged trade secret, Plaintiffs' alleged injuries does not arise out of the defendant's forum-related activities,

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice.

Respectfully Submitted:

Date: 08/24/2020

/s/ He Cheng

He Cheng
Tao Liu
Andrew Palmer

**Glacier Law PLLC**
745 5th Ave., Ste 500,
NEW YORK, NY 10015
***Attorneys for Defendant***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this August 24, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF..

Date:  08/24/2020                                     /s/ He Cheng

                                                                                  He Cheng