# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| INVENTUS POWER, INC. and ICC ELECTRONICS (DONGGUAN) LTD., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| SHENZHEN ACE BATTERY CO., LTD., | ) ) |
| Defendant. | ) ) |

Case No. 20-cv-3375

Judge Robert M. Dow, Jr.

## MEMORANDUM OPINION AND ORDER

Plaintiffs Inventus Power, Inc. ("Inventus") and ICC Electronics (Dongguan) Ltd. ("ICC") (together, "Plaintiffs") bring suit against Defendant Shenzhen Ace Battery Co., Ltd. ("ACE" or "Defendant") for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836(b), 1839 *et seq.* ("DTSA"), and the Illinois Trade Secrets Act, 765 ILCS 1065 *et seq*. ("ITSA"). Currently before the Court is Defendant's motion to dismiss based on forum *non conveniens* [136]. For the following reasons, Defendants' motion [136] is denied.

## I. Background

Defendant first raised its jurisdictional and venue challenges in opposition to Plaintiffs' motion for a temporary restraining order ("TRO"). At that point, Defendant had not formally moved to dismiss the complaint and provided minimal briefing or evidence to support its arguments. In its opinion granting a TRO [48], the Court determined that Plaintiffs were likely to succeed on the merits of their action and establish personal jurisdiction over Defendants and proper venue in this District. See *id*. at 7-13. Knowledge of the Court's prior opinion is assumed here, and the Court refers the parties to that opinion for background on the complaint's allegations, *id*. at 1-6.

## II. Legal Standard

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" or "if there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(b). In this case, this judicial district is where Inventus is headquartered, where it originated the trade secrets at the heart of this action, and where it allegedly suffered harm as a result of Defendant's actions. Venue is therefore proper in this District.

Even where venue has been established, however, "[t]he doctrine of forum *non conveniens* allows a federal court to dismiss a claim when a foreign jurisdiction would provide a more convenient forum to adjudicate the matter, and dismissal would serve the ends of justice." *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926, 949 (N.D. Ill. 2019). The doctrine "is an exceptional one that a court must use sparingly." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 806 (internal quotation marks and citation omitted). A defendant's "burden in alleging forum *non conveniens* … is heavy." *Id.* at 810. It must "submit evidence of an adequate and alternate forum," such as expert affidavits. *Id.* at 810, 812. The Court may also condition dismissal of the complaint on the defendant's concession to jurisdiction in the alternative forum, or otherwise "impose conditions if there is a justifiable reason to doubt that a party will cooperate with the foreign forum." *Id.* at 812.

"A court considering a *forum non conveniens* motion weighs 'a variety of relevant factors,' many of which are 'case-specific'; there is no 'formula for weighing [the factors] precisely.'" *Greene v. Mizuho Bank, Ltd.*, 206 F. Supp. 3d 1362, 1379 (N.D. Ill. 2016). In general, the Court must first "determine if an alternative and adequate forum is available and then go on to balance

the interests of the various participants," as well as the public. *Deb*, 832 F.3d at 807. "We start with the availability of the forum because, '[a]s a practical matter, it makes little sense to broach the subject of forum *non conveniens* unless an adequate alternative forum is available to hear the case.'" *Id*. (quoting *Kamel v. Hill–Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997)). "The availability of the forum is really a two-part inquiry involving availability and adequacy." *Id*. A proposed alternative forum is "available" if "'all parties are amenable to process and are within the forum's jurisdiction.'" *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 867 (7th Cir. 2015) (quoting *Kamel*, 108 F.3d at 803). The forum is "adequate" if "the parties will not be deprived of all remedies or treated unfairly." *Id*.; see also *Deb*, 832 F.3d at 807 ("Adequacy only comes into play to the extent that the remedy would be so inadequate that for all intents and purposes the forum is not available."). "A court may dismiss on forum *non conveniens* grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum." *Kamel*, 108 F.3d at 799. "However, the alternative forum must provide some potential avenue for redress." *Id*.

After determining that an alternative forum is available and adequate, the Court must weigh "both the convenience of the forum to the parties and witnesses (private interest considerations) and various public interest considerations." *Pomerantz v. Int'l Hotel Co.*, 359 F. Supp. 3d 570, 580 (N.D. Ill. 2019); see also *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). "As a general rule, a plaintiff's choice of forum should be disturbed only if the balance of public and private interest factors strongly favors the defendant." *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and (3) the cost of obtaining attendance of willing, witnesses; (4) possibility of view of premises, if view would be appropriate

to the action; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Maui Jim*, 386 F. Supp. 3d at 950. "The public interest factors to consider are (1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Id*.

### III. Analysis

#### A. Availability and Adequacy

The Court cannot say based on the submissions before it that China is an available and adequate forum for litigating the parties' dispute; nor has Defendant shown that the balance of public and private interest factors strongly favors it. Defendant has therefore failed in its "heavy" burden and its motion to dismiss must be denied. *Deb*, 832 F.3d at 810.

In its memorandum in support of the motion to dismiss, see [65], the only evidence Defendant provides as to the availability and adequacy of China as a forum is citation to general provisions of the Civil Procedure Law of the People's Republic of China, see *id.* at 8, and a handful of cases. See *id.* at 7-10. Defendant provided no affidavit or expert testimony explaining the Civil Procedure Law's significance and practical operation; nor did Defendant agree to consent to suit in any particular venue. According to Defendant, these provisions give the court in Defendant's domicile jurisdiction over Defendant (Article 21) and authorize ICC, as a Chinese corporation, to bring suit against Defendant (Articles 2, 3, 48). See *id.* at 8. Further, "foreign enterprises and organizations which institute or respond to actions in the people's courts [are given] equal procedural rights and obligations' as domestic parties." *Id*. (Article 5).

Defendant's citation to Chinese procedural law, without explanation or support from a Chinese law expert or other qualified affiant, are insufficient to establish that China is an available and adequate forum under the particular facts of this case. "It is not enough to assert baldly that the proposed transferee forum is adequate." *Luxottica Grp. S.p.A. v. Zhao*, 2017 WL 1036576, at *2 (N.D. Ill. Mar. 17, 2017). Defendant's citation to case law does little, if anything, to strengthen its case, beyond indicating as a general proposition that, in some cases, China could be an available and adequate forum. In *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422 (2007)**,** the Supreme Court granted certiorari "to resolve a conflict among the Circuits on whether *forum non conveniens* can be decided prior to matters of jurisdiction." *Id*. at 428-29. There, a Malaysian shipping company brought suit against a Chinese importer alleging fraudulent misrepresentation in connection with the shipment of steel coils. *Id.* at 428. The district court concluded that it lacked personal jurisdiction over Sinochem under Pennsylvania's long-arm statute. *Id.* at 427. Instead of ordering limited discovery, which might end up supporting jurisdiction under Federal Rule of Civil Procedure 4(k)(2), the district court determined that the case could be adjudicated adequately and more conveniently in the Chinese courts and dismissed it on forum *non conveniens* grounds. On review, the Supreme Court held that the district court was not required to first establish its own jurisdiction before dismissing the suit on grounds of forum *non conveniens*.

*Sinochem* offered no opinion on the adequacy of China as a forum generally; it merely recognized that the district court had found the forum adequate. Further, in *Sinochem*, there were already "long-launched" pending legal proceedings in China—and therefore no question whether the parties would, in fact, be able to litigate in China. 549 U.S. at 428, 435. Further, "[n]o significant interests of the United States were involved … , and while the cargo had been loaded

5

in Philadelphia, the nub of the controversy was entirely foreign: The dispute centered on the arrest of a foreign ship in foreign waters pursuant to the order of a foreign court." *Id*.; see also *id*. at 435-36 (the "gravamen" of plaintiff's complaint was "misrepresentations to the Guangzhou Admiralty Court in the course of securing arrest of the vessel in China"). For those reasons, the Court concluded that it was a "textbook case for immediate *forum non conveniens* dismissal." 549 U.S. at 436.

In this case, by contrast, Plaintiff Inventus is an American corporation headquartered in this District and has presented evidence that Defendant's "alleged misappropriation was allegedly knowingly directed to materials that originated from and are located at Inventus in this District." [48] at 10. As the Court explained in its opinion granting a TRO, "Plaintiff presents evidence (including a forensic analysis and declarations) that ACE employees, while working for Plaintiff and for the purpose of aiding Defendant, downloaded *en masse* volumes of documents that originated at Inventus's facilities in this District, and were either placed on a shared network drive accessed by the employees or emailed to them, at their request." *Id*. The evidence included detailed declarations from Tom Nguyen ("Nguyen"), Inventus' VP of Business Development, about information shared with individuals who left Inventus for ACE. See *id*. at 11. "Nguyen opines that these employees knew that the trade secret materials were developed in Woodridge, Illinois based on their frequent interactions with Nguyen's team, their frequent requests for highly confidential information from the Woodridge team, and because a large number of the relevant documents are marked as originating from 'Woodridge, IL.'" *Id*.

Defendant also cites a handful of cases that cite *Sinochem* and find China to be an adequate alternative forum. Defendant claims that "[b]ased on the facts that numerous courts have previously found China to be an adequate alternative for forum *non conveniens* purposes, a

6

Chinese court is an adequate alternative forum for the purposes of litigating the tort claims." [136] at 10. But each of the cases cited by Defendant was decided on its own unique facts and record. They do not provide an adequate basis on which to conclude that China would be an adequate forum in *this* case.

In response to Defendant's motion to dismiss, Plaintiffs emphasize Defendant's failure to provide any evidence to support its conclusion that China is an available and adequate forum. Plaintiffs also provide a declaration from an expert in Chinese law, Jianwei (Jerry) Fang. See [81-3]. Mr. Fang is an attorney at a law firm in China. He is a member of the PRC bar and the New York State Bar and has been qualified to practice law in China for over 15 years. See *id*. at 4-5. Mr. Fang explains why, in his opinion, China is not currently available as an alternative forum and a Chinese court would not be able to provide Plaintiffs with the relief they seek here, including a worldwide injunction; the details of his opinion are discussed below.

With its reply brief, Defendant provides a declaration from its own expert, Nick Liu, a former judge and senior partner at a law firm in Beijing, working in the areas of IP law, unfair competition law, and dispute resolution. Mr. Liu opines that China is an available and adequate forum for Plaintiffs' lawsuit. Since Defendant did not offer Mr. Liu's declaration until its reply, Plaintiffs have not had a chance to respond and Mr. Liu's opinions have never been "subject to an adversarial process in which the parties had an opportunity to argue about their meaning and import." *Deb*, 832 F.3d at 814. The Court could order Plaintiffs to file a sur-reply, or find that Defendant waived arguments that it raised for the first time in reply. See *Tata Int'l Metals, (Americas) Ltd. v. Kurt Orban Partners, LLC*, 482 F. Supp. 3d 737, 751 n.3 (N.D. Ill. 2020) ("arguments raised for the first time in a reply brief are waived"). The Court concludes that neither course is necessary, however, because Defendant and Mr. Liu have not alleviated several of the

concerns that Plaintiffs and Mr. Fang identified with dismissing this lawsuit in favor of a forum in China.

As a general matter, there appears to be no serious dispute between the parties' experts that China is an "available" forum in the sense that the parties are (or at least may be) amenable to process and within the Chinese courts' jurisdiction. However, Plaintiffs have made a persuasive showing that China is "presently unavailable." As an initial matter, Plaintiffs point out that although Defendant allegedly filed a lawsuit against Inventus for "unfair competition" in "local court of Shenzhen City" in China, Inventus (at the time of briefing) had not received any confirmation that the Chinese courts had accepted the case. See [82] at 9, n.1 (citing [32-1] at 6, ¶ 21). This gives the Court pause, as it suggests the courts in Defendant's domicile may not be as available as Defendant claims, or at least for lawsuits concerning a U.S.-based plaintiff injured in the United States. By contrast, this case has already been pending for nearly a year and the parties have made substantial inroads on discovery and other issues. To the extent that any action in China has gone forward, the parties should have advised the Court of its status.

Regardless, Defendant has not sufficiently rebutted Plaintiffs' showing that China is "presently unavailable" as an alternative forum due to travel restrictions imposed to control the COVID-19 pandemic. See [82] at 9. Defendants do not dispute that U.S.-based witnesses cannot travel to China due to the COVID-19 travel ban. More particularly, Mr. Fang explains that unless for an emergency—which would not include a trial—all valid Chinese visas and residence permit entries held by foreigners have been suspended and revoked since March 28, 2020. [81-3] at 5-6. Also, there is no way for any U.S.-based witnesses to obtain a visa at this time. *Id*. at 6. At the time Plaintiffs filed their brief, there was no indication of when the policy would terminate. The Court's own research indicates that China recently loosened travel restrictions for U.S. passengers

who are vaccinated with American-made vaccines; however, the parties have not briefed the issue and it is unclear how any policy changes in China would affect this particular case.

Plaintiffs explain that two of their key witnesses—Nguyen and Nou Ma ("Ma"), Inventus's Chief Human Resources Officer—are based in Woodridge, Illinois and therefore will be unable to travel to China. See [82] at 9. Defendant disputes that Nguyen's or Ma's testimony would be necessary at trial and argues, alternatively, that the two witnesses would be allowed to testify by video instead of in person. Plaintiffs have made a convincing showing that Nguyen's and Ma's testimony would likely be required at trial. Plaintiffs indicated in their initial disclosures that they intend to rely on these witness to testify about the development of Inventus' trade secrets, the former ACE employees' scope of work, and their access to and use of Inventus' trade secrets. See [81] at 16.

In addition, Defendant fails to demonstrate that video testimony is a viable work-around in this case. The Chinese law that Mr. Liu says authorizes video testimony requires both (1) the consent of all parties; and (2) permission from the court. See [84-2] at 5 & n.6 (citing Article 259 of the Interpretation of Civil Procedure Law of P.R.C.). As far as the Court is aware, Defendant has not consented to Plaintiff's use of video at a trial or during other legal proceedings in China. Even if Defendant provided consent, however, Mr. Fang's unrebutted testimony is that in a case of this complexity, a court would be unlikely to grant permission to hold a trial or hearing via video conference. Based on Mr. Fang's experience and "legal research regarding public judgements on trade secret cases issued by courts in the Guangdong Province (where AcePower and ICC are located), no alternative forms of witness testimony, *e.g.*, testimony via written submission of statements or live remote video without attending trials in person, has been admitted by courts in Guangdong in recent cases." [81-3] at 5. According to Mr. Fang, "if this case were required to be

9

brought in China, it would be necessary for Mr. Nguyen to testify in person as to the trade secret misappropriation that occurred in Illinois, as well as the development, research, and testing of the trade secrets in Illinois, in order to demonstrate the unique technological features of each of Plaintiffs' trade secrets as well as the value of Plaintiffs' trade secrets." *Id*. at 4. Also, "if this case were required to be brought in China, it would be necessary for Mr. Ma … to testify in person and explain the AcePower employees' familiarity with Plaintiffs' trade secret policies, their employment history, the scope of their job duties, etc., to a court in China." *Id*. at 5. Mr. Fang opines that in-person testimony would be required due to the "large amount of documents and source code at issue in this case, the complexity of the technologies at issue, and the nature of the underlying trade secret dispute." *Id*. In proceedings in this District, by contrast, Defendant's witnesses can provide testimony remotely, *e.g.*, through depositions in Macau or Hong Kong, where (according to Mr. Fang) such proceedings are permitted and routinely take place. See [82] at 9.

The Court now turns to adequacy. Defendant and Mr. Liu contend that China is an adequate forum because "[v]iolations related to trade secret[s] are punishable by law in China." [136] at 8-9 (citing Article 9 of the Anti-Unfair Competition Law). Also, "individuals and entities who misappropriate 'commercial secrets' can be held criminally liable in China." *Id.* at 9 & n.1 (citing Criminal Law of the People's Republic of China, art. 219 (2017 Amendment)); see also [84-2] at 5-7. In general, both experts recognize that Chinese law authorizes "conduct preservation measures" that are functionally equivalent (or at least similar to) injunctive relief in the United States. However, Mr. Fang states that "according to case law research, no public act preservation order has ever been issued by the courts in Guangdong Province, where AcePower and ICC are located." [81-3] at 8.

Mr. Liu disputes this and identifies one case in which he says a court in Guangdong Province granted injunctive orders, *Guangzhou Pharmaceutical Group Co., Ltd vs. Guangdong Jiaduobao Beverage & Food Co., Ltd*. See [84-2] at 9 & n.16; see also *id*. at 8 & n.11. The source cited by Defendant in footnote 11 indicates that *Guangzhou Pharmaceutical Group* was a false advertising and unfair competition dispute involving a disputed advertising slogan. Defendant does not attach the case or provide any analysis of it. Since this is the only case Defendant identifies, the Court is not particularly convinced as to the availability of injunctive relief to Plaintiffs in China. See, e.g., *Luxottica*, 2017 WL 1036576, at *2 (denying *forum non conveniens* based on affidavit from defendant's Chinese counsel that the Chinese District Court was an adequate forum to litigate plaintiff's trademark claims, where the affidavit provided by defendant's counsel "merely cit[ed] to trademark infringement cases that were apparently decided in Chinese Courts"; "[t]here were no written decisions supplied with the affidavit and there was no discussion about whether the Chinese court was applying Chinese law or United States law," "no indication what the decisions were other than in general that injunctions were issued and damages awarded," and no indication "one way or another whether a Chinese court would accept jurisdiction in this case which involves Italian companies seeking to enforce American Trademark law").

Further, Mr. Fang points out that, assuming injunctive relief is available, "the order cannot be executed outside the territory of the PRC, which would additionally lead to insufficient protection of the Plaintiffs' trade secrets." [81-3] at 8. For example, Plaintiffs explain, "the order from the PRC court will not prevent AcePower from using or disclosing Plaintiffs' trade secrets outside of China, including in the Northern District of Illinois and throughout the United States." *Id*. Mr. Liu's testimony does not convince the Court that a court in China would be able to monitor extraterritorial activity or require compliance with its orders outside of China. He does not provide

11

any examples of cases in which this has been done, either generally or in a case involving a foreign plaintiff and a Chinese defendant. By contrast, the DTSA, under which Plaintiffs bring suit here, provides for worldwide injunctive relief and remedies. See 18 U.S.C. § 1837. The Court's temporary restraining order enjoins Defendant throughout the world, see [50] at 2, ¶ 2, and Defendant confirmed its compliance with the Court's order, see [54]. Under these facts, the Court cannot conclude with any confidence that Plaintiffs would have a viable avenue of relief in China were the Court to dismiss this action.

### B. Balancing

The Court could rest its decision solely on Defendant's failure to demonstrate that China is an available, adequate forum. The Court will nonetheless discuss the private and public interest factors, which also weigh in favor of this Court retaining jurisdiction. In examining the individual factors, the Court keeps in mind that "[t]here is a strong presumption in favor of the plaintiff's choice of forum." *Zelinski v. Columbia 300, Inc*., 335 F.3d 633, 643 (7th Cir. 2003). Defendant argues that this presumption should not apply with the usual force in this case because only Inventus is headquartered in this District; ICC is a Chinese corporation like Defendant. However, the Court sees no logical reason for discounting Inventus' choice of forum. Defendant cites no case law suggesting this is the rule. Inventus is headquartered in this District, originated its trade secrets in this District, and has submitted evidence that it was injured in this District as a result of Defendant's actions. This is sufficient reason for applying the usual presumption in favor of the plaintiff's forum. See, e.g., *Domanus v. Lewicki*, 645 F. Supp. 2d 697, 701 (N.D. Ill. 2009) (where at least one plaintiff was an Illinois resident, and thus suit was "filed in his home forum," there was "a reasonable basis for applying the presumption in favor of plaintiffs' chosen forum"); *TNT USA, Inc v. TrafiExpress, S.A. de C.V*., 434 F. Supp. 2d 1322, 1333 (S.D. Fla. 2006) ("the fact that

[plaintiff] TNT Holdings is a Dutch corporation has little effect upon the deference that must be given to the choice of forum made by [plaintiff] TNT USA"). The Court now turns to the individual public and private interest factors.

A. **Private Interest Factors**

The private interest factors are all either neutral or weigh in favor of the Court retaining jurisdiction.

1. **Ease of access to sources of proof**

The ease of access to sources of proof weighs in favor of this Court retaining jurisdictions. Discovery has been ongoing in this district for almost a year. Defendant has not shown that moving the lawsuit to China would allow discovery to proceed any quicker or more efficiently. Defendant challenges Plaintiffs' statement that the bulk of relevant evidence and witnesses are located in the District, but makes no attempt to show that any documentary evidence is located in China. Nor does Defendant respond to Plaintiff's reasonable argument that most business records are stored electronically and can be provided in electronic format without need for physical travel. Plaintiffs have also explained that Nguyen and Ma, residents of this District, will be key witnesses at trial. Defendant claims that Nguyen and Ma "do not have personal knowledge [of] the circumstances relevant to the alleged stealing," [84] at 18, but does not discuss any of Plaintiffs' evidence indicating otherwise. See [81] at 16 (explaining that Plaintiffs intend to rely on Nguyen and Ma to testify about the development of Inventus' trade secrets, the former ACE employees' scope of work, and their access to and use of Inventus' trade secrets).

2. **Compulsory process and costs for attendance of witnesses**

The second factor, compulsory process and costs of attendance for witnesses, is neutral. Defendant claims that "requesting all the potential witnesses to travel to Illinois to testify in this

matter would impose an undue inconvenience and financial burden on the witnesses and parties." [65] at 13. However, as Plaintiffs point out, "[t]he only potential China-based witnesses in AcePower's initial disclosures are party employees, who are allowed by American courts to provide remote video testimony for Chinese citizens from jurisdictions such as Macau or Hong Kong, which are presently available to Chinese visitors and routinely used to provide remote testimony." [81] at 17. In any event, if the Court were to dismiss this action in favor of a Chinese forum, U.S.-based witnesses would face the same or similar challenges traveling to China or making alternative arrangements to provide testimony and otherwise participate in the litigation. Further, to the extent that Defendant has concerns about its employees not speaking English, translators may be used to assist during depositions and at trial; this is commonly done in this district. *Id.* at 18.

### 3. Viewing the premises

Neither party discusses viewing the premises, so it does not factor into the Court's analysis.

### 4. Other practical issues

Another factor that weighs in favor of the Court retaining jurisdiction is the clear availability of video testimony in this jurisdiction. Defendant has not demonstrated that Plaintiffs' witnesses would be able to participate in legal proceedings in China remotely. As explained above, both the Chinese court and all the parties would have to agree to use video, which Mr. Fang asserts is unlikely given the complexity of this case. The availability of video is especially important in light of the continuing (though apparently changing) travel restrictions surrounding the COVID-19 pandemic. Defendant claims that even taking a video deposition in Hong Kong should be avoided as it "remains a COVID-19 hotspot." [84] at 19. Given the lapse in time since Defendant filed its brief and the growing availability of vaccines in the meantime, the Court is not particularly

14

persuaded by this argument. If travel is allowed between China and Hong Kong, a video deposition from Hong Kong appears to be feasible.

Finally, the Court is not persuaded by Defendant's unsupported argument that "[a] judgment rendered by this Court could only be enforced in China after a Chinese court reevaluates the finality of the judgment and this Court's competency in rendering such a judgment." [65] at 13. Assuming that is true, the availability of a worldwide injunction in this district would outweigh any concerns about a potential delay in this Court's judgment being enforced in China.

### B. Public Interest Factors

The public interest factors, considered together, also weigh in favor of the Court retaining jurisdiction.

#### 1. Court congestion

Defendant does not address court congestion, but since this case has already been pending here for nearly a year, the Court sees little efficiency to be gained by dismissing it in favor of another forum.

#### 2. Local interests in having localized disputes decided at home

While China "may have an interest in resolving a dispute involving one of is corporations," "Illinois also has an interest in remedying an alleged injury suffered by one of its residents," which concerns trade secrets developed in this district. *Rowell v. Fanconia Minerals Corp.*, 582 F. Supp. 2d 1031, 1037 (N.D. Ill. 2008); see also *Wasendorf v. DBH Brokerhaus AG*, 2004 WL 2872763, at *7 (N.D. Ill. Dec. 13, 2004) (Illinois has interest in "assuring remedial relief for its citizens who have been injured by foreign actors"); cf. *Luxottica*, 2017 WL 1036576, at *2 ("The U.S. trademark laws are primarily consumer protection laws so the United States and the State of Illinois

have a stronger interest in seeing that their citizens have the protection of these laws than a foreign jurisdiction might have.").

   3. **Issues of foreign law**

Issues of foreign law weigh in favor of retaining jurisdiction. United States law governs Inventus' DTSA claim, and therefore no choice of law analysis is required as to that claim. The Court considers this to be the primary claim in the case, given its determination in the preliminary injunction proceeding concerning likelihood of success. See [48] at 15-16 (concluding that "Plaintiffs have not demonstrated a likelihood of establishing that the misappropriation alleged in the complaint is actionable under the ITSA," because the ITSA (unlike the DTSA) does not have extraterritorial application and Plaintiffs did not establish that the relevant circumstances occurred "primarily and substantially" in Illinois). Any discussion of the ITSA claim is therefore secondary to the DTSA claim.

To the extent that the ITSA claim has any relevance to the Court's determination of whether to retain jurisdiction, it favors remaining in this district. Illinois applies the "most significant relationship" test to "find which state bears the most significant relationship to the occurrence and the parties involved in the action, and then applies that state's laws." *Miller v. Long-Airdox Co.*, 914 F.2d 976, 978 (7th Cir. 1990) (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145(2)). The contacts that the Court considers include: "the place where the injury occurred; the place where the conduct causing the injury occurred; the parties' domiciles, residences, places of incorporation, and places of business; and the place where the parties' relationship, if any, is centered." *Id*. "Generally, in a tort case, the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred." *Id.* "Illinois law presumes that the law of the state where the injury occurred will govern 'unless another state has

16

a more significant relationship to the occurrence or to the parties involved.'" *Id.* (quoting *Ferguson v. Kasbohm,* 475 N.E.2d 984, 986 (Ill. App. 1985)); see also *Greene*, 206 F. Supp. 3d at 1383 ("Victim location and injurer location are valid considerations. But when they point to two different jurisdictions they cancel out, leaving the place where the injury (and hence the tort) occurred as the presumptive source of the law governing the accident.").

Inventus alleges that it was injured in this District, where it is headquartered. Defendant points out that ICC, a Chinese corporation, must have been injured in China. But as far as the Court can see, the primary potential injury appears to be to Inventus, which developed and owns the trade secrets that are at the heart of this dispute. The Court finds it appropriate to apply the presumption that the place of injury—Illinois—governs because Defendant has not shown that China has a more significant relationship to the occurrence or the parties involved. Defendant has never come to terms with Plaintiffs' evidence that "ACE employees, while working for Plaintiff and for the purpose of aiding Defendant, downloaded *en masse* volumes of documents that originated at Inventus's facilities in this District, and were either placed on a shared network drive accessed by the employees or emailed to them, at their request." [48] at 10. To the extent that Inventus' trade secrets were stolen from this District and used by Defendant to compete for the same customers, courts in this District have an obvious interest in providing redress.

Defendant also argues that China is the preferable forum because discovery will involve analysis and application of Chinese procedural law and Hague Service Convention procedures. The court sees no reason why a court in China would be better able to apply the Hague Service Convention than this Court. Indeed, issues surrounding the Convention have already been presented to Magistrate Judge Cummings. To the extent that the Court may need to interpret Chinese procedural law, courts "do[] not view the mere potential for [foreign] law to play a role

in this case as a strong reason to dismiss." *Rowell*, 582 F. Supp. 2d at 1037; see also *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 732 (7th Cir. 2003) ("[A] U.S. judge's desire to avoid the burden of mastering a new legal subject [is not] an adequate reason to send litigants packing.").

### 4. Unfairness of burdening forum citizens with jury duty

The parties do not specifically address the burden of jury service. As this lawsuit involves an injury to a business that is headquartered in this district, and concerns trade secrets developed in this district, there would be nothing unfair about expecting individuals from this district to serve on a jury to try Plaintiffs' claims.

## IV. Conclusion

For these reasons, the Court concludes that (1) Defendant has failed to demonstrate that China is an available and adequate forum for litigating the parties' dispute; and (2) the balance of private and public factors weighs in favor of the Court retaining jurisdiction. Therefore, Defendant's motion to dismiss based on forum *non conveniens* [136] is denied.

Dated: May 18, 2021

_____
Robert M. Dow, Jr.
United States District Judge