**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **INVENTUS POWER, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 20 CV 3375** |
| | ) | |
| **SHENZHEN ACE BATTERY,** | ) | **Judge Robert M. Dow, Jr.** |
| | ) | |
| **Defendant.** | ) | **Magistrate Judge Jeffrey I. Cummings** |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, plaintiffs' motion to compel depositions under the Federal Rules (Dckt. #86) is granted, defendant's motion to apply the Hague Evidence Convention to requests for production (Dckt. #105) is denied, and defendant's motion to take deposition of Wenhua (Ewin) Li under the Hague Convention (Dckt. #149) is denied though defendant is granted leave to depose Li in Macau where plaintiffs have agreed to make him available. Finally, plaintiffs' motion to set a date for the jurisdiction hearing (Dckt. #166) is denied as moot because Judge Dow has expressed his intent to set a Rule 16 conference/status hearing and, if necessary, an evidentiary hearing following the completion of jurisdictional discovery. (*See* Dckt. #170.)

# I.     BACKGROUND

## A.     Procedural History

Plaintiffs Inventus Power, Inc. (located in Illinois) and its subsidiary ICC Electronics (Dongguan) Ltd. (located in China) (collectively, "Inventus") bring suit against defendant Shenzhen Ace Battery Co., LTD (also located in China and, hereinafter, "Ace") for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. §§1836(b), 1839 *et seq.* and the

1

Illinois Trade Secrets Act, 765 ILCS 1065 *et seq.*  Both Inventus and Ace are in the business of designing and manufacturing advanced battery systems.  In short, Inventus alleges that Ace lured away several Inventus senior engineers to work in senior positions at Ace.  According to Inventus, before leaving to join Ace – and at Ace's direction – those engineers downloaded over 100,000 confidential and proprietary documents to USB thumb drives and Ace is now using these documents to create competing products.

Judge Dow granted Inventus' motion for a TRO and for expedited discovery on July 13, 2020.  (Dckt. #48.)  The expedited discovery process began amicably, with the parties seemingly in agreement that discovery would under the Federal Rules of Civil Procedure.  (*See* Dckt. #55 – Joint Status Report (agreeing to a discovery plan including that depositions would "proceed in accordance with the Federal Rules of Civil Procedure").)  Things changed, however, and multiple discovery disputes arose concerning whether depositions of Ace employees residing in China and requests for production of documents from China-based Ace should proceed under the Federal Rules of Civil Procedure or under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention").[1]

In response to Inventus' complaint, Ace also filed a motion to dismiss for lack of jurisdiction (Dckt. #137), and a motion to dismiss based on *forum non conveniens*.  (Dckt. #136.)  As discussed in detail below, Judge Dow denied Ace's motion to dismiss for lack of jurisdiction without prejudice on April 8, 2021 pending the completion of jurisdictional discovery.  (Dckt. #146.)  On May 18, 2021, Judge Dow denied Ace's motion to dismiss based on *forum non conveniens*.  (Dckt. #159.)  Ace filed a timely appeal of Judge Dow's denial of the latter motion

---

[1] It is undisputed that China is a party to the Hague Evidence Convention.  *See https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html* (last visited Sept. 27, 2021).

to the Seventh Circuit Court of Appeals. (Dckt. #162.) The Seventh Circuit requested briefing on the issue of whether Judge Dow's order was a final appealable judgment within the meaning of 28 U.S.C. §1291 and ultimately dismissed Ace's appeal for lack of jurisdiction on August 4, 2021. (Dckt. #173 (citing *Abelsz v. OTP Bank*, 692 F.3d 638, 650 (7th Cir. 2012).) Accordingly, the pending motions to compel are now ripe for ruling.

### B.    Pending motions regarding the application of the Hague Convention

In Inventus' motion to compel depositions under the Federal Rules (Dckt. #86), Inventus seeks an order compelling Ace to produce Ace's CEO, eight Ace employees, and a Rule 30(b)(6) witness for remote depositions in the special administrative regions of Macau or Hong Kong. Ace responded (Dckt. #94), arguing that (1) taking depositions in Hong Kong or Macau is against local law; (2) the depositions must take place in China (at its principal place of business) under the Hague Convention procedures; and (3) the depositions must be limited only to Ace's officers, directors, or managing agents under Rule 30 and Ace's CEO is the only declarant who fits within this limitation. Following a status hearing with the Court, and at the Court's request, Inventus filed a reply (Dckt. #152), further addressing the issue of whether depositions can properly proceed in Macau or Hong Kong. Ace followed up with a sur-reply (Dckt. #157), continuing to object to proceeding with depositions in those locations without using Hague Convention procedures. [2]

In the related motion to apply the Hague Convention to requests for production (Dckt. #105), Ace asks the Court to find that the Hague Convention – and not the Federal Rules – governs Inventus' requests for production of documents from Ace. According to Ace, Article

---

[2] Inventus also filed a motion to compel a forensic inspection under the Federal Rules (Dckt. #103) and a motion for sanctions (Dckt. #111) for Ace's purported dilatory conduct during discovery. Those motions have been denied without prejudice by separate orders. (*See* Dckt. #177 and #178.)

277 of the Civil Procedure Law of the People's Republic of China ("PRC") prohibits Ace from producing documents located in China for use in foreign court proceedings without the permission of the proper authorities and in accordance with Hague Convention procedures. Inventus responded (Dckt. #109), arguing that (1) Ace has waived its Hague argument after it agreed at the outset of discovery to proceed under the Federal Rules; and (2) even if Ace did not waive the argument, it otherwise fails to show why the Hague Convention should apply in this case.

More recently, Ace filed a motion to take the deposition of Inventus' witness Wenhua (Ewin) Li in China under the Hague Convention (Dckt. #149) and it requests that this Court issue a letter of request to the proper authorities in China so that Li's deposition can proceed there. In its response (Dckt. #156), Inventus agreed to voluntarily present Li for a deposition in Macau thereby, in Inventus' view, obviating the need to employ the Hague Convention procedures.

Before addressing the Hague Convention dispute, which has now been thoroughly briefed, the Court turns to the proper scope of discovery in light of the current procedural posture of the case.

## II.    ANALYSIS

### A.    The present scope of discovery is limited to narrowly tailored jurisdictional discovery.

After the parties filed their Hague-related motions, Judge Dow limited the scope of discovery in light of Ace's motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(2). (Dckt. #137). In its motion, Ace – a Chinese corporation with its headquarters and principal place of business in Shenzhen, China – argues that the Court lacks personal jurisdiction. Ace concedes that it attended a 2019 Promat tradeshow in Chicago; nonetheless, it denies selling its products in Illinois, and it disputes Inventus' assertion that the misappropriated trade secrets

4

originated at Inventus' facilities in Illinois. According to Ace, "all the pertinent events took place in China." (Dckt. #137 at 2.) In support of its motion, Ace submitted for the Court's consideration affidavits from its CEO, James Zhao, and the eight Ace employees identified in Inventus' complaint as those who Ace allegedly lured away from Inventus.[3]

In his April 8, 2021 order, Judge Dow confirmed that jurisdictional discovery must proceed in advance of a final resolution of Ace's motion to dismiss. (Dckt. #146.) With respect to the scope of that discovery, Judge Dow stated:

> As the Court previously concluded in its order granting Plaintiffs' motion for a temporary restraining order, Plaintiff has established at least a colorable or prima facie showing of personal jurisdiction. [See 48, at 7-12 (explaining why Plaintiff has demonstrated "at least a reasonable likelihood of both establishing personal jurisdiction and defeating a motion to dismiss for forum non conveniens")]. This suffices to permit the jurisdictional discovery that is ongoing under the supervision of Magistrate Judge Cummings. *See, e.g., Philos Technologies, Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015); *Cent. States Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015). To be sure, "[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Cent. States*, 230 F.3d at 946; *In re Testosterone*, 136 F. Supp. 3d at 976. But application of the terms "usually" and "extensive" must be worked out by the parties, with Judge Cummings' assistance when needed, *and the scope of permissible discovery surely extends as least as far as allowing for depositions of the affiants voluntarily brought forward by Defendants in support of their offensive litigation positions. See Philos Technologies*, 802 F.3d at 912 ("In some circumstances, particularly when the court is required to assess credibility in order to resolve factual disputes, the court may be required to allow either cross-examination of witnesses or pre-hearing discovery if a party so requests").

(Dckt. #146 at 1-2 (emphasis added).) With this guidance in mind, the Court has reviewed the parties' positions on the scope of jurisdictional discovery and orders as follows.

---

[3] Those employees are: Jun ("Yancey") Yang, Kui ("Gerrard") Liu, Xinliang ("Robert") Cao, Gang ("Lucken") Cai, Jingyang ("Paul") Mai, Haihua ("Alan") Liu, Jina ("Conner") Guan, and Guochao ("Andy") Quan. Ace identified CEO Zhao and the eight Ace employees in its Rule 26(a)(1) disclosures (Dckt. #86-14), submitted some of their affidavits in response to Inventus' motion for TRO, and then relied on affidavits from Zhao and all eight Ace employees in support of its motion to dismiss for lack of jurisdiction. (*See, e.g.,* Dkt. #128 at 7 (citing Dkt. 32-1), 8-9 (citing Exs. B, C, D, E, F, G, H, Dckt. #38-2 & Dckt. #38-3)).

##### 1.  Jurisdictional discovery shall proceed on the narrowed topics proposed by Inventus and the corresponding written discovery requests.

At the request of this Court, Inventus recently further narrowed its proposed topics of jurisdictional discovery to the following three topics:

> • **Topic 1:** Ace's presence in the United States and in this District, the presence of its alleged United States-based alter ego (CBAK), and the relationship between those entities (covered by Inventus's RFP Nos. 5, 8 & 13 and Interrogatory Nos. 5 & 6).[4]

> • **Topic 2:** Sales and marketing of the accused products in the United States and in this District, either by Ace or CBAK (covered by Inventus's RFP Nos. 12 & 13 and Interrogatory Nos. 5 & 6).

> • **Topic 3:** Ace's recruitment of the Ace Employees and Ace's involvement/knowledge of their theft (covered by Inventus's RFP Nos. 1-6 & 9-12 and Interrogatory Nos. 1 & 2).

(Dckt. #152 at 6; *see also* Dckt. #143 (proposing two additional topics).)  Like Inventus, and over Ace's objections, (*see* Dckt. #143 at 16-17), the Court finds, in its discretion, that these three topics are appropriately tailored to the current scope of jurisdictional discovery in this case involving federal and supplemental state law claims.  *See Gilman Opco LLC v. Lanman Oil Co.,* No. 13-CV-7846, 2014 WL 1284499, at *7 (N.D.Ill. Mar. 28, 2014) ("The Court has broad discretion in delineating the proper scope of this jurisdictional discovery."); *Spigot, Inc. v. Hoggatt*, No. 218CV764FTM29NPM, 2019 WL 4980455, at *2 (M.D.Fla. Oct. 8, 2019) ("[J]urisdictional discovery should be narrowly tailored to personal jurisdiction issues implicated by the motion to dismiss.").

With these three jurisdictional topics in mind, the Court has reviewed the interrogatories and requests for production that Inventus claims fall within those topics.  The Court finds that the

---

[4] Inventus' dispute regarding its subpoena to CBAK is the subject of a related case, *see* Case No. 20 CV 7252, which will be resolved by separate order in due course.

following interrogatories and requests for production, with limitations noted, fall within the permitted topics of jurisdictional discovery:

> Interrogatory nos. 1, 2, 5 (limited to United States customers only), and 6;[5] and
>
> Requests for production nos. 4, 5 (limited to United States customers only), 9, and 13 (limited to United States customers only).

The Court has also reviewed Ace's supplemental responses to interrogatory nos. 1, 2, and 5 (Dckt. #113-3) and finds that no further supplementation is required at this time with respect to interrogatory nos. 1 and 2. With respect to interrogatory no. 1- although Inventus takes issue with Ace's failure to explain why it previously represented to the Court that the Ace employees had been terminated - that issue is not relevant to the current scope of jurisdictional discovery. As for Ace's response to interrogatory no. 6, Ace must provide a supplemental response (not a representation by counsel) indicating how Ace obtained the two internal Inventus emails of Yancey Yang that it submitted to the Court earlier in these proceedings. (Dckt. #38-2.)

Lastly, the Court notes that Ace does not appear to have provided verified interrogatory answers as required under Rule 33. A party must submit a verification swearing to the truth of its interrogatory answers. *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D.Ill. 2010). "Requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses." *Id.* Unverified interrogatory answers, including those signed only by a party's counsel, are subject to being stricken. *Id.* (citing cases). Accordingly, Ace must provide proper verification for its previously provided interrogatory responses and its supplemental responses to interrogatory nos. 5 and 6.

---

[5] The Court acknowledges its previous order finding interrogatory no. 5 to be too broad in the scope of preliminary injunction discovery. (Dckt. #100 at 7.) However, as limited by the Court to United States customers only, that interrogatory is relevant to jurisdictional discovery and shall be answered.

### 2. The parties may take the depositions of the affiants they relied on in support of their respective positions on the jurisdictional dispute.

As Judge Dow already ruled, jurisdictional discovery surely extends to the "depositions of the affiants voluntarily brought forward by Defendants in support of their offensive litigation positions." (Dckt. #146 at 2.) Indeed, as Judge Dow explained, "[a]ny individual inserted into the lineup to play offense (for example, through the submission of an affidavit in support of a party's contentions) also must be prepared to play defense (that is, by submitting to a deposition…")." (*Id.*) Simply put, one cannot have its cake and eat it too. As such, Inventus is entitled to take the depositions of CEO Zhao and the eight Ace employees (Yancey Yang, Gerrard Liu, Robert Cao, Lucken Cai, Paul Mai, Alan Liu, Conner Guan, and Andy Quan), each of whom have submitted affidavits relied on by Ace in refuting jurisdiction. Ace is expected to voluntarily produce these individuals for their depositions. If, however, any of these individuals is "not able or willing" to appear, their testimony provided by affidavit "is likely to be excluded, or, at a minimum, steeply discounted." (Dckt. #146 at 2.) Similarly, Ace is entitled to take the deposition it seeks of Wenhua Li, who submitted an affidavit (Dckt. #42) on which Inventus relies to support jurisdiction.[6]

However, the scope of jurisdictional discovery does not extend to the Rule 30(b)(6) deposition that Inventus has noticed. As Inventus acknowledges, its Rule 30(b)(6) notice, issued back in September 2020, sought deposition testimony "regarding custodian of records issues." (Dckt #86 at 7.) Indeed, the topics identified in the Rule 30(b)(6) notice are targeted at such

---

[6] Again, Inventus has not objected to voluntarily producing Li in Macau for a deposition. (Dckt. #156 at 2.) Accordingly, although Ace's motion to compel Li's deposition *under the Hague Convention* (Dckt. #149) is denied for the reasons stated below, *infra* at II.C.3, Ace is granted leave to take Li's deposition in Macau within the limits of jurisdictional discovery.

issues, which are simply not relevant to the ongoing jurisdictional discovery.[7]  (Dckt. #86-4.)

Furthermore, it seems unlikely that a Rule 30(b)(6) deposition would capture any additional

information regarding jurisdiction that will not otherwise be captured in the depositions of Ace's

CEO and the eight Ace employees permitted by this decision.  *See* Fed.R.Civ.P 26(b)(2) ("On

motion or on its own, the court must limit the frequency or extent of discovery… if it determines

that…the discovery sought is unreasonably cumulative or duplicative").

Having determined the proper scope of jurisdictional discovery, the Court turns to

whether that discovery shall proceed under the Federal Rules or the Hague Convention

procedures.

### B.      Standard to determine whether to apply the Federal Rules or the Hague Convention

"The taking of discovery from foreign entities in civil litigation pending in the United

States federal courts is regulated by two sets of rules: the Federal Rules of Civil Procedure…and

the Hague Evidence Convention."  *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F.Supp.3d

1150, 1160 (D.Or. 2015).  Nonetheless, "the Federal Rules are 'the normal methods' for federal

litigation involving foreign national parties unless the 'optional' or 'supplemental' Convention

procedures prove to be conducive to discovery under some circumstances."  *In re Auto.*

*Refinishing Paint Antitrust Litig.,* 358 F.3d 288, 302 (3d Cir. 2004), *quoting Société Nationale*

*Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa,* 482 U.S. 522, 536 (1987); *Yowie*

*N. Am., Inc. v. Candy Treasure, LLC*, No. 13-CV-1906 BEN (JMA), 2013 WL 6061945, at *1

(S.D.Cal. Nov. 14, 2013) (same).  Indeed, the Supreme Court has held that "the Convention was

---

[7] The Court's prior order permitting a Rule 30(b)(6) deposition to proceed (by agreement of Ace and potentially under the Hague Convention procedures) was issued without full consideration of the appropriate scope of jurisdictional discovery or the necessary Hague Convention analysis.  (*See* Dckt. #148.)

intended as a permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad." *Aérospatiale,* 482 U.S. at 536; *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, No. 1:10-CV-1376-TWP-DKL, 2013 WL 12291616, at *1 (S.D.Ind. Apr. 26, 2013) (describing the Hague Convention as "an alternative" route to the Federal Rules of Civil Procedure for the taking of evidence abroad) (internal quotation and citation omitted). In doing so, the Supreme Court expressly "rejected mandatory resort to the Hague Convention, adopting instead an approach to the Convention that leaves the district courts free to utilize a case by case approach." *Hagenbuch v. 3B6 Sistemi Elettronici*, No. 04C3109, 2005 WL 6246195, at *2 (N.D.Ill. Sept. 12, 2005) (citing *Aérospatiale*, 482 U.S. at 546); *U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*, No. 07 C 3598, 2007 WL 2915647, at *12 (N.D.Ill. Oct. 4, 2007) ("[T]he Hague Convention is neither the exclusive means for conducting discovery on a foreign entity…nor must it be the means of first resort.") (internal quotation and citation omitted).

When applying this case-by-case approach, district courts are directed to balance the intrusiveness of the discovery requests, the sovereign interests involved, and the likelihood that resort to the Hague Convention would be an effective discovery device.[8] *In re Aircrash Disaster Near Roselawn, Ind.*, 172 F.R.D. 295, 309 (N.D.Ill. 1997); *Aérospatiale*, 482 U.S. at 544-46. Thus, "principles of comity are central to the analysis." *Milliken & Co. v. Bank of China*, 758 F.Supp.2d 238, 245 (S.D.N.Y. 2010). Ultimately, "district courts have complete discretion" in

---

[8] It is well-settled that *Aérospatiale's* balancing test applies even where, as here, discovery is limited to jurisdictional discovery. *See In re Auto. Refinishing*, 358 F.3d at 305 (affirming the district court's finding that the "balancing test applies equally to jurisdictional discovery and that there is no first resort rule in favor of the Hague Convention procedures for jurisdictional discovery."); *Ranco Inc. of Delaware v. Caleffi N. Am., Inc.*, No. 05 CV 119, 2005 WL 8179197, at *3 (N.D.Ill. Aug. 22, 2005); *see also Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F.Supp.2d 525, 528–29 (D.N.J. 2009) (applying the balancing test to jurisdictional discovery); *Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. De Equip. Medico*, No. CIV 07-CV-309-L AJB, 2008 WL 81111, at *4 (S.D.Cal. Jan. 8, 2008) (same).

resolving conflicts between the application of the Federal Rules and the Hague Convention.
*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916, 928 (N.D.Ill. 2019) (citing
*Aérospatiale*, 482 U.S. at 534, 539).

Ace, as the party moving for application of the Hague Convention, bears the burden of
showing that the Convention applies. *Hagenbuch*, 2005 WL 6246195, at *2; *Tulip Computers*,
254 F.Supp.2d at 474. To do so requires a two-step process. *Sun Grp. U.S.A. Harmony City,
Inc. v. CRRC Corp. Ltd.*, No. 17-CV-02191-SK, 2019 WL 6134958, at *1 (N.D.Cal. Nov. 19,
2019). First, Ace must show that Chinese law in facts bars it from producing the documents
Inventus seeks or presenting its witnesses for depositions in China. *Id.*; *see also St. Jude Med.*,
104 F.Supp.3d at 1161 ("A party claiming the shelter of foreign law to avoid discovery must first
show that foreign law in fact bars production."); *Symons Int'l Grp., Inc v. Cont'l Cas. Co.*, No.
1:01-CV-00799-RLY-MJ, 2015 WL 1279839, at *10 (S.D.Ind. Mar. 20, 2015) (noting that if
"the foreign law at issue…does not conflict with U.S. law," the Court need not proceed to the
balancing step). Second, Ace must show that the particular facts of this case, including the
sovereign interests at stake and the principles of comity, warrant requiring the application of the
Hague Convention. *Sun Grp.*, 2019 WL 6134958, at *1.

As explained below, although Ace has satisfied the first step of the analysis, it has failed
to show at the second step that the sovereignty issues at stake and the principles of comity favor
the application of the Hague Convention.

1. **Ace has not waived its opportunity to seek application of the Hague Convention.**

At the outset, the Court must address Inventus' contention that Ace has waived its
Hague-related arguments. Citing the parties' joint status report setting forth the intent to proceed
with discovery under the Federal Rules (Dckt. #55), Ace's failure to timely assert its Hague

11

objections, and this Court's prior order barring further objections in response to certain discovery requests (Dckt. #100 at 8), Inventus argues that Ace has waived any argument regarding the application of the Hague Convention. The Court disagrees. Inventus cites no authority for the proposition that a party's agreement or statement in a joint status report waives subsequent legal objections or is otherwise binding for the remainder of the litigation.[9] Furthermore, this Court's ruling barring substantive objections came before the Hague dispute was fully queued up and long before Judge Dow limited the scope of discovery to jurisdictional discovery.

Most importantly, even if Ace's failure to act expeditiously in asserting its position could have effected a waiver, *see, e.g., Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918-19 (S.D.N.Y. 1984), "parties to a litigation are not the only entities with an interest in whether Hague Evidence Convention protocols are followed; the interests of the foreign state where discovery would take place are implicated as well." *Milliken & Co.*, 758 F.Supp.2d at 244. Given the interests at stake, this Court, like other courts, declines to overrule Ace's Hague position based on waiver alone and proceeds to the merits. *Id.* ("In light of this comity consideration, I am reluctant to deny the Bank's motion on the basis of forfeiture alone. I will therefore proceed to analyze it on the merits."); *see also Cooper*, 102 F.R.D. at 919 n.1 ("The court recognizes that not only defendant, but the British government also, has an interest in the application of the Hague Convention. That interest must be considered under the principles of comity, which this court considers *infra*.").

---

[9] Certainly, a joint status report on discovery falls far short of a joint stipulation of fact in summary judgment or trial proceedings that would be binding and conclusive on all parties. *See, e.g., Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 677 (2010) ("Factual stipulations are binding and conclusive, and the facts stated are not subject to subsequent variation.") (citations omitted).

2.   **Ace has met its burden of showing that Chinese law bars Inventus from obtaining the discovery it seeks.**

Under the governing test, Ace must first show that Chinese law "actually bars the production or testimony at issue," *i.e.*, the production of documents from Ace's facilities in China and the depositions of Ace employees residing in China. *Wultz v. Bank of China Ltd.*, 942 F.Supp.2d 452, 460 (S.D.N.Y. 2013). To do so, Ace must "must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." *Id.* (citation omitted). The party must describe, among other things, "the provisions of the foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case." *Id.*

Here, Ace argues that Chinese law, particularly Article 277 of The Civil Procedure Law of the People's Republic of China, bars the discovery Inventus seeks here. Article 277 provides, in relevant part:

> Judicial assistance shall be requested and provided through the channels prescribed in an international treaty concluded or acceded to by the People's Republic of China; or in the absence of such a treaty, shall be requested and provided through diplomatic channels.

> Except for the circumstances in the preceding paragraph [not applicable here], no foreign authority or individual shall, without permission from the competent authorities of the People's Republic of China, serve process or conduct investigation and collection of evidence within the territory of the People's Republic of China.

(Dckt. #105-1 at 58.) According to Ace, and its Chinese legal expert Nick Liu, Article 277 prohibits Ace, a Chinese company, from providing discovery for use in foreign litigation without permission from Chinese authorities through the Hague Convention procedures. (Dckt. #106-1 – Affidavit of Nick Liu). In further support of its position, Ace has submitted a letter it received in November 2020 from the Chinese Ministry of Justice.[10] (Dckt. #105-2.) In its letter, the

---

[10] Ace received this letter in response to an inquiry it made to the Ministry of Justice following this Court's prior orders (in the scope of preliminary injunction discovery) directing Ace to respond to certain

Ministry of Justice reviewed Article 277 and explicitly informed Ace that it "may not provide directly to the United State[s] court (including electronic submission) documents located within China" without proceeding under the Hague.[11]  (*Id.*)

First, with respect to depositions, it is undisputed that the "law of China prohibits" depositions – voluntary or compelled – for use in foreign courts "within the borders of People's Republic of China without permission" from Chinese authorities through the Hague Convention procedures.  *Yan v. Zhou*, No. 18-CV-4673(GRB)(JMW), 2021 WL 4059478, at *3 (E.D.N.Y. Sept. 7, 2021) (citing Article 277) Courts have recently confirmed that this prohibition extends even to remote testimony.  *See., e.g., Junjiang Ji v. Jling Inc.*, No. 15-CV-4194 (SIL), 2019 WL 1441130, at *11 (E.D.N.Y. Mar. 31, 2019) (finding that conducting the plaintiff's trial testimony remotely while he was located in China violated Article 277); *Zhizheng Wang v. Hull*, No. C18-1220RSL, 2020 WL 4734930, at *1 (W.D.Wash. June 22, 2020) (accepting that even a video deposition might violate Chinese law).

Furthermore, according to the U.S. Department of State, participating in unauthorized depositions "could result in the arrest, detention or deportation of the American attorneys and other participants."  China Judicial Assistance Information, U.S. Department of State – Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html (last visited Sept. 27, 2021).  Given this – and the absence of any

---

discovery requests, including requests for production, and directing the parties to proceed with a forensic exam of Ace's computers.  (Dckt. #98 & #100.)

[11] In a separate letter delivered to the U.S. Department of Justice, with a copy to the Court, the Chinese "International Legal Cooperation Center of the Ministry of Justice" objected to this Court's order directing a forensic examination of Ace's computers and states that "the only legal channel to take evidence in China" is through submission under the Hague Convention.  (Dckt. #118.)  Inventus filed a response brief objecting to this letter, which it contends appeared on the docket "out of thin air" with "no supporting evidence establishing what it is or how it impacts this case."  (Dckt. #120.)

authority to the contrary – there is no doubt that Ace has met its burden to show that Chinese law

bars taking the depositions of the Ace employees in mainland China unless the Hague

Convention procedures are followed.  *See Zhizheng Wang*, 2020 WL 4734930, at *1

("Defendant's interpretation of Chinese law [barring depositions] is reasonable given the

language of Article 277, the State Department's advisory, and U.S. case law regarding Article

277.").

Similarly, with respect to the production of documents, the Court finds – over Inventus'

objections – that Ace's submissions (which include the affidavit of Mr. Liu and the letter from

the Chinese Ministry of Justice to Ace prohibiting production) are sufficient to meet its burden at

the first step of the Hague analysis.  Although, as Inventus argues, the Court is not *required* to

adopt China's interpretation of Article 277, *see Animal Sci. Prods. v. Hebei Welcome Pharm.

Co*., 138 S. Ct. 1865, 1873 (2018), it *may* "consider any relevant material or source, including

testimony, whether or not submitted by a party or admissible under the Federal Rules of

Evidence."  Fed.R.Civ.P. 44.1.  The Court has reviewed that evidence and the parties' positions

and, like other courts, finds the declaration and letter support a finding that Article 277 bars

production of documents located in China.  *See e.g., Sun Grp.*, 2019 WL 6134958, at *6 ("In

light of Wei's declaration and the letter by the Chinese Ministry of Justice on this specific issue,

the Court finds that Defendant has demonstrated that producing documents located in the PRC in

response to Plaintiff's discovery requests would violate Article 277.").

However, Ace's showing that Article 277 bars the discovery at issue does not end the

inquiry.  Even when such a showing is made, "[i]t is well settled that [foreign] statutes do not

deprive an American court of the power to order a party subject to its jurisdiction to produce

evidence even though the act of production may violate that statute."[12] *St. Jude*, 104 F.Supp.3d at 1170, *quoting Aérospatiale*, 482 U.S. at 544 n. 29. In particular,

> Even 'blocking statutes,' such as a foreign criminal law providing that a corporation could not respond to discovery requests from another country which did not comply with Hague Convention . . . , or a secrecy law prohibiting disclosure of certain information, . . . , do not deprive an American court of the power to order a party to produce evidence under the Federal Rules, although the production of the evidence may violate that statute and subject the defendant to penalties.

*Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. De Equip. Medico,* No. CIV 07-CV-309-LAJB, 2008 WL 81111, at *6 (S.D.Cal. Jan. 8, 2008) (citations omitted). Instead, the Court must turn to the second step of the analysis to balance the interests of the United States and those of the foreign state.

### 3. Ace has failed to show that the comity factors weigh in favor of applying the Hague Convention Procedures.

At the second step of the analysis, the Court must weigh the intrusiveness of the discovery requests, the sovereign interests involved, and the likelihood that resort to the Hague Convention would be effective. *In re Aircrash Disaster Near Roselawn, Ind.*, 172 F.R.D. at 309. To do so, district courts are tasked with balancing the following five factors "relevant to any comity analysis," and drawn from the Supreme Court in *Aérospatiale*:

> (1) the importance to the investigation or litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located.

---

[12] Though the Court's jurisdiction over Ace remains in dispute, "court has jurisdiction to determine its own jurisdiction." *Okoro v. Bohman*, 164 F.3d 1059, 1063 (7th Cir. 1999).

482 U.S. at 544 n.28 (citing Restatement (Third) of the Law of Foreign Relations §442 (1987));

*see also Reinsurance Co. of America, Inc. v. Administratia Asigurarilor de Stat,* 902 F.2d 1275,

1281-83 (7th Cir. 1990) (relying on the same factors to determine whether Romanian law barred

production of discovery).  The Court addresses each factor in turn, ultimately concluding –

within its discretion – that the balancing of the factors weighs in favor of applying the Federal

Rules and against applying the Hague Convention.[13]

### a. The importance to the investigation or litigation of the documents/information requested

The importance of the depositions and documents Inventus seeks related to jurisdictional

discovery is indisputable.  Indeed, this case cannot move forward until the parties complete

jurisdictional discovery, which will allow them to proceed with further hearings before Judge

Dow for resolution of the jurisdictional dispute.  Because the "discovery is limited to the facts

pertinent to personal jurisdiction, the threshold issue which determines whether this case will

continue," this factor weighs in favor of applying the Federal Rules even in the face of a

blocking statute.  *See Synthes*, 2008 WL 81111, at *5; *see also Aérospatiale,* 482 U.S. at 542,

546 (noting that the requested documents were "vital" to the litigation); *Richmark Corp. v.*

*Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) ("Where the evidence is

directly relevant . . . we have found this factor to weigh in favor of disclosure.") (internal

quotation and citation omitted).  As in *Synthes,* "the requested [jurisdictional] discovery" in this

---

[13] Notwithstanding its burden to show that the Hague Convention should apply to the production of documents, Ace inexplicably fails to address any of these factors in its motion to compel (Dckt. #105). Moreover, although Ace mentioned these factors in passing in its response to Inventus' previously filed motion to compel forensic examination, it failed to provide any substantive analysis as to how the factors weighed in favor of the application of the Hague Convention in this case.  (*See* Dckt. #106 at 9.)

case "is directly relevant to the dispositive motion pending before the court." *Synthes*, 2008 WL 81111, at *5. Accordingly, this factor weighs in favor of applying the Federal Rules.

### b.      The degree of specificity of the request

Generally, "jurisdictional discovery is less intrusive than merits-based discovery." *See Automotive,* 358 F.3d at 303. As discussed above, *supra* at II.A., this Court has already determined that Inventus' requests for production and the depositions are appropriately tailored to the current scope of jurisdictional discovery. As such, this factor weighs in favor of applying the Federal Rules. *Trueposition, Inc. v. LM Ericsson Tel. Co.*, No. CIV.A. 11-4574, 2012 WL 707012, at *5 (E.D.Pa. Mar. 6, 2012) ("The discovery requests are specific and adequately tailored to the jurisdictional issue at hand."); *see also Milliken*, 758 F.Supp.2d at 247 ("[T]he requests here are narrowly tailored, and this factor therefore supports Milliken's position" that the Federal Rules should be applied); *see also Wultz*, 910 F.Supp.2d at 556 (noting that "once plaintiffs' discovery requests have been narrowed in accordance with the principals articulated [by the court], the specificity factor will weigh in favor" of applying the Federal Rules).

### c.      Whether the information originated in the United States

According to Inventus, this factor weighs in its favor because the purportedly "stolen trade secret information…originated from Inventus' headquarters in Woodridge, Illinois, where Inventus conducts its primary R&D." (Dckt. #109 at 17.) While this may have been the case in the prior scope of discovery targeted at preliminary injunction proceedings, the Court must re-assess this factor given the current scope of jurisdictional discovery.

As discussed above, *supra* at II.A., the Court has directed Ace to answer certain requests for production on three jurisdictional topics, including Ace's presence in the United States, Ace's sales and marketing of the accused products in the United States, and Ace's recruitment of

Inventus' employees and their knowledge of the purported theft. Ace's responsive documents related to sales, marketing, and employee recruitment from Inventus' Chinese location are presumably located at its headquarters in China, not in the United States. *See Milliken & Co.,* 758 F.Supp.2d at 247 (stating that "the third factor only addresses the physical location of the documents"). Thus, this factor weighs against the Federal Rules and in favor of applying the Hague Convention. *See Wultz,* 910 F.Supp.2d at 556 (factor favored the Hague where there was "no genuine dispute that at least some of the documents…originated in China"); *Catalano v. BMW of N. Am., LLC,* 15-cv-4889 (KBF), 2016 WL 3406125, at *8 (S.D.N.Y June 16, 2016) ("Because all of the requested material is located outside of the United States – and compliance would impose obligations on persons outside the United States, this factor favors [the Hague].").

### d.     The availability of alternative means of securing the information

Under this factor "if the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law." *Milliken,* 758 F.Supp.2d at 246 (internal quotation and citation omitted). "Conversely, 'if the information cannot be easily obtained through alternative means, this factor is said to counterbalance the previous factor – the location of the documents and information – and weighs in favor of disclosure.'" *Id.*, *quoting Gucci Am., Inc. v. Curveal Fashion,* No. 09 CV 8458, 2010 WL 808639, at *3 (S.D.N.Y. Mar. 8, 2010). Some courts have interpreted "alternative means" to mean "substantially equivalent means." *White v. Kenneth Warren & Son,* Ltd., 203 F.R.D. 369, 375 (N.D.Ill. 2001), *quoting Richmark,* 959 F.2d at 1475.

There can be little doubt that the jurisdictional discovery Inventus seeks can only be obtained directly from Ace. Moreover, "the need for discovery was spurred in large part by the declarations of [Ace's] representatives filed in support of [its] motion to dismiss." *Synthes,* 2008

WL 81111, at *5.  But Ace has proposed only one alternative to secure that information outside

of the Federal Rules, *i.e.*, by gaining permission from the Chinese authorities through the Hague

Convention procedures.[14]  Like Inventus, the Court finds that resorting to the Hague will not

prove to be an effective alternative means of procuring the jurisdictional discovery here.

      Courts have observed that the "Convention procedures are often unduly time-consuming

and expensive, and less likely to produce needed evidence than direct use of the Federal Rules."

*See In re Auto. Refinishing*, 358 F.3d at 305; *Hagenbuch*, 2005 WL 6246195, at *5

("[C]ompliance with the Hague Convention may be difficult and time consuming.").  With

respect to China specifically, many courts have found that the Hague Convention would not be a

viable alternative in light of China's prior tendency to deny the full scope of requested discovery

and the undue delay that would result from resorting to the Hague procedures.  *See, e.g., Nike,*

*Inc. v. Wu*, 349 F.Supp.3d 310, 337-38 (S.D.N.Y. 2018), *aff'd*, 349 F.Supp.3d 346 (S.D.N.Y.

2018); *Wultz*, 910 F.Supp.2d at 557-58, *Milliken & Co.*, 758 F.Supp.2d at 247-48.  As the Court

in *Nike, Inc. v. Wu* acknowledged:

> Although the Hague Service and Evidence Conventions provide the legal framework for
> serving papers and obtaining evidence in legal disputes between U.S.- and China-based
> entities, China's interpretation of its obligations under these conventions differs from that
> of the United States and has resulted in many service of process and discovery requests
> being denied or significantly delayed.

349 F.Supp.3d at 337-38 (citing a May 2015 report of the U.S. Economic and Security Review

Commission).

---

[14] The Court notes that although Inventus is also attempting to subpoena documents from Ace's alleged
U.S.-based "alter-ego" CBAK, Ace has strongly resisted those efforts and denied that CBAK is its alter-
ego.  *See* Case No. 20 CV 7252.  Thus, any contention by Ace that CBAK is an alternative way to secure
responsive documents would be disingenuous on this record.  *See Symons Int'l Grp.*, 2015 WL 1279839,
at *11 (rejecting defendant's assertion that plaintiff could obtain its information through "alternative
means such as its Canadian lawsuits" where defendant was "resisting plaintiff's efforts to advance those
suits.").

This acknowledgment is in line with the opinion of Inventus' Chinese legal expert, Jianwei Fang, who previously submitted a declaration explaining why the Hague would not be an effective alternative method of securing discovery from Ace. (Dckt. #103-2.) According to Fang, Chinese authorities would likely unduly limit the scope of Inventus' requests for production and proceeding under the Hague could cause delays from six months to one year, if not longer given the global pandemic. (Dckt. #103-2 at 11-13; *see also* Dckt. #152-4 – Declaration of Celeste Ingalls (noting that "due to backlogs caused by issues related COVID-19, [Letters of Request under the Hague Convention] will take approximately 7 months or more.").)

As for depositions, these too are unlikely to proceed efficiently under Hague Convention procedures. According to Inventus – and not disputed by Ace – "in more than 30 years under the Consular Convention and 13 years under the Hague Convention, China has granted permission for a deposition on only one occasion." (Dckt. #86 at 15-16 (citing Craig Allely, Successful Depositions in International Litigation, 37 No. 4 Litigation 12, 13 (2011));[15] *see also Jacobs v. Floorco Enterprises, LLC*, No. 3:17-CV-90-RGJ-CHL, 2020 WL 1290607, at *15-16 (W.D. Ky. Mar. 18, 2020) ("attempting to take the deposition of Tu in China does not appear likely to succeed under the Hague Convention process").

Given this authority and seeing as Ace has done little to address this issue, the Court finds this factor weighs against applying the Hague Convention procedures because these procedures would not serve as an effective or timely alternative method for discovery in this case. *See Wultz*, 910 F.Supp.2d at 558 ("The U.S. Supreme Court has recognized that where the Hague Convention process 'would be unduly time consuming and expensive,' requiring the parties to submit to the process is inconsistent with the 'overriding interest in the just, speedy,

---

[15] There is no evidence in the record that China has become more permissive in approving depositions under the Hague Convention since Allely published his findings in 2011.

and inexpensive determination' of litigation in our courts."), *quoting Aérospatiale*, 482 U.S. at

542-43.  This is particularly problematic given that jurisdictional discovery is at issue.  *See, e.g.,*

*Schindler Elevator,* 657 F.Supp.2d at 530-31 ("since the deposition is focused on the crucial

threshold issue of jurisdiction, the jurisdictional deposition should be completed as soon as

possible.").

>    ### e.      The extent to which noncompliance would undermine important interests of the United States, or compliance would undermine the important interests of the state where the information is located

The last factor – the balancing of the national interests of the United States and China –

"is the most important, as it directly addresses the relations between sovereign nations." *Wultz*,

910 F.Supp.2d at 558 (citation omitted).  When examining this factor, courts should engage in a

"particularized analysis of the respective interests of the foreign nation and the requesting

nation." *Nike, Inc*. 349 F.Supp.3d at 310.

The United States has a "substantial" interest in "vindicating the rights of American

plaintiffs," *Richmark*, 959 F.2d at 1477, and an "overriding interest in the just, speedy, and

inexpensive determination of litigation in [its] courts." *Aerospatiale*, 482 U.S. at 542-43; *see*

*also Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2017 WL

4287205, at *5 (N.D.Ill. Sept. 27, 2017) ("[T]he courts of the United States undoubtedly have a

vital interest in providing a forum for the final resolution of disputes.").  Furthermore, "it has

been repeatedly recognized that the United States has an obvious interest in having its own

procedural rules applied to discovery." *Tansey v. Cochlear Ltd.*, No. 13-CV-4628 SJF SIL, 2014

WL 4676588, at *4 (E.D.N.Y. Sept. 18, 2014) (internal quotation and citation omitted).  This

interest is more pronounced where, as here, "the evidence at issue is vital to the litigation."  *Id*.

Even more specifically, and relevant to this case where Inventus alleges its misappropriated trade secrets were developed here, the United States also has a significant interest in protecting its own trade secrets and intellectual property. *See Nike, Inc.*, 349 F.Supp.3d at 339 (noting that the United States has a "powerful interest in enforcing the acts of Congress, especially those, such as the Lanham Act, that are designed to protect intellectual property rights…"); *Motorola*, 365 F.Supp.3d at 930 (acknowledging that "enforcement of United States trademark and copyright laws is a significant interest.").

In contrast, China – like every nation – "has a significant national interest in ensuring that its citizens abide by its laws," *Nike*, 349 F.Supp.3d at 338, and the Chinese Ministry of Justice has informed the Court that Ace's production of documents would violate one of its laws, namely Article 277. But Article 277 is a "general civil statu[t]e," *Sun Grp*, 2019 WL 6134958, at *4, and Ace has not specifically contended that the production of documents would violate other significant Chinese laws.[16] Furthermore, the limited nature of the jurisdictional discovery at issue weakens the strength of the interest that China might otherwise have in enforcing Article 277. *See Trueposition,* 2012 WL 707012, at *5 ("the discovery in this case is limited to jurisdictional discovery and does not seem to be the vexatious discovery that the French are attempting to protect their citizens from with the French Blocking Statute."). Finally, as Inventus argues, Ace has not presented any evidence that Article 277 has ever "been enforced against discovery activities relating to U.S. litigation." (Dckt. #109 at 19.); *see Trueposition,*

---

[16] In its response to Inventus' motion to compel forensic examination, Ace argued in passing that a court order requiring it to send its computer devices to the United States for examination might constitute a violation of Chinese secrecy laws. (Dckt. #106 at 8.) Ace has not, however, expounded on this argument with respect to the production of documents, nor did the Chinese Ministry of Justice recognize any other laws that would be violated by Ace's production. *Compare Nike Inc.*, 349 F.Supp.3d at 338 ("[T]he Chinese Ministry of Justice has directly informed the Court that China's bank secrecy laws would be violated by the Banks' disclosure of documents pursuant to the Subpoenas.").

2012 WL 707012, at *6 ("Notably, as Trueposition points out, ETSI has presented no evidence that the French Blocking Statute has ever been enforced in the context of a federal suit . . . filed in the United States.").

Upon balancing the United States' general interest in vindicating Inventus' rights in a just and speedy manner under its own rules *and* its specific interest in protecting its trade secrets with China's interest in ensuring its citizens do not violate a general civil statute, this factor weighs in favor of the Federal Rules and against the Hague. Indeed, even in the face of generalized United States' interests or more specific Chinese interests, courts have routinely found that this factor weighs against applying the Hague. *See, e.g., Nike*, 349 F.Supp.3d at 338 (factor weighed against Hague where United States had an interest in protecting its intellectual property and China had a more specific interest in enforcing its bank secrecy laws); *Milliken*, 758 F.Supp.2d 249 ("The balance of national interests, then, tips in favor of proceeding with discovery under the Federal Rules, though perhaps not as definitively as in cases where the interest of the United States is more specific.").

### f.  Two additional factors considered in other Circuits

As Inventus acknowledges, courts in other Circuits often consider two additional factors: namely, the hardship of compliance on the party or witness from whom discovery is sought; and the good faith of the party resisting discovery. *Laydon v. Mizuho Bank, Ltd.*, 183 F.Supp.3d 409, 419-20 (S.D.N.Y. 2016) (considering these factors in the Second Circuit); *Sun Grp.* 2019 WL 6134958, at *4 (applying the sixth factor in the Ninth Circuit). These factors also weigh in favor of proceeding under the Federal Rules.

With respect to the hardship of compliance, "this factor is concerned primarily with any sanctions or criminal penalties a foreign defendant may suffer in its own country for complying

with a discovery request in a United States court." *Synthes*, 2008 WL 81111, at *7. Here, Ace

implies only speculatively that Ace may be subject to penalties under Article 277 if it

participates in discovery in this litigation. But Ace has not cited to any instance of a Chinese

entity being penalized or prosecuted for producing documents for use in a United States

litigation. *Trueposition,* 2012 WL 707012, at *6 (finding no hardship where party did "not

present any evidence showing that it faces a significant risk of prosecution by complying with

[the] discovery requests under the Federal Rules of Civil Procedure."). And according to

Inventus' Chinese legal expert, he is "not aware of any cases or instances in which a Chinese

party's offering of information for evidence in a foreign judicial proceeding has been deemed

illegal or led to prosecution." (Dckt. #109-3 at 9-10.) Notably, as Inventus correctly points out,

Ace had little fear of penalties when it previously produced documents located in China –

including emails and blood test and x-ray results– to support its own litigation position. (*See*

Dckt. #38-2 & #38-3.) This further undermines Ace's fear of penalties under Chinese law *and*

tips the final additional factor of "good faith" in Inventus' favor.

Having reviewed all of the applicable factors – only one of which weighs in Ace's favor

– the Court finds in its discretion that Ace has failed to satisfy its burden to show that the

principles of comity support the application of the Hague Convention procedures here. [17] *See*

---

[17] In making this finding, the Court notes that it has found that the decision in *Sun Grp. v. CRRC*, 2019 WL 6134958, which reached a contrary conclusion and upon which Ace relies, is factually distinguishable for a number of reasons. In that case, which concerned only a request to produce documents, the court found four of the five factors weighed in favor of applying the Hague convention to discovery in China due to the fact that: (1) the documents sought were cumulative and could be obtained from defendant's subsidiary through discovery; (2) the discovery requests did not concern jurisdictional discovery, were "very broad," and went "beyond what [wa]s necessary to litigate the disputed issues in th[e] case; and (3) because it was "not yet clear" whether [the Hague] would be effective." *Id*. at **2-4. Furthermore, even under these factually distinct circumstances, the *Sun Grp.* court found that "if Plaintiff is not able to obtain documents necessary to litigate its claims, the balance would tip towards weighing in favor of full discovery through the Federal Rules of Civil Procedure." *Id.,* at *4.

*Milliken*, 758 F.Supp.2d at 250 (applying Federal Rules where "[e]ach of the relevant factors, with the exception of the location of the information, favors discovery without resort to the Hague Evidence Convention."); *see also Laydon.*, 183 F.Supp.3d at 427 ("A review of the relevant factors shows that the only factor that clearly favors the Moving Defendants is the location of the documents at issue. Accordingly, the Moving Defendants have failed to meet their burden of establishing that, in the interest of comity, plaintiff should, in the first instance, be compelled to pursue discovery pursuant to the procedures established by the Hague Convention."). Accordingly, the parties should proceed with the jurisdictional discovery permitted above, *supra* at II.A., under the Federal Rules and not the Hague Convention procedures.

> **C.** **The voluntary depositions of Ace's CEO, the eight Ace employees, and Inventus' witness Wenhua Li shall proceed in Macau under the Federal Rules.**

Ace asserts that the depositions sought by Inventus and the deposition it seeks from Li cannot proceed outside of China because it would be illegal to conduct the depositions in the proposed alternative locations (Macau and Hong Kong) and because only one of the affiants that Inventus seeks to depose (Ace's CEO) can be noticed for a deposition under Federal Rule of Civil Procedure 30. For the reasons stated below, the Court disagrees and finds that the depositions of all affiants can lawfully proceed in Macau.

> **1.** **The video depositions of Ace's CEO and the eight Ace Employees can proceed in Macau because local law does not bar voluntary depositions**

Citing to a declaration from the Special Administrative Region of Macau, Ace argues that the depositions of its CEO and employees cannot proceed in Macau because Macau

"prohibits pretrial discovery."[18]  (Dckt. #94 at 5.)  Specifically, the declaration relied on by Ace

states that the "Macao Special Administrative Region will not execute Letters of Request issued

for the purpose of obtaining pre-trial *discovery of documents* known in common law countries."

(Dckt. #94 at 5, n.6.) (emphasis added).)  For a number of reasons, Ace's reliance on this

declaration as a bar to depositions proceeding in Macau is misplaced.

First, as Inventus argues, this declaration explicitly relates to the pre-trial "discovery of

documents" and makes no reference to depositions.  But, even if the Court presumed that this

declaration extended to depositions, it does not serve as an absolute bar to depositions in Macau.

Indeed, unlike China's absolute bar on depositions – whether voluntary or compelled –without

compliance with the Hague Convention proceedings, Macau's declaration serves to bar only

those depositions requested from foreign common law countries through "Letters of Request"

under the Hague Convention procedures.[19]  The declaration says nothing that would indicate that

Macau bars private attorneys from making arrangements to depose Chinese citizens in Macau by

remote means for purposes of ongoing foreign litigation.  Indeed, Ace itself concedes that there

"are no concrete blocking statutes in the legal system of the Macau SAR."  (Dckt. #94 at 5.)

---

[18] Though the parties also disagree whether the depositions can proceed in Hong Kong, the Court focuses
on Macau because, as Inventus previously proposed, Macau is only "about 40 miles away from the Ace
Power facility" and "quarantine would not be required."  (Dckt. #86 at 6.)  Mindful of the everchanging
Covid-19 travel restrictions, the Court has reviewed Macau's current Covid-19 travel restrictions.  As of
September 2021, individuals from low-risk areas of mainland China, including Guangdong Province
where Ace is located, can enter Macau without quarantine so long as they have not recently traveled to
certain locations and abide by Macau's testing requirements.  *See*
https://www.gcs.gov.mo/detail/en/N21Iap8Ea2?4&topic=Novel_Coronavirus (last visited Sept. 30, 2021).

[19] Ace also cites to a declaration that in Macau, "State interests of the People's Republic of China must be
taken into account in the scope of requests for judicial cooperation, which is regarded as a fundamental
principle."  (Dckt. #94 at 5.)  This too appears to implicate "judicial cooperation" under the Hague
procedures.

This interpretation is supported by case law and plaintiff's counsel's own experience. For example, in *Zhizheng Wang v. Hull*, No. C18-1220RSL, 2020 WL 4734930, at *1 (W.D.Wash. June 22, 2020), the court was tasked with determining whether the parties could take the deposition of the plaintiff at his home in Beijing. After determining that plaintiff could not be deposed in China under Article 277, the Court ordered the parties to take the plaintiff's "deposition at a place where the parties can take his testimony without fear of reprisal by the People's Republic of China - such as Seattle, Hong Kong, *Macau*, Seoul, or Taipei." *Id*. at *2. Plaintiff's counsel has also submitted a declaration indicating that members of its firm have taken at least six depositions in Macau for purposes of ongoing litigation in this district, including as recently as February 2021. (Dckt. #152-2.) This supports the Court's finding that Macau law does not prohibit voluntary depositions to proceed in Macau.[20]

Finally, any implication by Ace that these depositions would not be proceeding voluntarily is disingenuous at best. As discussed above, *supra* at II.A.2., Ace submitted declarations from each of these individuals in support of their motion to dismiss. As Judge Dow opined, "[a]ny individual inserted into the lineup to play offense (for example, through the submission of an affidavit in support of a party's contentions) also must be prepared to play defense (that is, by submitting to a deposition…")." (Dckt. #146 at 2.) Ace is again reminded that should it fail to present these individuals for depositions in Macau, their testimony is likely to be "excluded, or, at a minimum, steeply discounted." (*Id*.)

---

[20] Although the Court has focused on Macau here, to the extent that the parties mutually agree that it is more convenient to proceed with depositions in Hong Kong, they may proceed with those depositions there by agreement. *See Homedics-USA, Inc. v. Yejen Indus., Ltd.,* No. 05-70102, 2007 WL 9700635, at *2 (E.D.Mich. June 15, 2007) (noting "that telephonic depositions are permissible in Hong Kong, as they are in the United States").

For these reasons, the Court directs the parties to proceed with the video depositions of Ace's CEO and the eight Ace employees in Macau. The Court expects the parties will work together to make the appropriate arrangements for those depositions at mutually agreeable times.[21]

### 2. All of the Ace employees are "managing agents" under Rule 30(b)(1)

Ace further objects to producing the eight Ace employees for depositions under the Federal Rules because (1) Ace has not met its burden under Rule 30(b)(1) to show why the deposition should not proceed at Ace's principal place of business in China; and (2) eight of the nine Ace affiants are not Ace officers, directors, or managing agents who are subject to notice under Rule 30(b)(1) and instead must be served with subpoenas under Rule 45.[22] The Court disagrees as to both points.

First, Ace is correct that a presumption exists that a managing agent under Rule 30(b)(1) should be deposed where the corporation's principal place of business is located. *Peerless Indus., Inc. v. Crimson AV LLC,* No. 11 C 1768, 2013 WL 1195829, at *6 (N.D.Ill. Mar. 22, 2013). However, it is also well settled that "courts have great discretion in designating the location of taking a deposition." *Mintel Int'l Grp., Ltd. v. Neergheen*, No. 08 C 3939, 2008 WL 4148524, at *1 (N.D.Ill. Sep.3, 2008). Where, as here, the Court has already determined that

---

[21] Ace asserts – without the citation of any evidence – that the Ace employees may not be able to travel to Macau because travelling between China and Macau is restricted, "which requires special traveling permits at all times for residents in China," which are not "guaranteed." (Dckt. #94 at 4.) Should that prove to be correct, the Court directs the parties to promptly bring this matter to the Court's attention.

[22] Again, those employees are: Yancey Yang (Manager of IT & Software Department), Gerrard Liu (Manager of Software Department), Robert Cao (Senior Manager in the Mechanical Team), Lucken Cai (R&D Director), Paul Mai (Assistant BMS Design & Qualification Manager), Alan Liu (Assistant Field Application Engineer Manager), Conner Guan (Assistant Field Application Engineer Manager), and Andy Quan (Lead of Safety Regulation Lab). (*See* Dckt. #86-14 – Ace's Initial Disclosures). Ace concedes that CEO Zhao is a managing agent under Rule 30(b)(1). (*See* Dckt. #94 at 6.)

depositions cannot legally proceed in China under the Federal Rules, but can legally proceed in Macau, any presumption in favor of proceeding in China must fall to the wayside.

With respect to whether Ace's affiants are subject to being deposed, Rule 30(b)(1) provides that "a party may compel a corporate officer, director, or managing agent to give testimony pursuant to a notice of deposition." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, No. 10-641-NJR-DGW, 2014 WL 12753788, at *2 (S.D.Ill. June 30, 2014); Fed.R.Civ.P. 30(b)(1). As the party's agree, "to determine whether an individual is a managing agent, courts look to several factors: (1) whether he has general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether he can be relied on to testify, at the corporation's request, in response to the discovery proponent's demands; (3) whether there are any other employees who have more authority than the individual in regard to information concerning the subject matter at issue in the case; (4) his general responsibilities respecting the matters involved in this litigation; and (5) whether he can be expected to identify with the interests of the corporation." *Murata Mfg. Co. v. Bel Fuse, Inc.*, 242 F.R.D. 470, 476 (N.D.Ill. 2007).

The burden to show that an individual is a managing agent "rests on the party seeking the discovery." *In re Honda Am. Motor Co., Inc. Dealership Rels. Litig.*, 168 F.R.D. 535, 540 (D.Md. 1996). However, "this burden is a modest one and any doubts are resolved in favor of the examining party." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 333 (D.Nev. 2016). "These same rules apply to witnesses located overseas." *Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 631 (D.Idaho 2012), *aff'd*, 290 F.R.D. 508 (D.Idaho 2013).

On the record before the Court, Inventus has satisfied this modest burden. To begin, Ace's contention that the "titles 'lead' or 'assistant manager' are reserved for inferior or subordinate positions, which indicate the lack of authority and responsibility" is misplaced. (Dckt. #94 at 6.) As case law makes clear, "it is not so much the title or status of an individual within the corporation, but his or her duties and responsibilities respecting the subject matter of the litigation that is important." *Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. at 634; *Botell v. United States*, No. 2:-11-CV-1545 GEB, 2013 WL 360410, at *6 (E.D.Cal. Jan. 29, 2013) (even if a witness "may not be a higher-up managing agent in the course of his everyday duties for defendant, he is a managing agent for the purpose of providing testimony regarding [subject matter] which is extremely relevant to this litigation."). Here, as Inventus argues, the Ace employees are the very individuals who were purportedly recruited by Ace and misappropriated Inventus' trade secret information, and Ace has not identified any other employees who would have more authority than them on their own involvement in those issues.

Furthermore, the eight Ace employees can clearly be relied on to testify at Ace's request because they have already done so through submission of each of their affidavits in support of their positions in this litigation. Similarly, Ace cannot deny that the eight Ace employees would identify with Ace's interests – as opposed to Inventus' – as they have already demonstrated they would do so by submitting testimony to refute Inventus' allegations. *In re Honda Am. Motor Co., Inc. Dealership Rels. Litig.*, 168 F.R.D. 535, 541 (D.Md. 1996) ("The 'paramount test' is whether the individual can be expected to identify with the corporation's interests as opposed to an adversary's."). Lastly, any remaining doubts – though Ace identifies none – must be resolved in favor of Inventus, the examining party. *Sugarhill Recs. Ltd. v. Motown Rec. Corp.*, 105

F.R.D. 166, 171 (S.D.N.Y. 1985) ("I am to resolve close questions regarding the status of an employee as "managing agent" in favor of the examining party.").

For these reasons, Inventus has met its modest burden to show that the eight Ace employees qualify as managing agents for purposes of Rule 30(b)(1).

### 3. Wenhua Li's deposition shall also proceed in Macau.

In a more recently filed motion (Dckt. #149), Ace separately asks the Court to issue a letter of request to China pursuant to the Hague Convention for the deposition of Inventus' witness, Wenhua Li. Again, as discussed above, the parties agree that Li is subject to being deposed as part of jurisdictional discovery because he submitted a declaration in support of Inventus' position that this Court has jurisdiction over this case. However, the parties dispute whether Li's deposition should take place in China or in Macau. Ace asserts that Li "provided false information to this Court," which Ace contends might implicate "civil or criminal penalties in China." (Dckt. #158 at 2; Dckt #143 at 17.) Thus, according to Ace, its ability to enforce "this Court's judgment in China requires Defendant to proceed with the deposition [in China] under the Hague Convention." (Dckt. #149 at 2.) Inventus, on the other hand, asserts that there is no need to resort to the Hague Convention because it will make Li available for deposition in Macau at a mutually convenient time. (Dckt. #156 at 2.) Inventus again asserts that resolution to the jurisdictional issue and this lawsuit as a whole will be unduly delayed if the Hague Convention is utilized. (Dckt. #156 at 3.)

This Court, in its discretion, orders the parties to take Li's deposition in Macau at a mutually available time for following reasons. First, as discussed above, *supra* at II.B.3., Inventus' concerns about the prospect of an undue delay if the Hague Convention is used are well-founded. In its response, Inventus again cites evidence to support the propositions that: (1)

the Hague Convention proceedings will be delayed for approximately seven months or more due to COVID-19 backlogs and (2) in more than 30 years under the Consular Convention and 13 years under the Hague Convention, China has granted permission for a deposition on only one occasion. (Dckt. #156 at 3.) Ace did not dispute this evidence in its most recent reply and the Court finds Ace's vague assertions about the Chinese Ministry of Justice's professed desire to "increase the efficiency of the [Hague] Convention" to be unpersuasive.[23] (Dckt. #158 at 4.)

The Court further finds that Ace does not need to depose Li in China to obtain his testimony for matters related to jurisdictional discovery because Inventus is willing to make him available in Macau.[24] As this Court has found above, *supra* at II.C.1., Macau is approximately 40 miles from Ace's facilities and it does not prohibit private parties from arranging for and conducting depositions within its boundaries. Finally, whether Ace can enforce this Court's judgment in China – as it apparently desires to do – simply has no bearing on the present issue before the Court: namely, whether the Court has jurisdiction to hear this case in the first instance. For these reasons, Ace is granted leave to take the deposition of Wenhua Li in Macau and its motion to depose him in China under the Hague Convention procedures is denied.

---

[23] In fact, a closer review of this quoted language reveals that it is in reference to the online system that the Ministry launched to "facilitate the submission of requests for judicial assistance including…taking evidence." (Dckt. #118.) Although the letter indicates that many U.S. requesting parties have used this system, it says nothing of whether those requests for evidence and depositions were successful. Notably, throughout its various briefs, Ace has not directed the Court to a case indicating that a deposition was permitted by the Chinese authorities under the Hague Convention procedures for use in U.S. litigation.

[24] As with the Ace employees, Ace vaguely asserts that Li may not be able to leave China to travel to Macau because travelling between China and Macau "requires special traveling permits at all times for residents in China." (Dckt. #158.) Again, should that prove to be correct with respect to Li, the Court directs the parties to promptly bring this matter to the Court's attention.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel depositions under the Federal Rules (Dckt. #86) is granted, defendant's motion to apply the Hague Evidence Convention to requests for production (Dckt. #105) is denied, and defendant's motion to take deposition of Wenhua (Ewin) Li under the Hague Convention (Dckt. #149) is denied, though defendant is granted leave to depose Li in Macau. Plaintiffs' motion to set a date for the jurisdiction hearing (Dckt. #166) is denied as moot. Defendant shall supplement its interrogatories and fully respond to the requests for production ordered in this Opinion by October 22, 2021. All depositions permitted by this Opinion shall be completed by December 3, 2021.

**DATED: September 30, 2021**

**Jeffrey I. Cummings**
**United States Magistrate Judge**