UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INVENTUS POWER, INC., and<br>ICC ELECTRONICS (DONGGUAN) LTD.,<br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SHENZHEN ACE BATTERY CO., LTD.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 1:20-cv-03357<br><br>Judge Honorable Robert M. Dow, Jr.<br><br>Magistrate Judge Honorable Jeffrey Cummings |

**DEFENDANT SHENZHEN ACE BATTERY'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

# Table of Contents

Introduction ..................................................................................................................................... 1

Procedural Background ................................................................................................................... 1

Legal Standard ................................................................................................................................ 2

Arguments ....................................................................................................................................... 2

    I.    The Following Topics Fall Within the Jurisdictional Discovery ......................................... 3

        Topic A.    Alleged unauthorized download of documents originated from IL by ACE Employees ................................................................................................................ 3

            1.    Whether the alleged mass download actually occurred ................................... 3

            2.    Whether the alleged mass download was authorized system back-up .............. 4

            3.    Whether the alleged misappropriated documents originated from IL ............... 4

        Topic B.    The connection between the alleged download and ACE's forum-related activities ................................................................................................................... 5

        Topic C.    ACE's alleged use of Plaintiffs' trade secrets ......................................................... 6

    II.    ACE's Requests for Production All Fall Within The Scope Of The Jurisdictional Discovery And Are Narrowly Tailored To The Jurisdictional Discovery ........................... 6

Conclusion ...................................................................................................................................... 7

**INTRODUCTION**

ACE served its Requests for Production ("RFP") to Plaintiffs on December 11, 2021 (attached as *Exhibit 1*). Plaintiffs initially objected ACE's Requests on January 3, 2022 (attached as *Exhibit 2*), and further objected ACE's Requests on January 31, 2022 after two meet and confer sessions (attached as *Exhibit 3*).

To date, Plaintiffs have not produced any documents in response to any of ACE's Requests.[1] It appears that Plaintiffs were not informed about ACE's Requests for Production and have not been engaged in any document production, because neither Plaintiffs' responses were verified by Plaintiffs. (*See* Ex. 2 and Ex. 3).

The main issue here is that "Inventus disagrees that [ACE's] Request falls within the scope of jurisdictional discovery." (Ex. 3, p.17, also asserted in response to RFP No. 1-15). Plaintiffs' empty promise to produce "documents sufficient to support Inventus's allegation" does not address the RFP because ACE is seeking documents that would demonstrate this Court's lack of personal jurisdiction over ACE, likely including documents that undermine Inventus' allegations, the opposite of what Plaintiffs promised to produce.

Therefore, ACE respectfully requests that this Court review ACE's Requests and order Plaintiffs to produce relevant documents that are within the scope of the jurisdictional discovery.

**PROCEDURAL BACKGROUND**

On December 11, 2021, ACE served its Requests for Production ("RFP") to Plaintiffs.

The Parties have agreed to a 21-day response period for all written discovery. [Dkt. 55, p.2].

On January 3, 2022, Plaintiffs served their initially objected ACE's Requests.

On January 5, 2022, ACE served Plaintiffs a deficiency letter, explaining why Plaintiffs' boilerplate objections of "overly broad," "premature," "confidentiality," are not proper. (*Exhibit 4*).

---

[1] Plaintiffs produced several files, around 2,200 pages, in connection with Plaintiffs' response to ACE's interrogatories, which is currently under review.

1

On January 31, 2022, after two meet and confer sessions, Plaintiffs further objected ACE's Requests, asserting that "Inventus disagrees that [ACE's] Request falls within the scope of jurisdictional discovery" to all of ACE's RFP No. 1-15, except No. 16. *See* Ex. 3.

## LEGAL STANDARD

A party may seek an order to compel discovery when the opposing party fails to respond to discovery requests. Fed. R. Civ. P. 37(a).

"During discovery, the parties are supposed to disclose all relevant information, so that the resolution of disputed issues may be based on a full and accurate understanding of the facts and, ultimately, produce a fair and just result." *Ammons-Lewis v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 11 C 6920, 2012 WL 5363425, at *7 (N.D. Ill. Oct. 9, 2012), *report and recommendation adopted*, No. 11 C 6920, 2012 WL 5356041 (N.D. Ill. Oct. 30, 2012), *aff'd*, 543 F. App'x 591 (7th Cir. 2013).

## ARGUMENTS

Specific jurisdiction is case-specific, the claim must be linked to the activities or contacts with the forum. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851(2011)). Surely, the scope of jurisdiction discovery extends to the "activities or contacts with the forum" that support the claim.

"The Court has broad discretion in delineating the proper scope of jurisdictional discovery." *Zinkia Entm't v. P'ships & Unincorporated*, No. 21 C 916, 2021 U.S. Dist. LEXIS 220494, at *3 (N.D. Ill. June 1, 2021) (citing *Gilman Opco LLC v. Lanman Oil Co.*, Inc., 2014 WL 1284499, at *7 (N.D. Ill. Mar. 28, 2014).

This Court has previously defined the scope of the jurisdictional discovery partially based on Judge Dow's jurisdictional analysis in the Temporary Restraining Order. [Dkt. 180, **Part II.A.** p.5] ("*See* 48, at 7-12 (explaining why Plaintiff has demonstrated 'at least a reasonable likelihood of both

2

establishing personal jurisdiction and defeating a motion to dismiss for *forum non conveniens'*")). Here, Plaintiffs' claims are based on specific facts that ACE Employees (former ICC employees), under ACE's direction, mass downloaded Plaintiffs' trade secrets originated from Illinois, while working at ICC. [*See* Dkt. 1, ¶¶ 4-6, 8, 10, 34, 36-37, 52; *see also* Dkt. 143, p. 5, Joint Status Report - Inventus's Position "AcePower Employees—at AcePower's direction—improperly downloaded thousands of documents and source code files they obtained from (and were originated in) this District, and have used those trade secrets while working at AcePower. *See*, e.g., Dkt. 1 ¶¶ 4-6, 8"].

The Court has found the above alleged facts to be relevant to the jurisdiction analysis. [*See* Dkt. 48, **Part B.1.a.** Analysis - Jurisdiction and Venue, p. 10, "ACE's alleged misappropriation was allegedly knowingly directed to materials that originated from and are located at Inventus in this District. Plaintiff presents evidence (including a forensic analysis and declarations) that ACE employees, while working for Plaintiff and for the purpose of aiding Defendant, downloaded *en masse* volumes of documents that originated at Inventus's facilities in this District"].

Therefore, files and documents relevant to the specific facts alleged by Plaintiffs in support of their jurisdiction argument are well within the jurisdictional discovery.

**I.** **The Following Topics Fall Within the Jurisdictional Discovery**

**Topic A.** **Alleged unauthorized download of documents originated from IL by ACE Employees**

This topic includes three subtopics which are discussed in detail below.

**1.** <u>Whether the alleged mass download actually occurred</u>

There would be no personal jurisdiction over ACE if the underlying alleged unauthorized mass download had never occurred.

Several of the accused ACE Employees provided affidavits, stating that they "did not misappropriate any of Plaintiffs' trade secrets." [See Dkt. 38-3, Dkt. 129-1].

Therefore, documents and communications that are relevant to the alleged mass download by ACE Employees fall well within the scope of the jurisdictional discovery.

3

    **2.** <u>Whether the alleged mass download was the result of authorized system maintenance and back-up</u>

Upon information and believe, Plaintiffs misrepresented the record of ICC's server system maintenance and back-up as the record of the alleged mass download.

Declared by ACE Employee Jun (Yancy) Yang, when he worked at ICC, he was responsible for daily maintenance of the SVN (subversion) Server and backing-up the SVN server periodically. [Dkt. 38-2, ¶¶3-4]. The back-up was stored on four portable hard disks. *See Id*. Yang's supervisor at ICC, Plaintiffs' witness Wenhua (Ewin) Li, also confirmed that the four portable hard disks were used for authorized back-up of the servers. *See* Depo of LI, 36:1-38:3, attached as <u>Exhibit 5</u>.

Furthermore, under ICC's Capability Maturity Model Integration (CMMI) program, some software and source codes need to be backed-up on a daily basis. [Dkt. 38-2, ¶6]. The documents needed for back-up and the frequency of the back-up are all detailed in ICC's CMMI program. *Id*.

While the records of the SVN Server may appear to be Yang downloading documents from the server to an external hard drive, it was Yang conducting system maintenance and back-up.

Therefore, documents and communications regarding the record of SVN Servers maintenance and backing-up, the requirements for system back-up under the CMMI program, and ACE Employees' authorization to access the servers and confidential information, all fall within the scope of jurisdictional discovery.

Consequently, relevant documents and communications must be produced. Custodian who are in possession of the documents and communications should also be identified for content search.

    **3.** <u>Whether the alleged misappropriated documents originated from IL</u>

The alleged mass download occurred in Guangzhou, China, when the ACE Employees (former ICC employees) were working at ICC. [Dkt. 1, ¶¶35-41]. The alleged unauthorized mass download did not occur in Illinois.

To support the connection between the alleged mass download and this forum, Plaintiffs specifically alleged that "Inventus U.S. and Guangzhou teams share a network drive that allows the Chinese team … to request and access highly confidential materials originating in this District," and "a large number of documents accessed and downloaded by the AcePower Employees are clearly marked as originated from 'Woodridge, IL'—in this District." [Dkt. 1, ¶¶17, 19].

Whether the alleged misappropriated documents originated from Illinois affects the personal jurisdiction and the alleged contacts with the forum. For example. if the alleged misappropriated documents are not originated from Illinois, e.g. originated locally in China or originated from Germany, it would not establish sufficient contact between Defendant and the forum state.

Therefore, to the extent that Plaintiffs allege that the mass download did occur and was unauthorized, and the misappropriated documents originated from Illinois, all relevant documents and communications should be produced, so their origin can be examined.

**Topic B.** **The connection between the alleged download and ACE's forum -related activities**

The alleged download was acted by individual ACE Employees while they worked at ICC. [*See* Dkt. 1, ¶¶ 4-6, 8, 10, 34, 36-37, 52]. The alleged action, even taken as true, may only constitute forum-related activities of these individual employees.

To impute the alleged download to ACE, Plaintiffs specifically alleged that ACE "target Inventus from inside, … by recruiting high-ranking Inventus personnel, … who, at AcePower's direction, downloaded over 100,000 confidential technical documents and source code." *Id*. at 4. Without these specific allegations, the alleged download does not establish any contacts between ACE and the forum state.

Therefore, documents and communications relevant to Plaintiffs' allegation that ACE actively targeted and recruited "Inventus from inside," and directed these employees to mass download Plaintiffs' trade secrets fall within the scope of jurisdictional discovery.

5

**Topic C.** **ACE's alleged use of Plaintiffs' trade secrets**

To support the Jurisdiction section of their Complaint, Plaintiffs further alleged that ACE **1)** used Plaintiffs' trade secrets to improve and develop competitive products [Dkt. 1, ¶¶ 19, 34, 37]; **2)** used Plaintiffs' trade secrets in ACE's Chinese patents application. [*Id*. at ¶37]; and **3)** approached Plaintiffs' U.S. based customers [*Id*. at ¶¶20, 47].

To the extent that Plaintiffs rely on these specific allegations to establish this Court's personal jurisdiction over ACE, documents and communications relevant to their specific allegations "ACE used of Plaintiffs' trade secrets" fall within the scope of jurisdictional discovery.

**II. ACE's Requests for Production All Fall Within The Scope Of The Jurisdictional Discovery And Are Narrowly Tailored To The Jurisdictional Discovery**

ACE's RFP are narrowly tailored to the above-mentioned topics. The table below shows how each RFP is relevant to the jurisdictional discovery.

| Topic A | Alleged unauthorized download of documents originated from Illinois by ACE Employees | |
|---|---|---|
| | 1. Whether the alleged mass download actually occurred | 1, 3, 4, 5 |
| | 2. Whether the alleged mass download was the result system maintenance and back-up | 7, 8 |
| | 3. Whether the alleged misappropriated documents originated from IL | 12, 13, 14, 15 |
| Topic B | The alleged download and ACE's forum -related activities | 6, 9, 10, |
| Topic C | ACE's alleged use of Plaintiffs' trade secrets | 2, 11, 16 |

**RFP No. 1**  All Documents, Communications and Things that Plaintiffs used, relied on, or considered in drafting the Complaint. (ACE has agreed to narrow this Request to jurisdictional related documents and communications only. *See* email communication attached as *Exhibit 6*).

**RFP No. 2**  All Documents, Communications and Things supporting Plaintiffs' allegation that ACE's Chinese Patents use, copy, incorporate, or disclose Plaintiffs' confidential information or trade secrets.

**RFP No. 3**  All Documents, Communications and Things supporting Plaintiffs' allegation that ACE directly misappropriated Plaintiffs' confidential information or trade secrets.

**RFP No. 4**  All Documents, Communications and Things supporting Plaintiffs' allegation that ACE indirectly misappropriated Plaintiffs' confidential information or trade secrets.

**RFP No. 5**   All Documents, Communications and Things supporting Plaintiffs' allegation that each and every of ACE Employees misappropriated Plaintiffs' confidential information or trade secrets.

**RFP No. 6**   All Documents, Communications and Things supporting Plaintiffs' allegation that the ACE Employees' alleged unauthorized mass downloading or misappropriation of Plaintiffs' confidential information or trade secrets was under ACE's direction or instruction.

**RFP No. 7**   All Documents, Communications and Things that are relevant to Plaintiffs' management, storage, retention, transfer and destruction of their confidential information or trade secrets.

**RFP No. 8**   All Documents, Communications and Things that are relevant to Plaintiffs' implementation of procedures to protect Plaintiffs' confidential information and trade secrets.

**RFP No. 9**   All Documents, Communications and Things supporting Plaintiffs' allegation that ACE targeted and recruited employees from Plaintiffs.

**RFP No. 10**   All Documents, Communications and Things that are relevant to Plaintiffs' hiring, firing and employee resignation process.

**RFP No. 11**   All Documents, Communications and Things supporting Plaintiffs' allegation that ACE's products use, copy, incorporate or disclose any of Plaintiffs' confidential information or trade secrets.

**RFP No. 12**   All Documents, Communications and Things that are relevant to Plaintiffs' SVN Servers back-up procedures.

**RFP No. 13**   The portion of Plaintiffs' CMMI program that are relevant to SVN Servers back-up and procedures of protecting Plaintiffs' confidential information and trade secrets.

**RFP No. 14**   All Documents, Communications and Things that are relevant to Plaintiffs' changes or migrations of Plaintiffs' SVN Servers between January 2018 and June 2020.

**RFP No. 15**   All Documents, Communications and Things that are relevant to the problems with Plaintiffs' SVN Servers that occurred between December 2019 and January 2020.

**RFP No. 16**   All Documents, Communications and Things supporting Plaintiffs' allegation that ACE or ACE Employees approached or solicited Plaintiffs' U.S. based customers and suppliers.

## CONCLUSION

For the foregoing reasons, ACE respectfully requests this Court order Plaintiffs to produce relevant documents that are within the scope of the jurisdictional discovery.

|  |  |
|---|---|
|  | Respectfully Submitted: |
| Date: 02/08/2022 | /s/ He Cheng |

He Cheng
Robin.Cheng@glacier.law
Tao Liu
Tao.Liu@glacier.law
Glacier Law LLP
200 Park Avenue, Suite 1703
New York, NY 10166
www.glacier.law
Tel: +1 (332) 208-8882
Fax: +1 (312) 801-4587
***Attorneys for Defendant***

8

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this February 8, 2022, I electronically filed the foregoing file with the Clerk of Court using the CM/ECF system, along with the attached Exhibits, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.

Date: 02/08/2022            /s/ He Cheng

                            He Cheng