# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| INVENTUS POWER, INC., and<br>ICC ELECTRONICS (DONGGUAN) LTD.,<br><br>     Plaintiff,<br><br>  v.<br><br>SHENZHEN ACE BATTERY CO., LTD.,<br><br>     Defendant. | Case No. 1:20-cv-03375<br><br>Judge Robert M. Dow, Jr.<br><br>Magistrate Judge Jeffrey Cummings |

## DEFENDANT'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 60

# TABLE OF CONTENTS

**<u>Page</u>**

| | | | |
|---|---|---|---|
| I. | Introduction | | 1 |
| II. | Procedural History Regarding Source Code Discovery | | 2 |
| III. | Legal Standards | | 7 |
| | A. | Motion for Reconsideration Under Rule 60(b) | 7 |
| | B. | Personal Jurisdiction Discovery | 8 |
| IV. | Argument | | 8 |
| | A. | Source Code is Outside the Scope of Limited Jurisdictional Discovery | 8 |
| | B. | Ace's Source Code Is Irrelevant To Personal Jurisdiction Over Ace | 10 |
| | C. | Producing Ace's Source Code Is Unduly Burdensome And Not Proportional to the Needs of This Case | 11 |
| | D. | Ace's Production Is Sufficient to Investigate Ace's Contacts With This District | 12 |
| V. | Conclusion | | 13 |

## **TABLE OF AUTHORITIES**

Page(s)

### **CASES**

*Alexan v. Burke*,
  62 F. Supp. 3d 784 (N.D. Ill. 2014) ...................................................................................8

*Aon plc v. Infinite Equity, Inc.*, No. 19-cv-07504, 2020 WL 10459742 (N.D. Ill. Aug. 7, 2020)
  ..............................................................................................................................................9

*Bank of Waunakee v. Rochester Cheese Sales Inc.*,
  906 F.2d 1185 (7th Cir. 1990) ............................................................................................8

*Brandon v. Chi. Bd. of Educ.*,
  143 F.3d 293 (7th Cir. 1998) ..............................................................................................8

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
  230 F.3d 934 (7th Cir. 2000) ..............................................................................................8

*Inventus Power v. Shenzhen Ace Battery*,
  No. 1:20-cv-07252 .............................................................................................................13

*Marchionda v. Embassy Suites, Inc.*,
  122 F. Supp. 3d 208 (D.N.J. 2015) ....................................................................................9

*Mart v. Berkshire Hathaway Inc.*,
  Case No. 3:10-CV-118, 2010 WL 11575057 (N.D. Ind. Aug. 2, 2010) ....................................9

*Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*,
  365 F. Supp. 3d 916 (N.D. Ill. 2019) ........................................................................11, 12

*Philips Med. Sys. (Cleveland), Inc. v. Buan*,
  No. 19 CV 2648, 2022 WL 604285 (N.D. Ill. Mar. 1, 2022) .................................................11

*River Vill. W. LLC v. Peoples Gas Light and Coke Co.*,
  618 F. Supp. 2d 847 (N.D. Ill. 2008) ..................................................................................8

*Snap-On, Inc. v. Robert Bosch LLC*,
  No. 09-C-6914, 2012 WL 6106474 (N.D. Ill. Dec. 10, 2012) ..................................................8

*Spigot, Inc. v. Hoggatt*,
  Case No. 2:18-cv-764, 2019 WL 4980455 (M.D. Fla. Oct. 8, 2019) .....................................10

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*,
  136 F. Supp. 3d 968 (N.D. Ill. 2015) ..................................................................................8

*United States v. Swiss Am. Bank, Ltd.*,
    274 F.3d 610 (1st Cir. 2001) ............................................................................................... 8

*Wang v. Wu*,
    Case No. SA CV 16-84, 2016 WL 10957847 (C.D. Cal. Dec. 7, 2016) ................................... 9

## RULES

Fed. R. Civ. P. 60(b) .......................................................................................................... 8

## OTHER AUTHORITIES

David Moncure, *The Conflict Between United States Discovery Rules and the Laws of China: The Risks Have Become Realities*,
    16 Sedona Conf. J. 283, 283 (2015) ..................................................................................... 11

I.      INTRODUCTION

Defendant Shenzhen Ace Battery Co., Ltd. ("Ace") respectfully requests the Court reconsider its previous orders compelling Ace to make all source code for eighty (80) different products available for Inventus Power, Inc. and ICC Electronics Ltd. (collectively, "Inventus") to inspect as part of jurisdictional discovery. Dckt. #218; Dckt. #220 at 18. As the Court is aware, Ace recently obtained new attorneys in this matter. Dckt. #253, 254, 255. After reviewing the discovery motion practice in this case with fresh eyes, several issues became clear that counsel against the extreme remedy of source code production in jurisdictional discovery.

*First*, the production of source code for inspection by Inventus's counsel and experts is inconsistent with the procedural history of this case, which previously permitted such discovery only as part of Inventus's preliminary injunction motion and even then was limited to a Court appointed neutral forensic examiner to inspect both parties' source code. But that procedure was suspended when Judge Dow limited discovery to the sole issue of personal jurisdiction, noting the need to not put the "cart before the horse." *Second*, source code is irrelevant to personal jurisdiction here. The *only* allegations in the Complaint tying source code to personal jurisdiction relate to allegedly misappropriated source code having been "developed in Illinois." *See* Dckt. #1 ("Compl.") at ¶ 18. But that question relates to Inventus's source code, not Ace's.

*Third*, the burden to Ace of producing its source code—the crown jewels of any business— is not proportional to the needs of the case at this limited jurisdictional stage. To do so and comply with strict Chinese state secrets laws, Ace must review the code for all 80 products for Chinese state secrets and then obtain permission from the Chinese government to make it available for inspection. *Finally*, Inventus and the Court have a more than sufficient record to assess personal jurisdiction. Ace has produced over one million pages, including over 700 technical documents, which already goes beyond the limited issue of personal jurisdiction. And beyond Ace's

substantial production, Inventus has sought and will receive documents from third parties it alleges to be related to Ace's contact with the District.

For these reasons as well as those articulated below, Ace respectfully requests the Court reconsider its previous orders compelling Ace to make its highly confidential source code available for Inventus to inspect as part of jurisdictional discovery.

**II.     PROCEDURAL HISTORY REGARDING SOURCE CODE DISCOVERY**

Inventus alleges that this Court has personal jurisdiction over Ace "as a result of intentional contacts with this District" and "knowing misappropriation of trade secrets" that were allegedly developed in this District. Compl. at ¶ 15. Specifically, Inventus alleges that its purported trade secrets were "developed at and ultimately taken from Inventus's Woodridge, Illinois headquarters," including the "source code base for a key project relating to the development of Inventus's medium-to-large sized battery packs." *Id.* at ¶¶ 17-18.

On July 13, 2020, in response to Inventus's motion for a preliminary injunction—where Inventus had the burden to prove a likelihood of success on the merits—Judge Dow ordered expedited discovery on the merits of the trade secret misappropriation claims, stating, "inspections of devices used by the individuals in question while working for Defendant seems a highly logical place to focus attention in determining whether any of Plaintiffs' trade secrets have been disclosed to and used by Defendant." Dckt. #48 at 31. Following Judge Dow's order, the parties agreed to use a neutral forensic examiner to examine "potentially relevant files, including documents, ***source code***, data, and emails[.]" Dckt. #55 at 4.[1] Magistrate Judge Cummings selected an examiner and ordered that the examiner "shall process the forensic data and conduct a search for potentially relevant files, including documents, ***source code***, data, emails or information using search criteria

---

[1] All emphasis added unless otherwise noted.

2

to be negotiated between the parties in good faith." Dckt. #99 at 1. The scope of the examination would have extended to both Ace's and Inventus's confidential information. *Id*. at 1-2.

On August 17 and 24, 2020, Ace served its Motions to Dismiss for lack of personal jurisdiction and forum *non conveniens*, arguing that all "pertinent events [alleged by Inventus] took place in China," all of the implicated employees are based in China, and all potential witnesses, including those of Plaintiff ICC, are based in China. Dckt. #65 at 1, Dckt. #70 at 1.

Thereafter, on March 17, 2021, Judge Dow ordered a hearing to "encompass . . . evidentiary matters relating to the disputed facts *concerning jurisdiction* basically on the question of *whether former ICC / current ACE employees misappropriated trade secrets that originated in Woodridge*." Dckt. #132. As a result of Judge Dow's order, on March 18, 2021, Magistrate Judge Cummings stayed the ruling related to the preliminary-injunction-based merits discovery (Dckt. #48), including the examination of source code by the neutral forensic expert, pending resolution of the motions to dismiss. Dckt. #133. Magistrate Judge Cummings also ordered the parties to meet and confer on the scope of jurisdictional discovery, *id*, resulting in a March 24, 2021 Joint Status Report. Dckt. #143. In that Report, Inventus sought jurisdictional discovery on five topics:

> **Topic 1**: AcePower's presence in the United States and in this District (or the presence of its United States-based alter ego, CBAK (and the relationship between those entities) (this Topic is covered by Inventus's Requests for Production Nos. 5, 8 and 13, and Interrogatory Nos. 5 and 6).
>
> **Topic 2**: Sales and marketing of the accused products in the United States and in this District, either by AcePower or CBAK (this Topic is covered by Inventus's Request for Production Nos. 12 and 13 and Interrogatory Nos. 5 and 6).
>
> **Topic 3**: AcePower's recruitment of the AcePower Employees and AcePower's involvement/knowledge of their theft (this Topic is covered by Inventus's Request for Production Nos. 1-6 and 9-12 and Interrogatory Nos. 1 and 2).
>
> **Topic 4**: The AcePower Employee's improper downloads of Inventus's trade secrets and use of those trade secrets by AcePower, including the requested

3

>forensic inspections relating to those issues (this Topic is covered by Inventus's Request for Production Nos. 1, 2, 6, 7, and 9-12 and Interrogatory Nos. 3-10).
>
>**Topic 5**: AcePower's communications with the Chinese government, specifically with respect to the Chinese government's alleged issuance of letters regarding AcePower's ability to proceed with discovery in this case (this Topic is covered by Inventus's Interrogatory Nos. 4 and 10).

Dckt. 143 at 2. Notably, only Topic 4 refers to "the requested forensic inspections."

On April 8, 2021, Judge Dow concluded that "holding an evidentiary hearing prior to the completion of jurisdictional discovery would put the proverbial cart before the horse," and directed the parties to undertake jurisdictional discovery under the supervision of Magistrate Judge Cummings. Dckt. #146 at 1. Judge Dow did not address the scope of permissible jurisdictional document discovery, but noted "'[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists.'" *Id*. at 2 (citation omitted). Nothing in Judge Dow's order suggested that the scope of jurisdictional discovery should extend to Ace's source code, particularly after such discovery was expressly halted.

Following the April 8 order, Inventus filed a Reply in Support of its Motion to Compel Depositions regarding Jurisdictional Discovery. Dckt. #152. Therein, Inventus "narrowed the scope of the jurisdictional discovery" they sought to only Topics 1-3 above. *Id*. at 4. Inventus explicitly dropped its Topic 4 related to forensic inspections, which was the previous basis for the inspection of source code. *Id*. ("Inventus no longer seeks jurisdictional discovery related to Topic Nos. 4 and 5."). Inventus did not argue that source code would be responsive to any of the remaining topics. *Id*. at 4-6.

On September 24, 2021, Magistrate Judge Cummings clarified the scope of jurisdictional discovery and denied an older merits-based motion to compel forensic examination (Dckt. #103), reasoning "forensic examination of [Ace's] computers does not fall within [the] limited scope of

jurisdictional discovery," and noting Inventus "ha[s] removed the forensic inspections from their recently narrowed proposed topics for jurisdictional discovery, thus conceding those inspections are outside the current phase of discovery." Dckt. #177. Less than a week later, Magistrate Judge Cummings further narrowed jurisdictional discovery to limited interrogatories and requests for production. Magistrate Judge Cummings's order did not suggest the production of source code (or even technical documents) by either party, and reiterated that the scope of jurisdictional discovery is limited to narrowed Topics 1-3. Dckt. #180 at 6 (addressing Dckt. #74-3 at 10-11).

However, during a January 11, 2022 status hearing, Inventus suggested, ***for the first time***, that they might need source code to determine whether Ace was "selling or planning to sell or marketing in the United States" any products incorporating Inventus's alleged trade secrets for the purposes of jurisdictional discovery. Dckt. #207 at 8-9. Inventus argued that Ace's "sales of the products accused of misappropriation or at least embodying the trade secrets in the United States [] is a key aspect of jurisdiction for us and is obviously a focal point of jurisdictional discovery." *Id*. at 8. Inventus further argued that "there needs to be accountability in terms of what technical documentation they produce. They need to give us their internal specifications. They need to give us the development documents. It's the only way – ***and possibly even access to code***. It's the only way that we'll be able to actually discern, you know . . . which [Ace products] are the ones that we should be focusing on for jurisdiction." *Id*. at 13. Tellingly, however, Inventus did not explain at all *why* technical information of this nature, in particular Ace's proprietary source code, is relevant to showing contacts with this District. *See id*. at 8-9, 13. Inventus likewise did not explain why it would now be appropriate for Inventus, rather than a neutral forensic examiner, to have access to

Ace's source code.[2] Magistrate Judge Cummings ordered Ace to produce a list of their products to Inventus, explaining: "[W]hat we're doing here is we're working with a process that would enable [Inventus] to select the products for which they want you, your client, *to produce technical information, namely, the internal . . . specification from the development documents*[.]" *Id*. at 14.

On February 4, 2022, Inventus formally requested that "the Court order, as an initial step, that Ace[] produce current technical documentation on all products currently listed in Ace[]'s product list, including technical product specifications, schematics, and code, so that Inventus can distinguish between the products and adequately analyze them." Dckt. #208 at 2. Inventus did not articulate why it specifically needed source code, in addition to technical product specifications and schematics, to "distinguish between [Ace's] products and adequately analyze them." *See id*.

Following a March 25, 2022 status conference, Magistrate Judge Cummings ordered the "production of technical documents (technical product specification, schematics, and source code)," and ordered Ace to produce "source code (on a machine available for review in New York) for the 80 products requested by Inventus." Dckt. #218. However, during the conference, Magistrate Judge Cummings stated "[w]hether there is jurisdiction over here in the United States *concerns things such as Ace's marketing efforts, its contacts here, participation in trade shows, you know, its activities*, which would subject it to the jurisdiction of this court. *That's really . . . the limited issue in the jurisdictional discovery, and that's all we're dealing with right now*[.]" Dckt. #220 at 67-68. Indeed, when addressing Ace's request for documents relating Ace's purported use of Inventus's trade secrets, Magistrate Judge Cummings stated: "That goes to the merits. It goes to the merits of the case, and we're not – and we're not there yet." *Id*. at 76.

---

[2] To the extent the Court maintains its order that Ace produce source code, Ace would request that Magistrate Judge Cummings again appoint a neutral forensic examiner to review it.

Pursuant to Magistrate Judge Cummings's order, Ace prepared to make its source code available for inspection, and downloaded its source code to Ace's computers in New York. Dckt. #227 at 3. However, due to a formal investigation and warning by the Chinese Ministry of State Security on April 28, 2022, Ace was prohibited from releasing the password to its encrypted computer. Dckt. #230. Ace was warned that it would face extreme sanctions and criminal penalties if it transmitted any data that was not first examined and released by the government. *Id*. Accordingly, Ace held off on production of its source code.

Inventus thereafter filed a Motion for Sanctions, and, in the course of that briefing, attempted to explain the purported relevance of source code to jurisdictional discovery, claiming that it needs Ace's source code to "reveal how Ace[] is using Inventus's trade secrets in its own products offered to U.S. customers." Dckt. #237 at 5. Inventus seemingly takes the position that it must have access to discovery that would prove the merits of its trade secret claim in order to establish personal jurisdiction to pursue that claim, conflating liability discovery of the preliminary injunction phase with the current jurisdictional discovery: "Judge Dow found that Inventus's evidence of misappropriation, which included a forensic analysis showing downloading of specific source code files, gave it 'a sufficient likelihood of success in establishing misappropriation.' … This evidence is particularly relevant: to oppose personal jurisdiction, Ace[] contends that its products sold in the U.S. do not incorporate Inventus trade secrets." *Id.* (citations omitted).

### III. LEGAL STANDARDS

#### A. Motion for Reconsideration Under Rule 60(b)

A court will grant a motion for reconsideration when: "(1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue

7

to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court." *River Vill. W. LLC v. Peoples Gas Light and Coke Co.*, 618 F. Supp. 2d 847, 850 (N.D. Ill. 2008) (citing *Bank of Waunakee v. Rochester Cheese Sales Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)); Fed. R. Civ. P. 60(b). Under Rule 60(b), a court may grant relief due to "mistake, inadvertence, surprise, or excusable neglect" and "encompasses mistakes by judicial officers as well as litigants." *Alexan v. Burke*, 62 F. Supp. 3d 784, 788 (N.D. Ill. 2014) (citing *Brandon v. Chi. Bd. of Educ.*, 143 F.3d 293, 295 (7th Cir. 1998)).

    **B.**    **Personal Jurisdiction Discovery**

As this Court has noted, "[i]n ordering jurisdictional discovery, the court is mindful that '[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists.'" *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 136 F. Supp. 3d 968, 976 (N.D. Ill. 2015) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 945 (7th Cir. 2000)); Dckt. #146. "A diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may . . . be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001) (citation and emphasis omitted). A plaintiff's jurisdictional discovery requests must be weighed against the burden on a foreign party. *Snap-On, Inc. v. Robert Bosch LLC*, No. 09-C-6914, 2012 WL 6106474, at *5 (N.D. Ill. Dec. 10, 2012).

**IV.**    **ARGUMENT**

    **A.**    **Source Code is Outside the Scope of Limited Jurisdictional Discovery**

Source code discovery is outside the scope of the limited personal jurisdiction discovery contemplated by the Court. Source code discovery was originally injected into the case during

8

expedited *liability* discovery in connection with Inventus's preliminary injunction motion, and even at that point it was limited to inspection by a neutral forensic examiner. But that process was suspended when Judge Dow limited discovery to the sole issue of personal jurisdiction, noting the need to not put the "cart before the horse." Dckt. #146 at 1. Thereafter Inventus removed forensic inspections from their narrowed topics for jurisdictional discovery and this Court reasoned "forensic examination of [Ace's] computers does not fall within [the] limited scope of jurisdictional discovery." Dckt. #177 (citing Dckt. #152 at 6). Despite this record, Inventus has sought to expand the scope of jurisdictional discovery to include inspection of Ace's source code by its own attorneys and experts.

This is impermissible merits discovery that is outside the scope of Judge Dow's order limiting discovery to the sole issue of personal jurisdiction. Requests like those of Inventus—to exceed the limited scope of jurisdictional discovery, and skip straight to liability—are routinely denied. *See, e.g., Aon plc v. Infinite Equity, Inc.*, No. 19-cv-07504, 2020 WL 10459742, at *2 (N.D. Ill. Aug. 7, 2020) ("Aon impermissibly blurs the line between discovery for the entire case and expedited discovery for the limited purpose of the preliminary injunction evidentiary hearing"); *Marchionda v. Embassy Suites, Inc.*, 122 F. Supp. 3d 208, 211 (D.N.J. 2015) ("Jurisdictional discovery should not, however, serve as a 'fishing expedition' into the underlying merits, all while 'under the guise of jurisdictional discovery.'") (citation omitted); *Mart v. Berkshire Hathaway Inc.*, Case No. 3:10-CV-118, 2010 WL 11575057, at *6 (N.D. Ind. Aug. 2, 2010) ("[T]his Court considers the majority of Mart's document requests to be not sufficiently targeted to issues of jurisdictional, but instead appear more akin to merits-based discovery. As such … this Court considers the requests to be inappropriate."); *Wang v. Wu*, Case No. SA CV 16-84, 2016 WL 10957847, at *1 (C.D. Cal. Dec. 7, 2016) (denying discovery that went to the merits

9

of plaintiff's claims); *Spigot, Inc. v. Hoggatt*, Case No. 2:18-cv-764, 2019 WL 4980455, at *4-5 (M.D. Fla. Oct. 8, 2019) (refusing to require production of "highly sensitive information during the jurisdictional-discovery phase" because it went to "merits of [the] case"). Likewise here, Inventus should not be permitted to dig through Ace's highly confidential source code and compare it to Inventus's own code to establish jurisdiction—the exact exercise that Inventus would later engage in in an attempt to prove liability if the Court finds that it has personal jurisdiction over Ace. This is precisely the "cart before the horse" Judge Dow expressly cautioned against. Dckt. #146 at 1.

### B. Ace's Source Code Is Irrelevant To Personal Jurisdiction Over Ace

Inventus has yet to offer any compelling reason why source code discovery is relevant to Ace's contacts with this District. Indeed, the only allegation in the Complaint tying source code to personal jurisdiction alleges that *Inventus's* source code was "developed in Illinois." Compl. at ¶ 18. However, information relevant to that allegation is uniquely in Inventus's possession (e.g., where its code was developed and electronically stored, and who developed it).[3] This information could not be found in Ace's source code, and Inventus does not (and cannot) argue otherwise.

Turning to *Ace's source code,* Inventus has not provided any explanation for why that code would demonstrate how Ace has availed itself of the laws of Illinois such that personal jurisdiction is proper.[4] By its own admission, Inventus has already identified the 80 products that are "most

---

[3] Ace presumes that Inventus would vehemently oppose jurisdictional discovery of its own code. But if Inventus is permitted to review Ace's code and compare that code to its own, Ace requests the opportunity to perform the same analysis of Inventus's code in order to respond to any position from Inventus regarding supposed overlap in the code that somehow confers personal jurisdiction on Ace.

[4] Even Inventus admits that the relevance of the code is not specific to Illinois: "all source code [is] essential for Inventus to determine the extent of [the alleged] use and incorporation of its trade secrets into Ace[]'s competing products in the U.S. ***and elsewhere***." Dckt at 237 at 1.

10

relevant" to its allegations, so additional source code discovery is not needed for that exercise. And since source code does not demonstrate where a product is sold, marketed, or manufactured, it is irrelevant to determining what intentional contacts, if any, Ace has with this District.

      **C.    Producing Ace's Source Code Is Unduly Burdensome And Not Proportional to the Needs of This Case**

"Under Rule 26, the discovery sought must not only be relevant, but it must be 'proportional' to the needs of the case, 'considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) (citation omitted). Here, the burden of Ace producing highly confidential source code located in China for 80 products is not proportional to the needs of the case at this limited jurisdictional stage, especially considering the serious implications of Chinese state secret laws. In light of the directive from the Chinese Ministry of State Security, Ace would have to spend significant resources conducting a state secrets review in conjunction with relevant Chinese state agencies before allowing inspection or face significant criminal exposure. *See* David Moncure, *The Conflict Between United States Discovery Rules and the Laws of China: The Risks Have Become Realities*, 16 Sedona Conf. J. 283, 283 (2015) ("Documents that fit within the broad definition of 'state secrets' under PRC law may not be produced without risk of substantial criminal penalties."); *see also Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 19 CV 2648, 2022 WL 604285, at *2 (N.D. Ill. Mar. 1, 2022) ("[I]n recognition of the potential liability a party fulfilling its discovery obligations could face for violating foreign law, courts 'should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous

11

position.'") (citation omitted). Indeed, courts deny requests for production of source code located in China even during *merits-based discovery* if a party cannot demonstrate that such production is proportional to the needs of the case. *See, e.g.*, *Motorola Solutions*, 365 F. Supp. 3d at 930 ("Motorola has not even made a convincing case that what it seeks is relevant. But even if it had, the proposed forensic examination of computers in China is far out of proportion with the needs of this case.").

Beyond the burden of Chinese states secrets laws, Inventus would have to hire an expert to review Ace's source code and compare it to Inventus' own source code. Ace in turn would have to hire an expert to rebut Inventus' expert's opinions. This is not a simple or quick process and further counsels against the production of source code at this limited jurisdictional stage. *See Aon plc*, 2020 WL 10459742, at *2 ("Defendants correctly point out that the true burden would not come from the production of the additional source code, but from the significant time and expense needed to review and analyze that code.").

### D. Ace's Production Is Sufficient to Investigate Ace's Contacts With This District

By June 7, 2022, Ace had produced 182,338 documents, totaling over one million pages, during *limited* jurisdictional discovery.[5] Concurrent with its change in counsel (Dckt. #250), Ace remedied the technical issues with its prior productions and provided a corrected production, with extracted text files and updated document identifiers (i.e., Bates-numbers), as ordered by Magistrate Judge Cummings. Dckt. #232. To the extent Inventus has identified any subsequent problems with Ace's document production, Ace's new counsel has worked diligently to address those issues in a timely manner. Accordingly, there has been a significant change in the facts since the Magistrate Judge Cummings's order directing production of Ace's source code.

---

[5] In contrast, Inventus has only produced 278 documents, totaling 2,237 pages.

12

Furthermore, on July 18, 2022, Ace produced another 7,634 documents in response to additional search terms requested by Inventus, which include documents from both the former Inventus employees and Ace sales associates whom Inventus contends have contacts with this District. These documents underwent a Chinese state secrets review and could therefore be lawfully produced in the United States as part of this litigation. As of today, Ace has produced a total of 189,975 documents, and 1,213,500 pages, in jurisdictional discovery.

Ace's production of documents to date, which includes more than 700 technical documents, including product specifications, schematics, and development and testing documents, is more than sufficient to allow Inventus to investigate alleged contacts with this District. Indeed, the production of such detailed technical documents arguably is already outside the scope of personal jurisdiction discovery contemplated by the Court. *See* Dckt. #132, 133. What's more, Inventus has also sought and will be receiving jurisdictional discovery from third parties. Inventus served third party CBAK Energy Technology, Inc. with a subpoena requesting, among many other things, all documents referring or relating to any communications or relationship between Ace and CBAK. *Inventus Power v. Shenzhen Ace Battery*, No. 1:20-cv-07252, Dckt. #2-1, at 4-7 (N.D. Ill. Nov. 5, 2020). CBAK has since agreed to produce responsive documents requested by the subpoena that are relevant to the personal jurisdiction dispute. *Id.*, Dckt. #74. Ace's production of documents to date combined with CBAK's forthcoming production is more than sufficient to assess personal jurisdiction.

## V.     CONCLUSION

For the reasons set forth above, Ace respectfully requests reconsideration of Magistrate Judge Cummings' orders to produce source code in jurisdictional discovery.

Date:  July 20, 2022                                    Respectfully submitted

       */s/ Matthew W. Walch*
       Matthew W. Walch

       Sean M. Berkowitz (ARDC No. 6209701)
       sean.berkowitz@lw.com
       Matthew W. Walch (ARDC No. 6226308)
       matthew.walch@lw.com
       LATHAM & WATKINS LLP
       330 North Wabash Avenue, Suite 2800
       Chicago, Illinois 60611
       Telephone: (312) 876-7700
       Facsimile: (312) 993-9767

       Kevin C. Wheeler (*pro hac vice*)
       kevin.wheeler@lw.com
       LATHAM & WATKINS LLP
       555 Eleventh Street, NW, Suite 1000
       Washington, D.C. 20004
       Telephone: (202) 637-2200
       Facsimile: (202) 637-2201

       Rachel R. Blitzer (*pro hac vice* pending)
       rachel.blitzer@lw.com
       Stephen D. O'Donohue (*pro hac vice*)
       stephen.odonohue@lw.com
       LATHAM & WATKINS LLP
       1271 Avenue of the Americas
       New York, NY 10020
       Telephone: (212) 906-1274
       Facsimile: (212) 751-4864

       *Attorneys for Defendant*